

**null / ALL**
**Transmittal Number: 20661174**
**Date Processed: 11/07/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley St<br>Boston, MA 02116-5066 |

| | |
|---|---|
| **Entity:** | Employers Insurance Company Of Wausau<br>Entity ID Number  2538000 |
| **Entity Served:** | Employers Insurance Company of Wausau |
| **Title of Action:** | Distribution International Inc vs. Employers Insurance Company of Wausau |
| **Document(s) Type:** | Citation/Petition |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Harris County District Court, TX |
| **Case/Reference No:** | 201978137 |
| **Jurisdiction Served:** | Texas |
| **Date Served on CSC:** | 11/07/2019 |
| **Answer or Appearance Due:** | 10:00 am Monday next following the expiration of 20 days after service |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | J. James Cooper<br>713-469-3800 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

> **EXHIBIT A**

CAUSE NO. 201978137

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO: 883651  TRACKING NO: 73690429

| Plaintiff: | In The 151st |
| DISTRIBUTION INTERNATIONAL INC | Judicial District Court of |
| vs. | Harris County, Texas |
| Defendant: | 201 CAROLINE |
| EMPLOYERS INSURANCE COMPANY OF WAUSAU | Houston, Texas |

**CITATION CORPORATE**

**THE STATE OF TEXAS**
**County of Harris**

**To:    EMPLOYERS INSURANCE COMPANY OF WAUSAU (CORPORATION) MAY BE SERVED BY SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY 211 EAST 7TH STREET SUITE 620, AUSTIN TX 78701**

Attached is a copy of: PLAINTIFF'S ORIGINAL PETITION

This instrument was filed on October 25, 2019 in the above cited cause number and court. The instrument attached describes the claim against you.

**YOU HAVE BEEN SUED.**  You may employ an attorney.  If you or your Attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration date of 20 days after you were served this citation and petition, a default judgment may be taken against you.

This citation was issued on November 1, 2019, under my hand and seal of said court.

Issued at the request of:

COOPER, J. JAMES
811 MAIN STREET, SUITE 1700
HOUSTON, TX  77002
713-469-3879
Bar Number: 04780010

*Marilyn Burgess*

Marilyn Burgess, District Clerk

Harris County, Texas
201 CAROLINE  Houston Texas 77002
(PO Box 4651, Houston, Texas 77210)

Generated By:RHONDA MOMON

DELIVERED:
ON: _11/07/19_
BY: _____ 735
@: _____  am pm

Tracking Number: 73690429

**CAUSE NUMBER: 201978137**

| | |
|---|---|
| PLAINTIFF: DISTRIBUTION INTERNATIONAL INC | In the 151st |
| vs. | Judicial District Court of |
| DEFENDANT: EMPLOYERS INSURANCE COMPANY OF WAUSAU | Harris County, Texas |

OFFICER - AUTHORIZED PERSON RETURN

Came to hand at _9:00_ o'clock _A_. M. on the _7th_ day of _Nov._, 20 _19_. Executed at

(Address)_____
in

_____ County at o'clock ___. M. On the _____ day of _____, 20_____, by

Delivering to _____defendant, in person, a true copy of this Citation
together with the accompanying _____ copy (ies) of the «Attachment».  Petition attached thereto and I endorsed on said
copy of the Citation the date of delivery.

To certify which I affix my hand officially this _____day of _____, 20.

Fees $_____

_____                    By_____
            Affiant                                                                    Deputy

On this day, _____, known to me to be the person whose signature
appears on the foregoing return, personally appeared.  After being by me duly sworn, he/she stated that this citation was
executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this _____ day of _____, 20__.

_____

Notary Public

10/25/2019 9:57 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37960048
By: Tahj Wimbley
Filed: 10/25/2019 9:57 AM

No. _____

| | | |
|---|---|---|
| DISTRIBUTION INTERNATIONAL, INC. | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| EMPLOYERS INSURANCE COMPANY | § | |
| OF WAUSAU | § | |
| | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff DISTRIBUTION INTERNATIONAL, INC. ("Distribution International") brings this lawsuit for breach of contract, statutory and common law bad faith, and violations of the Texas Insurance Code and Prompt Payment Act against Defendant EMPLOYERS INSURANCE COMPANY OF WAUSAU ("Wausau"), and in support of its action, states the following:

### DISCOVERY

1.    Discovery is requested under Level 3, pursuant to TEX. R. CIV. P. 190.4.

### NATURE OF ACTION

2.    This is an action for breach of contract and other relief under first-party property insurance coverage sold by Wausau to Distribution International.  Distribution International brings this action to address disputes concerning the insurance coverage sold by Wausau to Distribution International and for which Distribution International paid substantial premium and for Wausau's breach of its obligations by failing to pay amounts due under the insurance.

3.    More specifically, despite its contractual obligations under the coverage it sold to Distribution International, Wausau has failed and refused to pay the full amount of coverage

owed for property damage arising out of Hurricane Harvey to two separate properties located in Port Arthur, Texas.

## THE PARTIES

4.     Plaintiff Distribution International is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

5. ·     Defendant Wausau is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Boston, Massachusetts.  Wausau may be served with summons through its registered agent for service of process in Texas: Corporation Service Company, 211 East 7th Street, Suite 620, Suite 620, Austin TX 78701-3218.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction of this cause and jurisdiction to grant all relief requested by Distribution International.   The amount in controversy is within the jurisdictional limits of this Court.

7.     Venue is proper in Harris County, Texas, pursuant to section 15.092 of the Texas Civil Practice and Remedies Code, because all or part of the contract was to be performed in Harris County, Texas and the policy at issue was issued and delivered in Harris County, Texas. Venue is also proper pursuant to section 15.002 of the Texas Civil Practice and Remedies Code because Harris County is where a substantial part of the events or omissions giving rise to the claim occurred.

## THE POLICY

8.     Distribution International is the First Named Insured under a Premier Property Protector insurance policy issued by Defendant Wausau for the period from March 31, 2017 to

March 31, 2018, Policy No. YAC-L9L-453866-027 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit A.

9.     The Policy provides coverage for "Property, as described in this Policy, against all risks of physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy."

10.     Among other categories of covered "Property," the Policy provides coverage for "Real Property" and "Personal Property" located at or within 1,000 feet of a covered location

11.     The Policy defines "Real Property," in part, as "Building(s) and any other structure."

12.     The Policy defines "Personal Property," in part, as "'Your' tangible things, other than 'real property' owned by 'you' and used in 'your business.'"

13.     The Policy also provides coverage for "'Your actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy," including "Gross Earnings" loss and "Extra Expense."

14.     The Policy defines "Gross Earnings" loss, in part, as "the actual loss sustained by 'you' due to the necessary interruption of 'your' business during the PERIOD OF LIABILITY."

15.     The "Extra Expense" coverage under the Policy applies to " 'your' reasonable and necessary extra costs ... [t]o temporarily continue as nearly normal as practicable the conduct of 'your' business ... and [t]he temporary use of property or facilities of 'yours' or others" incurred during the PERIOD OF LIABILITY.

3

16.     Among other covered buildings, the Policy's Schedule of Covered Locations lists 6401 S Twin City Hwy and 202 Valley Forge in Port Arthur, Texas (the "Port Arthur Properties").

17.     The Policy Limit of Liability is $50,000,000.

18.     The Policy states Wausau "will pay the insured loss within thirty (30) days after 'we' receive and accept the signed, sworn Proof of Loss" if certain conditions apply.

## **BACKGROUND**

19.     This is a straightforward property damage insurance claim, falling directly within the coverage of the Policy.

20.     On or about August 25, 2017, multiple buildings owned by Distribution International, including the Port Arthur Properties, sustained damage and loss caused by Hurricane Harvey, including damage to "Real Property" and "Personal Property."

21.     The physical damage and loss to the Port Arthur Properties constitutes covered physical damage and loss under the Policy.

22.     Distribution International also incurred "Gross Earnings" loss and "Extra Expense" in connection with the physical damage and loss to the Port Arthur Properties.

23.     The Port Arthur Properties are listed on the Policy's Schedule of Covered Locations.

24.     Distribution International timely submitted a Proof of Loss to Wausau in connection with the Port Arthur Properties and its other properties damaged by Hurricane Harvey.

25.     By letter dated October 27, 2017, Liberty Mutual asserted that a separate deductible of $500,000 applies to each of Distribution International's claims for coverage for

4

loss and damage to "Real Property" and "Personal Property" to the Port Arthur Properties, and that a separate $100,000 deductible applies Distribution International's claim for coverage for "Gross Earnings" loss and "Extra Expense" in connection with the loss and damage to the Port Arthur Properties.

26.     Distribution International disputed Wausau's deductible position because the Policy states that if two or more deductibles apply to an occurrence, the total deductible will not exceed the largest applicable deductible.  Distribution International thus demanded that Wausau revise its deductible position and agree and acknowledge that only a $500,000 deductible applies to Distribution International's claim in connection with the Port Arthur Properties.

27.     Wausau has failed and refused to revise its position, denying coverage for $600,000 to which Distribution International is entitled.

28.     All conditions and requirements imposed by the Policy on Distribution International, including but not limited to the payment of premiums, notice of claims and occurrences, and exhaustion of underlying limits and deductibles, if any, have been satisfied and/or waived and/or are subject to an estoppel or other avoidance against Wausau.

## COUNT I
## BREACH OF CONTRACT

29.     The preceding paragraphs are incorporated here by reference.

30.     Under the terms of the Policy, Wausau was obligated to provide coverage for loss or damage to "Real Property" and "Personal Property" and for "Gross Earnings" loss and "Extra Expense" in connection with the physical damage and loss to covered locations.

31.     Under the terms of the Policy, if two or more deductibles apply to an occurrence, the total deductible will not exceed the largest applicable deductible.

32.    Wausau is obligated to provide coverage to Distribution International for its loss or damage to "Real Property" and "Personal Property" and for "Gross Earnings" loss and "Extra Expense" in connection with the physical damage and loss to the Port Arthur Properties, and only is entitled to apply a deductible of $500,000 with respect to this coverage.

33.    Wausau has improperly asserted that a deductible of $1.1 million applies to Distribution International's claim for coverage for the Port Arthur Properties. As a result, Wausau has failed and refused to comply with its contractual obligations under the Policy. Accordingly, Distribution International seeks damages for breach of contract from Wausau.

## COUNT II
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

34.    The preceding paragraphs are incorporated here by reference.

35.    A special relationship existed between Wausau, as insurer, and Distribution International, as the policyholder. As a result of the special relationship between Wausau and Distribution International, Wausau owed Distribution International a duty of good faith and fair dealing.

36.    Wausau breached its duty to Distribution International through the facts as outlined above, by denying or delaying payment of the claims without a reasonable basis, and by its failure to properly, thoroughly and timely investigate and evaluate Distribution International's losses, in the following particulars, among others:

a. By failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of Distribution International's claims after liability became reasonably clear;

b. In failing to timely and reasonably respond to Distribution International after Distribution International presented covered losses to Wausau;

c. By failing to promptly provide Distribution International a reasonable explanation of the basis for Wausau's denial and refusal to pay the claims;

6

d. By failing to conduct a reasonable investigation of the claims;

e. By performing an investigation not reasonably calculated to find coverage, but instead designed to try to avoid coverage.

f. By misrepresenting to Distribution International a material fact or policy provision relating to coverage at issue; and

g. Any and all other acts of conduct that may be uncovered or committed during the discovery phase and/or trial of this lawsuit.

37. Each breach of the duty of good faith and fair dealing by Wausau was a cause of the damages to Distribution International, and Distribution International seeks to recover its damages for these breaches.

## COUNT III
## UNFAIR OR DECEPTIVE ACTS OR PRACTICES

38. The preceding paragraphs are incorporated here by reference.

39. The conduct of Wausau, including its investigating, processing, and delaying or refusing payment of Distribution International's losses, constitutes multiple violations of TEX. INS. CODE § 541.001 *et seq.* and § 542.003, and constitutes unfair or deceptive acts or practices in the business of insurance prohibited by TEX. INS. CODE § 541.001 *et seq.*, TEX. INS. CODE § 542.003, and rules and regulations addressed by the State Board of Insurance.  Wausau violated those provisions in the following particulars, among others:

a. By failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Distribution International's claims after liability became reasonably clear;

b. In failing to timely and reasonably respond to Distribution International after covered losses were presented to Wausau;

c. By failing to promptly provide Distribution International a reasonable explanation of the basis for Wausau's denial and refusal to pay the claims;

d. By failing to conduct a reasonable investigation of the claims;

e.  By performing an investigation not reasonably calculated to find coverage, but instead designed to try to avoid coverage.

f.  By misrepresenting to Distribution International a material fact or policy provision relating to the coverage at issue; and

g.  Any and all other acts of conduct which may be uncovered or committed during the discovery phase and/or trial of this lawsuit.

40.     Each such action or inaction by Wausau was a cause of damages to Distribution International.

## COUNT IV
## PROMPT PAYMENT VIOLATIONS

41.     The preceding paragraphs are incorporated here by reference.

42.     Distribution International timely notified Wausau of the claim and provided all information necessary for Wausau to investigate and pay the claim.

43.     Under the terms of the Policy and the Prompt Payment Act of the Texas Insurance Code, Wausau was required to timely acknowledge receipt of Distribution International's claim, commence any investigation of the claim, and request from Distribution International all items, statements and forms that Wausau reasonably believed, at that time, would be required from Distribution International.  An insurer may make additional requests for information, but only if during the investigation the additional requests become necessary.

44.     Wausau violated the Prompt Payment Act and the Policy in numerous respects. Wausau wrongfully denied and delayed payment of the entirety of Distribution International's claims and failed to timely commence its investigation.   Wausau also failed to timely pay Distribution International's claims, instead issuing its wrongful denial in a letter dated October 27, 2017.  Wausau failed to provide a proper basis for its denial and failed to timely pay the full amount of Distribution International's losses.

8

45.     Accordingly, Wausau is liable to Distribution International for prejudgment interest, plus an additional 18% per year of the amount of Distribution International's losses, together with reasonable attorneys' fees and costs, pursuant to TEX. INS. CODE ANN. § 542.060.

## MULTIPLE DAMAGES

46.     On information and belief, Wausau's unlawful acts and practices were committed knowingly as defined in § 541.002 and demonstrate actual conscious indifference for the rights and welfare of Distribution International, entitling Distribution International to multiple damages.  In refusing to timely indemnify Distribution International for its losses, Wausau knew that Distribution International would incur and continue to incur substantial expenses despite the fact that it had insurance coverage under the Policy.  Distribution International seeks recovery of multiple damages in an amount three times Distribution International's actual damages described above.

## PUNITIVE DAMAGES

47.     On information and belief, Wausau's breaches of the duty of good faith and fair dealing were grossly negligent or committed with malice as such terms are defined in Chapter 41 of the Texas Civil Practices & Remedies Code.  Distribution International seeks exemplary damages in an amount that will inhibit and deter Wausau from engaging in this type of claims-handling misconduct in the future.  Such exemplary damages shall not exceed an amount equal to the greater of two times Distribution International's actual damages.

## ATTORNEYS' FEES

48.     Distribution International was forced to retain the undersigned attorneys to pursue these causes of action.  Therefore, under TEX. INS. CODE ANN. § 541.152 and § 542.060 and TEX.

CIV. PRAC. & REM. CODE §38.001, Distribution International has the right to recover all of its reasonable and necessary trial and appellate attorneys' fees.

## REQUEST FOR DISCLOSURE

49.     Precision requests that Wausau disclose all of the information provided for by Texas Rule of Civil Procedure 194.

## JURY DEMAND

50.     Pursuant to the provisions of Rule 216 of the Texas Rules of Civil Procedure, Distribution International makes this demand for a jury trial in this litigation.

**WHEREFORE**, Distribution International requests that:

(a)     Wausau be cited to appear and answer these claims;

(b)     Judgment be entered against Wausau and in favor of Distribution International for:

    (1)     Distribution International's actual damages in an amount in excess of the minimum jurisdictional limits of this Court;

    (2)     penalty interest at the rate of eighteen percent (18%) per year of its claim as damages, pursuant to TEX. INS. CODE §542.060;

    (3)     multiple damages as a result of Wausau's knowing violations of TEX. INS. CODE §541.001 *et seq.*;

    (4)     Consequential damages resulting naturally, but not necessarily, from Wausau's failure to abide by the terms of the Policy and breaches of contract and/or the other acts and omissions complained of;

    (5)     punitive damages for Wausau's malicious conduct and conscious indifference to the rights and welfare of Distribution International;

    (6)     prejudgment and post-judgment interest at the maximum allowable rates;

    (7)     reasonable attorney's fees and expenses;

    (8)     all costs in prosecuting this litigation; and

    (9)     any additional relief, legal and equitable, general or special, to which Distribution International may be justly or equitably entitled.

Respectfully submitted,

REED SMITH LLP

*/s/ J. James Cooper*
J. James Cooper
Texas State Bar #:  0478010
811 Main St #1700
Houston, Texas  77002
Telephone: 713.469.3800
Telecopier: 713.469.3899
jcooper@reedsmith.com

Of Counsel:
John D. Shugrue
10 South Wacker Drive, 40th Floor
Chicago, Illinois  60606
Telephone: 312.207.1000
Telecopier: 312.207.6400
jshugrue@reedsmith.com

**ATTORNEYS FOR PLAINTIFF**
**DISTRIBUTION INTERNATIONAL, INC.**

# Exhibit A



## PREMIER PROPERTY PROTECTOR™

POLICY COVER PAGE

| POLICY NUMBER:<br>**YAC-L9L-453866-027** | DATE OF ISSUE:<br>**03/31/2017** |
|---|---|

| COMPANY PROVIDING INSURANCE: |
|---|
| Employers Insurance Company of Wausau<br>( hereafter referred to as **we**, **us** or **our** ) |

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**We** insure:

| Distribution International, Inc.<br>( hereafter referred to as **you** or **your(s)** ) |
|---|

The term of this Policy is from **March 31, 2017 to March 31, 2018** at 12:01 a.m., local time.  In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

PRODUCER'S NAME AND MAILING ADDRESS
**Chris Gilbertson
Marsh USA, Inc.
1166 Avenue of the Americas
New York, NY 10036-2774**

While this Policy is in effect, **you** are a member of Liberty Mutual Holding Company Inc. and are entitled to vote either in person or by proxy at any and all meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning. **You** shall participate in the distribution of surplus funds of the company through any dividends that may be declared for this Policy. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply. Members of Liberty Mutual Holding Company Inc. may request a copy of the company's annual financial statements, which are posted on **our** website, www.libertymutual.com, or by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts, 02117.

This Policy is classified for dividend purposes in DIVIDEND CLASS I - Fire and Allied Lines.  This Policy is not assessable.

IN WITNESS WHEREOF, the company has caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by a duly authorized representative of the company.

President

Secretary

# TABLE OF CONTENTS

POLICY COVER PAGE

## SECTION I – DECLARATIONS

**A.** FIRST NAMED INSURED AND MAILING ADDRESS
**B.** POLICY PERIOD
**C.** INSURING AGREEMENT
**D.** PREMIUM
**E.** PREMIUM PAYABLE
**F.** COVERED **LOCATION(S)**
**G.** TERRITORY
**H.** JURISDICTION
**I.** CURRENCY
**J.** DEFINED WORDS
**K.** LIMITS OF LIABILITY
**L.** CANCELLATION TIME SPECIFICATIONS
**M.** DEDUCTIBLES
**N.** QUALIFYING PERIOD(S)

## SECTION II – PROPERTY DAMAGE

**A. COVERED PROPERTY**
**B.** PROPERTY NOT COVERED
**C.** EXCLUSIONS
**D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS
   **1.** ACCOUNTS RECEIVABLE
   **2.** BRANDS AND LABELS
   **3.** CONTROL OF DAMAGED GOODS
   **4.** COURSE OF CONSTRUCTION
   **5.** DATA, PROGRAMS OR SOFTWARE
   **6.** DEBRIS REMOVAL
   **7.** DECONTAMINATION COSTS
   **8.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS
   **9.** DEFERRED PAYMENTS
   **10.** DEMOLITION AND INCREASED COST OF CONSTRUCTION
   **11.** ERRORS AND OMISSIONS
   **12.** EXPEDITING EXPENSE
   **13. FINE ARTS**
   **14.** FIRE DEPARTMENT SERVICE CHARGES
   **15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL
   **16.** MISCELLANEOUS **PERSONAL PROPERTY**
   **17.** NEWLY ACQUIRED **LOCATIONS**
   **18.** OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE

**19.** PROFESSIONAL FEES
**20.** PROTECTION AND PRESERVATION OF PROPERTY
**21.** RADIOACTIVE **CONTAMINATION**
**22.** TAX LIABILITY
**23.** TEMPORARY REMOVAL OF PROPERTY
**24.** TRANSIT
**25. VALUABLE PAPERS AND RECORDS**

## SECTION III – TIME ELEMENT

**A.** LOSS INSURED
**B.** TIME ELEMENT COVERAGES
    **1.** *GROSS EARNINGS*
    **2.** EXTRA EXPENSE
    **3.** LEASEHOLD INTEREST
    **4.** RENTAL INSURANCE
**C.** PERIOD OF LIABILITY
**D.** TIME ELEMENT EXCLUSIONS
**E.** TIME ELEMENT COVERAGES AND LIMITATIONS
    **1.** *ATTRACTION PROPERTY*
    **2.** CIVIL OR MILITARY AUTHORITY
    **3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE
    **4.** CONTINGENT TIME ELEMENT
    **5.** CRISIS MANAGEMENT
    **6.** DELAY IN STARTUP
    **7.** EXTENDED PERIOD OF LIABILITY
    **8.** INGRESS / EGRESS
    **9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT
    **10.** ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT
    **11.** PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT
    **12.** RELATED **LOCATIONS**
    **13.** RESEARCH AND DEVELOPMENT
    **14.** *SOFT COSTS*

## SECTION IV – DESCRIBED LOSSES

**A.** *EARTH MOVEMENT*
**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE
**C.** EQUIPMENT BREAKDOWN
**D.** *FLOOD*
**E.** *NAMED STORM*

## SECTION V - GENERAL POLICY CONDITIONS

**A.** ASSIGNMENT
**B.** CANCELLATION
**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD
**D.** CONFORMITY TO STATUTES
**E.** INSPECTION
**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS
**G.** LIBERALIZATION
**H.** NO REDUCTION BY LOSS
**I.** NONRENEWAL
**J.** OTHER INSURANCE
**K.** PAIR, SET OR PARTS
**L.** POLICY MODIFICATION
**M.** TITLES
**N.** TRANSFER OF RIGHTS AND DUTIES
**O.** VACANCY
**P.** VALUATION

## SECTION VI – LOSS CONDITIONS

**A.** ABANDONMENT OF PROPERTY
**B.** APPRAISAL
**C.** COLLECTION FROM OTHERS
**D.** COMPANY OPTION
**E.** DUTIES AFTER A LOSS
**F.** LOSS ADJUSTMENT / PAYABLE
**G.** PAYMENT OF LOSS
**H.** SUBROGATION
**I.** SUIT AGAINST THE COMPANY

## SECTION VII – DEFINITIONS

## APPENDIX A - SCHEDULE OF COVERED **LOCATIONS**

## APPENDIX B – NEW MADRID *EARTH MOVEMENT* ZONES

## APPENDIX C – PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE

## APPENDIX D - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES

## APPENDIX E - *FLOOD* HAZARD **LOCATIONS**

## FORMS AND ENDORSEMENTS

## STATE AMENDATORY ENDORSEMENTS

# SECTION I - DECLARATIONS

**A.** FIRST NAMED INSURED AND MAILING ADDRESS

**Distribution International, Inc.** and any subsidiary, and the interest of **Distribution International, Inc.** in any partnership or joint venture in which **Distribution International, Inc.** has management control, ownership, or is obligated to insure, as now constituted or hereafter is acquired, as the respective interest of each may appear; all hereafter referred to as **you** or **yours**, including legal representatives.

When any Insured described above is a party to a written contract or agreement on file that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to **covered property** which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any TIME ELEMENT Coverage to the legal entity, except as provided under LEASEHOLD INTEREST of this Policy or as specifically endorsed to the Policy.

**9000 Railwood Dr**
**Houston, TX 77078**

**B.** POLICY PERIOD

The term of this Policy is from **March 31, 2017 to March 31, 2018** at 12:01 a.m., local time.  In the event of a claim, the Policy period is measured by local time at the **location** where the direct physical loss or damage occurs.

**C.** INSURING AGREEMENT

In consideration of this Policy's Provisions, Conditions, Stipulations, LIMITS OF LIABILITY and of premium charged, **we** cover property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded or limited, while located as described in this Policy.

**D.** PREMIUM

This Policy is issued in consideration of the following initial premium inclusive of any premium shown on endorsements which are part of the Policy at the time of issue.

| | |
|---|---|
| Policy Premium (Excluding premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended): | $356,259 |
| Policy Premium for "certified act(s) of **terrorism**" under the **Terrorism** Risk Insurance Act (TRIA), as amended:<br><br>• Policy Premium for Fire Following Acts of **Terrorism** (in States where required) | $5,008 |
| Commission | 15% |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges: (See State or Municipal Taxes, Surcharges and Other Miscellaneous Charges summary shown below) | $884 |

© 2016 Liberty Mutual Insurance

| Service Charges: (See Service Charges summary shown below) | N/A |
|---|---|
| | |
| Total Policy Premium/Other Charges for Above Policy Period: | $362,151 |
| | |
| Policy Premium will be billed **8 installments.** The Deposit Premium/Other Charges is: | $46,042 |

State or Municipal Taxes, Surcharges and Other Miscellaneous Charges

The amount shown below for State or Municipal Taxes, Surcharges and Other Miscellaneous Charges is comprised of the following amounts:

| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges | Amount |
|---|---|
| Louisiana FAIR Plan Emergency Assessment | $780 |
| New Jersey Surcharge | $58 |
| New York FIF | $39 |
| West Virginia Surcharge | $7 |
| State or Municipal Taxes, Surcharges and Other Miscellaneous Charges Total | $884 |

Service Charges

The amounts shown below for Service Charges are comprised of the following:

| Service Charges | Amount |
|---|---|
| | |
| Service Charges Total | N/A |

E.  PREMIUM PAYABLE

The First Named Insured pays the premium under this Policy, and any return of the paid premium accruing under this Policy will be paid to the account of the First Named Insured.

Premiums will be paid in the currency designated in paragraph **I.** CURRENCY.

**F.** COVERED **LOCATION(S)**

This Policy applies at a **location(s)**:

**1.** Listed on a SCHEDULE on file with **us**;

**2.** Listed on the SCHEDULE attached to this Policy;

**3.** Covered as a **Miscellaneous Unnamed Location**; or

**4.** Covered under the terms and conditions of the NEWLY ACQUIRED **LOCATIONS** Coverage or ERRORS AND OMISSIONS Coverage.

**G.** TERRITORY

Coverage under this Policy applies to **covered property** within the continental United States of America, Hawaii and Puerto Rico.

**H.** JURISDICTION

The validity and interpretation of this Policy shall be governed by and construed in accordance with the laws of the State of New York.

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**I.** CURRENCY

All amounts, including deductibles and LIMITS OF LIABILITY, indicated in this Policy are in U.S. Dollars unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

**J.** DEFINED WORDS

Words in bold face type have special meanings in this Policy and are defined in the DEFINITIONS section of this Policy. These definitions apply to this entire Policy and to any endorsements to it. Definitions that apply to individual sections or paragraphs are italicized and defined in the applicable sections or paragraphs.

**K.** LIMITS OF LIABILITY

When a POLICY LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, **our** maximum LIMIT OF LIABILITY in an **occurrence**, including any insured TIME ELEMENT loss, will not exceed the stated POLICY LIMIT OF LIABILITY.

**1.** When a PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, it will apply to all coverages provided throughout this Policy, unless a LIMIT OF LIABILITY or "NCP" (No Coverage Provided) is indicated.

   **a.** When a LIMIT OF LIABILITY is specified in the LIMITS OF LIABILITY Table in the Declarations, such limit will be the maximum amount payable for such loss or damage and cannot be combined with any other LIMIT OF LIABILITY.

   **b.** If "NCP" is specified in the LIMITS OF LIABILITY, there is no coverage provided in this Policy.

**2.** LIMITS OF LIABILITY in an **occurrence** apply to the total loss or damage at all **locations** and for all coverages involved, including any insured TIME ELEMENT loss, subject to the following provisions:

   **a.** When a LIMIT OF LIABILITY that applies in the aggregate during any Policy year is shown, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY during any Policy year.

**b.** When a LIMIT OF LIABILITY applies to a **location(s)**, specified property, DESCRIBED LOSSES or a specific coverage, the smallest applicable  LIMIT OF LIABILITY will be the maximum amount payable.

**c.** Should an **occurrence** result in liability payable under more than one Policy issued to **you** by **us**, or by **our** subsidiaries, partners, or associated insurance companies, the maximum amount payable in the aggregate under all such policies will be the applicable LIMIT(S) OF LIABILITY indicated in this Policy.

**d.** When a LIMIT OF LIABILITY applies to TIME ELEMENT only, **our** maximum amount payable will not exceed such LIMIT OF LIABILITY per **occurrence**.

**3.** LIMITS OF LIABILITY specified below or elsewhere in this Policy do not increase and are part of and not in addition to the POLICY LIMIT OF LIABILITY or the PROPERTY DAMAGE and TIME ELEMENT LIMIT OF LIABILITY.

**4.** LIMITS OF LIABILITY apply per **occurrence** unless otherwise specified, including time and distance limits.

LIMITS OF LIABILITY TABLE – PART ONE

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| POLICY LIMIT OF LIABILITY | $50,000,000 |
| ACCOUNTS RECEIVABLE | $1,000,000 |
| *ATTRACTION PROPERTY* | NCP |
| BRANDS AND LABELS | $100,000 |
| CIVIL OR MILITARY AUTHORITY | **One statute miles** from a covered **location** <br><br> **30 consecutive days**, not to exceed $1,000,000 |
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | $1,000,000 |
| CONTINGENT TIME ELEMENT <br><br> • *Direct Dependent Contingent Time Element* **Location(s)**: Not Scheduled or on file with **us** | $1,000,000 |
| CONTROL OF DAMAGED GOODS | $100,000 |

| | |
|---|---|
| COURSE OF CONSTRUCTION | $1,000,000 |
| CRISIS MANAGEMENT | NCP |
| DEBRIS REMOVAL | $5,000,000 |
| DECONTAMINATION COSTS | $100,000 |
| DEFERRED PAYMENTS | $100,000 |
| DELAY IN STARTUP | $100,000 |
| DEMOLITION AND INCREASED COST OF CONSTRUCTION | $5,000,000 |
| ERRORS AND OMISSIONS | $500,000 |
| EXPEDITING EXPENSE | $1,000,000 |
| EXTENDED PERIOD OF LIABILITY | **60 consecutive days** |
| EXTRA EXPENSE | $5,000,000 |

| | |
|---|---|
| **FINE ARTS**<br><br>not to exceed the limits specified below: | $500,000 |
| FIRE DEPARTMENT SERVICE CHARGES | $100,000 |
| IMPOUNDED WATER | $100,000 |
| INGRESS / EGRESS | **One statute miles** from a covered **location**<br><br>**30 consecutive days**, not to exceed $1,000,000 |
| LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL in the **annual aggregate** | $100,000 |
| LEASEHOLD INTEREST | $1,000,000 |
| MISCELLANEOUS **PERSONAL PROPERTY** | $100,000 |
| **Miscellaneous Unnamed Locations** | $2,500,000 |
| Mold, Mildew or Fungus directly resulting from a **Covered Loss** | $500,000 |
| NEWLY ACQUIRED **LOCATIONS** | **90 consecutive days**, not to exceed $5,000,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE and OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT | $1,000,000 |
| **Ordinary Payroll** | NCP |

| | |
|---|---|
| PROFESSIONAL FEES | $250,000 |
| RADIOACTIVE **CONTAMINATION** | NCP |
| RENTAL INSURANCE | $100,000 |
| RESEARCH AND DEVELOPMENT | $100,000 |
| *SOFT COSTS* | $100,000 |
| TRANSIT | $500,000 |
| **VALUABLE PAPERS AND RECORDS** | $10,000,000 |

© 2016 Liberty Mutual Insurance

LIMITS OF LIABILITY TABLE – PART TWO

| COVERAGE | LIMITS OF LIABILITY AND TIME AND DISTANCE LIMITS |
|---|---|
| *EARTH MOVEMENT* in the **annual aggregate** | $25,000,000 |
| except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *EARTH MOVEMENT* **annual aggregate** limit: | |
| • **Covered property** situated in: **State of Alaska** and **State of California** | $2,500,000 |
| Areas defined as **New Madrid Earth Movement Zone** and **Pacific Northwest Earth Movement Zone** | $10,000,000 |
| **State of Hawaii** and **Commonwealth of Puerto Rico** | NCP |
| except: | |
| • **Covered property at the location(s)** covered by the following Coverage(s) and Limitations: **Contingent Time Element** | $1,000,000 |
| **Course of Construction** | |
| **Errors and Omissions** | |
| **Miscellaneous Unnamed Locations** | |
| **Newly Acquired Locations** | |
| **Off Premises Interruption of Services** | |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $50,000,000 |

© 2016 Liberty Mutual Insurance

| | |
|---|---|
| EQUIPMENT BREAKDOWN<br><br>PROPERTY DAMAGE and TIME ELEMENT<br><br>except:<br><br>    <u>The following limits are part of and not in addition to the</u><br>    <u>EQUIPMENT BREAKDOWN limits specified above:</u><br><br>•   Ammonia **Contamination**<br><br>•   CONTINGENT TIME ELEMENT<br><br>•   Spoilage Damage | $50,000,000<br><br><br><br><br><br><br><br>$1,000,000<br><br>$1,000,000<br><br>$1,000,000 |
| *FLOOD* in the **annual aggregate**<br><br><br>except the following limits apply per **occurrence** and in the **annual aggregate**, and are part of and not in addition to the *FLOOD* **annual aggregate** limit:<br><br><br>•   <u>Covered property</u> at <u>locations</u> situated in:<br>    **Moderate Hazard Locations**<br><br><br>    **High Hazard Locations**<br><br><br>except:<br><br>•   <u>Covered property</u> at the <u>location(s)</u> covered by the<br>    <u>following Coverage(s) and Limitations:</u><br>    **Contingent Time Element**<br><br>    **Course of Construction**<br><br>    **Errors and Omissions**<br><br>    **Miscellaneous Unnamed Locations**<br><br>    **Newly Acquired Locations**<br><br>    **Off Premises Interruption of Services** | $25,000,000<br><br><br><br><br><br><br><br><br><br><br>$10,000,000<br><br><br>$2,500,000<br><br><br><br><br><br><br>$1,000,000 |
| *NAMED STORM* | $50,000,000 |

ENDORSEMENT LIMITS OF LIABILITY

| Endorsement Number | Endorsement Name | LIMITS OF LIABILITY |
|---|---|---|
| PY 03 12 01 17 | Reward Coverage Endorsement | $25,000 |

**L.  CANCELLATION TIME SPECIFICATIONS**

| | |
|---|---|
| Cancellation for Nonpayment of Premium | Ten (10) days |
| Cancellation for All Reasons Other Than Nonpayment of Premium | Ninety (90) days |

**M.  DEDUCTIBLES**

Subject to the Deductible General Provisions stated below, **we** will not pay unless a **covered loss**, including any insured TIME ELEMENT loss, exceeds the deductible(s) specified below. **We** will then pay the amount of **covered loss** in excess of the deductible, up to the applicable LIMIT OF LIABILITY.

Deductible General Provisions

**We** will be liable only if **you** sustain a **covered loss**, including any insured TIME ELEMENT loss, in a single **occurrence** greater than the applicable deductible specified.  When this Policy insures more than one (1) **location**, the deductible(s) will apply against the total loss covered by this Policy in an **occurrence** unless otherwise stated.

1. Unless otherwise stated, if two or more deductibles apply to an **occurrence**, the total deductible will not exceed the largest applicable deductible, except as follows:

    a. When a separate PROPERTY DAMAGE and TIME ELEMENT deductible apply, each will be applied separately.

    b. If there are multiple **locations** involved in an **occurrence** where two or more deductibles apply to a **location** in an **occurrence**, the largest deductible applying to each **location** will be applied separately to each such **location**, regardless of the number of **locations** involved in the **occurrence**.

    c. Unless specified otherwise, if deductibles are specified for a **location**, the largest deductible applicable will be applied to that **location** regardless of the number of **locations** involved in the **occurrence**.

    d. Equipment Breakdown: With regard to Equipment Breakdown coverage, if one or more deductible amounts are shown below, each will be applied separately.

    e. The stated *EARTH MOVEMENT* deductible will be applied to *EARTH MOVEMENT* loss. The stated *FLOOD* deductible will be applied to *FLOOD* loss. The stated *NAMED STORM* deductible will be applied to *NAMED STORM* loss. Provisions **1.a.** and **1.b.** above will also be applied to each.

2. When a percent deductible is specified, whether separate or combined, the deductible amount will be determined as follows:

**a.** PROPERTY DAMAGE:  The percentage of the total reported values on file with **us** for the **covered property** at the corresponding **location(s)** (including sub-**locations**) where the direct physical loss or damage occurred; plus

**b.** TIME ELEMENT:  The percentage of the full TIME ELEMENT values that would have been earned in the 12-month period following the **occurrence**, had no loss occurred, by use of the facilities at the **location** where the direct physical loss or damage occurred, plus that proportion of the full TIME ELEMENT values at all other **locations** where TIME ELEMENT loss ensues that was directly affected by use of such facilities and that would have been earned in the 12-month period following the **occurrence**.

**c.** Equipment Breakdown: The percentage of the gross amount of loss, damage or expense (prior any deductible) insured under the applicable coverage.  If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

**3.** When a minimum deductible is shown, the minimum deductible is the sum of:

**a.** The specific **location** deductible for each covered **location** where the amount of physical loss or damage exceeds the specific **location** deductible; and

**b.** The amount of physical loss or damage for each covered **location** where the amount of physical loss or damage is less than the specific **location** deductible.

**4.** When an average daily value deductible is provided, this deductible will be determined as follows:

**a.** The total amount of TIME ELEMENT loss applicable for the entire **location** where the direct physical loss or damage happens will be included.

**b.** Divide the result in Paragraph **a.** by the number of days the business would have been open during the PERIOD OF LIABILITY. The result is the average daily value.

**c.** Multiply the average daily value in Paragraph **b.** by the number of days specified in the DEDUCTIBLE TABLE below.

If more than one (1) **location** is included in the valuation of the loss, the average daily value will be the combined value of all affected **locations**.

**5.** When a per unit deductible is specified, the following shall be considered a separate unit of insurance:

**a.** Each separate building, the contents of each separate building and **covered property** in each yard at that covered **location**.

**b.** TIME ELEMENT loss as applicable, including all other **locations** where TIME ELEMENT loss ensues as provided by this Policy.

**6.** When a time deductible is shown, **we** will not be liable for any loss under that coverage that occurs during that specified time period immediately following the direct physical loss or damage.  If a time deductible is shown in days, each day shall mean twenty four (24) consecutive hours.

**7.** When a deductible is shown in the Declarations for a *NAMED STORM*, the following applies:

**a.** All direct physical loss or damage to **covered property** including TIME ELEMENT loss caused by or resulting from a *NAMED STORM* will be subject to the deductible obtained by calculating all of the following:

**(1)** The sum of all applicable percentage deductibles calculated as described in Deductible General Provisions Item **2.** above, subject to any applicable minimums or maximums; and

**(2)** Any other applicable deductible amounts.

DEDUCTIBLE TABLE – PART ONE

| Coverage | Deductible Percentage / Amounts |
|---|---|
| Policy Deductible (except as otherwise indicated)<br><br>PROPERTY DAMAGE and TIME ELEMENT | $50,000 |
| Hail | $50,000 |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | $50,000 |
| TRANSIT | $50,000 |

DEDUCTIBLE TABLE – PART TWO

| Coverage | Deductible Percentage / Amounts |
|---|---|
| *EARTH MOVEMENT* | $100,000 |
| except: | |
| • **Covered property** situated in:<br>**State of Alaska** and **State of California** | 5% subject to $250,000 minimum |
| Areas defined as **New Madrid Earth Movement Zone** and **Pacific Northwest Earth Movement Zone** | 2% subject to $100,000 minimum |
| **State of Hawaii** and **Commonwealth of Puerto Rico** | NCP |
| except: | |
| • **Covered property** at the **location(s) covered by the following Coverage(s) and Limitations:**<br>**Contingent Time Element**<br>**Course of Construction**<br>**Errors and Omissions**<br>**Miscellaneous Unnamed Locations**<br>**Newly Acquired Locations**<br>**Off Premises Interruption of Services** | $100,000 |
| *EARTH MOVEMENT* SPRINKLER LEAKAGE | $100,000 |
| EQUIPMENT BREAKDOWN | |
| PROPERTY DAMAGE and TIME ELEMENT | $50,000 |
| • Spoilage Damage | $50,000 |
| • Ammonia **Contamination** | $50,000 |
| | |

 © 2016 Liberty Mutual Insurance

| | |
|---|---|
| *FLOOD* | $100,000 |
| except: | |
| • **Covered property** at **locations** situated in: **Moderate Hazard Locations** | $100,000 |
| **High Hazard Locations** | $500,000 Real Property |
| | $500,000 Personal Property |
| | $100,000 All Other Property |
| except: | |
| • **Covered property** at the **location(s)** covered by the following Coverage(s) and Limitations: **Contingent Time Element** | $100,000 |
| **Course of Construction** | |
| **Errors and Omissions** | |
| **Miscellaneous Unnamed Locations** | |
| **Newly Acquired Locations** | |
| **Off Premises Interruption of Services** | |
| *NAMED STORM* | $50,000 |
| except: | |
| **Locations** situated in: | |
| • Southern Tier I (NC – TX) Wind Zones | 2% subject to $100,000 minimum |
| • State of Florida and Commonwealth of Puerto Rico | 5% subject to $250,000 minimum |

### OCCURRENCE TIME SPECIFICATIONS

| | |
|---|---|
| *EARTH MOVEMENT* | continuous **72 hours** |
| *NAMED STORM* | continuous **72 hours** |

**N.** *QUALIFYING PERIOD(S)*

A *qualifying period* applies for the coverages shown in the Table below. *Qualifying period* is the period of time that must be exceeded for coverage to apply. Once the *qualifying period* has been exceeded, coverage applies from the initial event of loss.

*QUALIFYING PERIOD* TABLE

| Coverage | QUALIFYING PERIOD |
|---|---|
| COMPUTER SYSTEMS NON PHYSICAL DAMAGE and DATA, PROGRAMS OR SOFTWARE, combined | 24 hours |
| CRISIS MANAGEMENT | NCP |
| OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE AND TIME ELEMENT | 24 hours |

# SECTION II – PROPERTY DAMAGE

**A. COVERED PROPERTY**

1.  **We** cover **your** insurable interest in the following types of property that are located at or within one-thousand (1,000) feet of a covered **location**, unless otherwise excluded:

    a.  **Real Property**, including new buildings, structures and additions in the COURSE OF CONSTRUCTION.

    b.  **Personal Property**, including *personal property of others*.

    *Personal property of others* are tangible things that **you** do not own, other than **real property**, that:

    **(1)** are sold by **you** and that **you** have agreed, prior to loss, to insure for the account of the purchaser during delivery;

    **(2)** **you** have agreed in writing prior to any loss or damage to provide coverage;

    **(3)** are in **your** care, custody or control;

    **(4)** **you** have an insurable interest in, or an obligation to provide coverage;

    **(5)** **you** are legally liable for;

    **(6)** are improvements and betterments consisting of fixtures, alterations, installation or additions comprising part of a building not owned by **you** and acquired or made at **your** expense which **you** cannot legally move, but only to the extent of **your** insurable interest therein; or

    **(7)** are **personal property** (other than vehicles) of **your** employees and officers.

2.  **We** also cover the interest of contractors and subcontractors in **covered property** during construction at or within one-thousand (1,000) feet of a covered **location** to the extent of **your** legal liability for direct physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work and such interest will not extend to any TIME ELEMENT coverage provided under this Policy.

**B. PROPERTY NOT COVERED**

**We** do not cover the following types of property:

1.  Aircraft, except when unfueled and manufactured by **you**;

2.  Animals, standing timber including undisturbed natural wooded areas, or growing crops;

3.  Bridges or tunnels, however pedestrian walkways connecting buildings are covered;

4.  Caves, caverns, mines of any type, or any property contained within them;

5.  Contraband or property in the course of illegal transportation or trade;

6.  Currency, money, negotiable and non-negotiable instruments, notes or securities;

7.  Dams, dikes, levees, docks, wharfs, piers or bulkheads;

8. **Electronic data**, computer programs or software, except when they are stock in process, finished stock manufactured by **you**, raw materials, supplies, other merchandise not manufactured by **you** or as provided in this Policy;

9. Land and any substance in or on land except this exclusion does not apply to **land improvements**;

10. **Land improvements** at a golf course;

11. Overhead transmission and distribution systems located more than one-thousand (1,000) feet away from a covered **location**;

12. *Personal property of others* that is in the care, custody or control of **you** or **your** affiliates for which **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

13. Precious metals or precious stones, except when used in industrial or service operations;

14. Property in transit, except as otherwise provided by this Policy;

15. Property more specifically insured, except for any excess over any LIMITS OF LIABILITY of such more specific insurance;

16. Property sold by **you** under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to **your** customers, except as provided by the DEFERRED PAYMENTS coverage of this Policy;

17. Spacecraft, satellites, associated launch vehicles and any property contained therein;

18. Vehicles otherwise insured for physical loss or damage;

19. Water except this exclusion does not apply to water that is contained within any enclosed tank, piping system or any other processing equipment; or

20. Watercraft, except watercraft **you** manufacture and are part of **your** inventory while being stored un-fueled and on dry land at a covered **location**.

C. EXCLUSIONS

The following exclusions apply unless otherwise stated in this Policy:

1. **We** do not cover:

   a. Indirect or remote loss or damage;

   b. Interruption of business, except to the extent provided by this Policy;

   c. Loss of market or loss of use;

   d. Loss or damage or deterioration arising from any delay;

   e. Mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss;

   f. Loss or damage from enforcement of any law or ordinance:

      (1) Regulating the construction, repair, replacement, use or removal, including debris removal, of any property; or

**(2)** Requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DECONTAMINATION COSTS and DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this Policy;

**g.** Loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense; or

**h.** Loss or damage caused by or resulting from freezing, disease or drought to landscape gardening, including plants, trees and shrubs.

**2.** **We** do not cover physical loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing to the loss concurrently or in any other sequence:

**a.** **Terrorism**, including action in hindering or defending against an actual or expected incident of **terrorism**, but this exclusion applies only when one of the following are attributed to an incident of **terrorism:**

**(1)** The **terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive **contamination**; or

**(2)** Radioactive material is released, and it appears that one purpose of **terrorism** was to release such material; or

**(3)** The **terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(4)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **terrorism** was to release such materials; or

**(5)** Loss or damage to property located outside of the United States, unless there is a law in effect in the jurisdiction where the loss or damage occurs that expressly prohibits this exclusion; or

**(6)** The total of all damage to property, whether covered by this Policy or otherwise, exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, **we** will include all insured damage sustained by property of all persons and entities affected by the **terrorism** and business interruption (TIME ELEMENT) losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any **terrorism** exclusions. Multiple incidents of **terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one (1) incident, for the purpose of determining whether the threshold is exceeded.

With respect to this item **2.a.(6)**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of **terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of **terrorism**, there is no coverage in this Policy.

However, this exclusion does not apply:

**(1)** If **terrorism** results in fire, in which case **we** cover the direct physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage occurs that expressly prohibits the exclusion of fire losses resulting from **terrorism.** This exception is

subject to all applicable Policy provisions including the LIMIT OF LIABILITY on the affected property. Such coverage for ensuing loss applies only to direct loss or damage by fire to **covered property**. This coverage does not apply to insurance provided under any TIME ELEMENT coverages, or to fire legal liability coverage; or

**(2)** While the United States **Terrorism** Risk Insurance Act (TRIA), as amended, is in effect:

    **(a)** To loss or damage caused by a "Certified Act of **Terrorism**" provided that **you** elected coverage for such, and only to the extent provided by the terms and conditions of the applicable CERTIFIED ACTS OF **TERRORISM** AND DISCLOSURE PURSUANT TO **TERRORISM** RISK INSURANCE ACT endorsement; or

    **(b)** To loss or damage caused by **terrorism** that would have been certified as an "act of **terrorism**", but was not certified solely because the total of all property and casualty insurance losses resulting from the act failed to exceed the $5,000,000 "certified act of **terrorism**" threshold specified under TRIA.

**b.** Nuclear reaction or nuclear radiation or radioactive **contamination**. However, this exclusion does not apply if:

    **(1)** The RADIOACTIVE **CONTAMINATION** PROPERTY DAMAGE COVERAGE AND LIMITATION applies but only to the extent provided; or

    **(2)** Fire directly results from the nuclear reaction, nuclear radiation, or radioactive **contamination**, in which case **we** cover the physical loss or damage caused by the fire but only if there is a statute in effect in the jurisdiction where the loss or damage happens that expressly prohibits the exclusion of fire losses resulting from nuclear reaction, radiation or **contamination**.

**c.** Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack by any:

    **(1)** Government or sovereign power (de jure or de facto);

    **(2)** Military, naval or air force; or

    **(3)** Agent or authority of any party specified in **(1)** or **(2)** above.

**d.** Discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force, whether in time of peace or war and regardless of who commits the act.

**e.** The unlawful possession, use, release, discharge, dispersal or disposal of any chemical, biological, viral, radioactive or similar agents or matter, whether in time of peace or war and regardless of who commits the act.

**f.** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**g.** Seizure or destruction under quarantine or custom regulation, or confiscation by order of any governmental or public authority.

**h.** Risks of contraband, or illegal transportation or trade.

© 2016 Liberty Mutual Insurance

    **i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

        **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

        **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

    However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

    **j.** Lack of the following services:

        **(1)** Incoming electricity, fuel, water, gas, steam or refrigerant;

        **(2)** Outgoing sewerage; or

        **(3)** Incoming or outgoing voice, data or video,

    all when caused by an event away from the covered **location** except as provided in the ON/OFF PREMISES INTERRUPTION OF SERVICES coverages of this Policy.  But, if the lack of such a service causes physical loss or damage of the type insured by this Policy at a covered **location**, then only that resulting damage is covered.

**3.** **We** do not cover the following, but, if direct physical loss or damage not excluded by this Policy results, then **we** cover that resulting damage only:

    **a.** Faulty workmanship, material, construction or design.

    **b.** Loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on.

    **c.** Deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

    **d.** Settling, cracking, shrinking, bulging, or expansion of:

        **(1)** Foundations (including any pedestal, pad, platform or other property supporting machinery)

        **(2)** Floors

        **(3)** Pavements

        **(4)** Walls, including retaining walls

        **(5)** Ceilings

        **(6)** Roofs

    **e.** Extremes or changes in temperature (except to machinery or equipment) or changes in relative humidity, all whether atmospheric or not.

    **f.** Cumulative effects of smog, smoke, vapor, liquid and dust.

    **g.** Insect, animal or vermin damage.

    **h.** Loss or damage to the interior portion of buildings under construction caused by rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed.

 © 2016 Liberty Mutual Insurance

4. **We** do not cover the following unless directly resulting from a **covered loss**:

    **a.** **Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided elsewhere in this Policy.

    **b.** Shrinkage.

    **c.** Changes in color, flavor, texture or finish.

    **d.** Remediation, change, correction, repair or assessment of any date or time recognition in any **electronic data processing equipment** or media.

    **e.** Failure of **electronic data processing equipment** or media to correctly recognize, interpret, calculate, compare, differentiate, sequence, access or process data involving one or more dates or times.

**D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS

**We** provide the following PROPERTY DAMAGE COVERAGES AND LIMITATIONS for a **covered loss** as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

**1.** ACCOUNTS RECEIVABLE

    **a.** **We** cover the following resulting from a **covered loss** to accounts receivable records located while anywhere within the Policy territory, including while in transit:

        **(1)** Any shortage in the collection of accounts receivable.

        **(2)** The interest charges on any loan to offset such impaired collection pending repayment of such uncollectible sum. Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts will be deducted in determining the amount recoverable.

        **(3)** The reasonable and necessary cost incurred for material and time required to re-establish or reconstruct accounts receivable records excluding any costs covered by any other insurance.

        **(4)** Any other necessary and reasonable costs incurred to reduce the loss, to the extent the losses are reduced.

    **b.** Accounts receivable records include records stored as **electronic data**. In the event of loss, **you** will:

        **(1)** Use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding accounts receivable.

        **(2)** Reduce the loss by use of any property or service owned or controlled by **you** or obtainable from other sources.

        **(3)** Reconstruct, if possible, accounts receivable records so that no shortage is sustained.

    **c.** The settlement of loss will be made within ninety (90) days from the date of the **covered loss**. All amounts recovered by **you** on outstanding accounts receivable on the date of loss will belong and be paid to **us** up to the amount of loss paid by **us.** All recoveries exceeding the amount paid will belong to **you.**

    **d.** **We** do not cover shortage resulting from:

        **(1)** Bookkeeping, accounting or billing errors or omissions; or

    **(2)** Alteration, falsification, manipulation; or

    **(3)** Concealment, destruction or disposal, of accounts receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property; but only to the extent of such wrongful giving, taking, obtaining or withholding.

**2.** BRANDS AND LABELS

In the event of a **covered loss** to **your** branded or labeled merchandise, and **we** elect to take all or any part of that property, **you** may at **our** expense:

  **a.** Stamp "salvage" on the property or its containers; or

  **b.** Remove or obliterate the brands or labels,

if doing so will not damage the property.

**You** must re-label such property or its containers to be in compliance with any applicable law.

**3.** CONTROL OF DAMAGED GOODS

**We** grant control to **you** of physically damaged **covered property** consisting of finished goods manufactured by or for **you** as follows:

  **a.** **You** will have full rights to the possession and control of damaged property in the event of physical damage to **your covered property** provided proper testing is done to show which property is physically damaged.

  **b.** Using reasonable judgment, **you** will decide if the physically damaged **covered property** can be reprocessed or sold.

  **c.** Property **you** determine to be unfit for reprocessing or selling will not be sold or disposed of except by **you**, or with **your** consent.

    Any salvage proceeds received will reduce the recoverable loss.

**4.** COURSE OF CONSTRUCTION

  **a.** **We** cover direct physical loss or damage at a covered **location** to buildings or structures that **you** begin to construct during the Policy period.

  **b.** **We** also cover materials, supplies, machinery, equipment and fixtures:

    **(1)** At a covered **location** and intended for installation in the new construction;

    **(2)** After such property has been delivered to **you** or **your** contractor, and while such property is located offsite at a storage **location**; or

    **(3)** After such property has been delivered to **you** or **your** contractor, and while such property is in transit from a storage **location** to another storage **location** or to a covered **location.**

  **c.** This coverage only applies to the construction of **covered property you** intend to own or occupy once constructed.

  **d.** This coverage does not apply to any property owned or rented by any contractor or subcontractor.

 © 2016 Liberty Mutual Insurance

**5.** DATA, PROGRAMS OR SOFTWARE

    **a.** **We** cover direct physical loss or damage to **your electronic data**, computer programs or software, including direct physical loss or damage caused by the malicious introduction of a machine code or instruction, while anywhere within this Policy's territory, including:

        **(1)** The cost of the following reasonable and necessary actions taken by **you** provided such actions are taken due to actual insured physical loss or damage to **electronic data**, computer programs or software:

            **(a)** Actions to temporarily protect and preserve insured **electronic data**, computer programs or software.

            **(b)** Actions taken for the temporary repair of insured physical loss or damage to **electronic data**, computer programs or software.

            **(c)** Actions taken to expedite the permanent repair or replacement of such damaged property.

        **(2)** **Your** reasonable and necessary cost to temporarily protect or preserve covered **electronic data**, computer programs or software against immediately impending direct physical loss or damage to **electronic data**, computer programs or software.   In the event that there is no direct physical loss or damage, the costs covered under this item will be subject to the deductible that would have applied had there been such direct physical loss or damage.

    **b.** With respect to destruction, distortion or corruption caused by the malicious introduction of machine code or instruction, this PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the *qualifying period* specified in the *Qualifying Period* Table in the Declarations is exceeded.

    **c.** Any amounts recoverable under this PROPERTY DAMAGE COVERAGE AND LIMITATION are excluded from coverage elsewhere in this Policy.

    **d.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes loss or damage to **electronic data**, computer programs or software when they are stock in process, finished stock manufactured by **you**, raw materials, supplies or other merchandise not manufactured by **you**.

    **e.** With respect to this PROPERTY DAMAGE COVERAGE AND LIMITATION, the following additional exclusions apply:

        **(1)** Errors or omissions in processing or copying; and

        **(2)** Loss or damage to **electronic data**, computer programs or software from errors or omissions in programming or machine instructions.

**6.** DEBRIS REMOVAL

    **a.** **We** cover **your** reasonable and necessary costs to remove debris from a covered **location** that remains as a direct result of a **covered loss**.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION covers the costs of removal of contaminated **covered property** or the **contaminant** in or on **covered property** only if the **contamination**, due to the actual presence of **contaminant(s)**, results from a **covered loss**.

    **c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover the costs of removal of:

        **(1)** Contaminated uninsured property; or

        **(2)** The **contaminant** in or on uninsured property, whether or not the **contamination** results from a **covered loss**.

7.  DECONTAMINATION COSTS

    a.  **We** cover **your** decontamination costs directly resulting from a **covered loss** at a covered **location** subject to the following conditions:

        (1)  These decontamination costs must be a direct result of enforcement of the law or ordinance that is in force at the time of the loss regulating decontamination; and

        (2)  The amount **we** cover includes the increased cost to remove **your** contaminated **covered property** to comply with the law or ordinance.

    b.  **We** do not cover costs required for removing contaminated uninsured property or the **contaminant** therein or thereon, whether or not the **contamination** resulted from a **covered loss**.

8.  DEFENSE FOR PERSONAL PROPERTY OF OTHERS

    a.  **We** cover the cost to defend that part of any suit against **you** alleging direct physical loss or damage of the type insured by this Policy to personal property of others of the type insured by this Policy, in **your** custody, and while at a covered **location**.   **We** may without prejudice undertake any investigation, negotiation or settlement of any such claim or suit as **we** deem appropriate.

    b.  **We** do not cover the cost to defend any suit against **you** when **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

9.  DEFERRED PAYMENTS

    a.  **We** cover direct physical loss or damage to **personal property** of the type insured by this Policy sold by **you** under a conditional sale or trust agreement or any installment or deferred payment plan and after such property has been delivered to the buyer.  Coverage is limited to the unpaid balance for such property.  In the event of loss to property sold under deferred payment plans, **you** will use all reasonable efforts, including legal action, if necessary, to effect collection of outstanding amounts due or to regain possession of the property.

    b.  **We** do not cover loss:

        (1)  Pertaining to products recalled including **your** costs to recall, test or to advertise such recall.

        (2)  From theft or conversion by the buyer of the property after the buyer has taken possession of such property.

        (3)  To the extent the buyer continues payments.

        (4)  Not within this Policy's territory.

10.  DEMOLITION AND INCREASED COST OF CONSTRUCTION

    a.  **We** cover **your** reasonable and necessary costs that are described in Item **b.** below, actually incurred to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of **covered property** consisting of buildings, structures, machinery and equipment at a covered **location**, provided:

        (1)  Such law or ordinance is in force on the date of the **covered loss**;

        (2)  Its enforcement is a direct result of a **covered loss**; and

        (3)  The buildings, structures, machinery and equipment were in compliance with such law or ordinance, regardless of any lack of enforcement, prior to the **covered loss**.

**b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION, as respects the property insured in Item **a.** above, covers:

    **(1)** The cost incurred to demolish, repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and

    **(2)** The cost incurred:

        **(a)** To demolish the physically undamaged portion of such property insured; and

        **(b)** To rebuild it with materials and in a manner to satisfy such law or ordinance,

        when the demolition of the physically undamaged portion of such property is required to satisfy such law or ordinance, as a result of a **covered loss**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes any costs incurred as a result of the enforcement of any law or ordinance regulating pollution.

**d.** The amount **we** cover for this PROPERTY DAMAGE COVERAGE AND LIMITATION at each covered **location** in any one (1) **occurrence** will not exceed the actual cost incurred in demolishing the physically damaged and undamaged portions of the property covered in item **a.** above plus:

    **(1)** If rebuilt on the same site, the actual cost incurred in rebuilding there; or

    **(2)** If rebuilt on another site, the lesser of:

        **(a)** The actual cost incurred in rebuilding on the other site, excluding the cost of land; or

        **(b)** The cost that would have been incurred to rebuild on the same site.

**11.** ERRORS AND OMISSIONS

**a.** If direct physical loss or damage is not covered under this Policy solely because of an error or unintentional omission made by **you**:

    **(1)** In the description of where **covered property** is physically located; or

    **(2)** To include any **location**:

        **(a)** Owned, rented or leased by **you** on the effective date of this Policy; or

        **(b)** Purchased, rented or leased by **you** during the term of the Policy; or

    **(3)** That results in termination of the coverage provided by this Policy, except for cancellation due to nonpayment of premium,

    **we** cover the amount **we** would have paid, including any TIME ELEMENT loss, had the error or omission not been made.

**b.** This coverage does not apply to the failure to report values, or the reporting of inaccurate values of **covered property**.

**c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply if coverage is provided elsewhere in this Policy.

**d.** **You** must report such errors or unintentional omissions to **us** in writing as soon as they are discovered.

**12.** EXPEDITING EXPENSE

    **a.** **We** cover **your** reasonable and necessary costs:

        **(1)** For the temporary repair of **covered property** from a **covered loss**; and

        **(2)** To expedite the permanent repair or replacement of such damaged property.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not cover costs recoverable elsewhere in this Policy, including the cost of permanent repair or replacement of damaged property.

**13. FINE ARTS**

    **a.** **We** cover direct physical loss or damage to **your fine arts** while anywhere within this Policy's territory, including while in transit.

    **b.** The following additional exclusions apply:

    **We** do not cover:

        **(1)** Loss or damage sustained from any repair, restoration, or retouching process;

        **(2)** Breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains, and similar fragile articles, unless caused by fire, lightning, aircraft, theft and or attempted theft, windstorm, *EARTH MOVEMENT*, *FLOOD*, explosion, vandalism, collision, derailment or overturn of conveyance.

**14.** FIRE DEPARTMENT SERVICE CHARGES

    **We** cover the reasonable and necessary:

    **a.** Fire department firefighting charges imposed as a result of responding to a fire in, on or exposing the **covered property**.

    **b.** Costs incurred by **you** to restore and recharge fire protection systems following a **covered loss.**

**15.** LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL

    **a.** For uninsured property at a covered **location** consisting of land, water, or any other substance in or on land or water at a covered **location**, **we** cover **your** reasonable and necessary cost for the cleanup, removal and disposal of the actual presence of **contaminant(s)** from that property if the release, discharge or dispersal of such **contaminant(s)** is a result of a **covered loss**.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

        **(1)** At any **location** insured for **personal property** only;

        **(2)** At any **location**, or to any property, covered under the NEWLY ACQUIRED **LOCATIONS** or ERRORS AND OMISSIONS coverages provided by this Policy or at a **Miscellaneous Unnamed Location**; or

        **(3)** If **you** fail to give **us** written notice within one hundred eighty (180) days after the loss.

**16.** MISCELLANEOUS **PERSONAL PROPERTY**

    **a.** **We** cover direct physical loss or damage, that occurs away from a covered **location** but within the Policy's territory, to **personal property** of the type covered under this Policy, which is:

        **(1)** Owned by **you**; or

    **(2)** Owned by others and in **your** care, custody and control, but only to the extent **you** are obligated to insure it for direct physical loss or damage under the type of coverage provided under this Policy.

  **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION excludes coverage that is provided elsewhere in this Policy.

**17.** NEWLY ACQUIRED **LOCATIONS**

  **a.** **We** cover physical loss or damage to property of the type insured from a loss of the type insured at any **location you** purchase, lease or rent after the inception date of this Policy.

  **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION applies:

    **(1)** From the date of purchase, lease or rental,

    **(2)** Until the first of the following occurs:

      **(a)** The **location** is bound by **us**;

      **(b)** Agreement is reached that the **location** will not be insured under this Policy; or

      **(c)** The time limit specified in the LIMITS OF LIABILITY Table in the Declarations has been reached.  The time limit begins on the date of purchase, lease or rental.

**18.** OFF PREMISES INTERRUPTION OF SERVICES – PROPERTY DAMAGE

  **a.** **We** cover physical loss or damage to **covered property** at a covered **location** when such physical loss or damage results from:

    **(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

    **(2)** The interruption of outgoing sewerage service,

  by reason of a loss of the type insured by this Policy at the facilities of the supplier of such service located within this Policy's territory, that immediately prevents in whole or in part the delivery of such usable service.

  **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION will apply only when the interruption exceeds the  *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

  **c.** For purposes of this PROPERTY DAMAGE COVERAGE AND LIMITATION, the *period of service interruption* is the period starting with the time when an interruption of specified services occurs; and ending when the service could be wholly restored.

  **d.** Additional General Provisions:

    **(1)** **You** will immediately notify the suppliers of services of any interruption of any such services.

    **(2)** **We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

  **e.** **We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

  **f.** Exclusion **C.3.e.** does not apply to this PROPERTY DAMAGE COVERAGE AND LIMITATION.

**19.** PROFESSIONAL FEES

    **a.** **We** cover **your** reasonable costs for **your** employees or auditors, architects, accountants and engineers whom **you** hire to prepare and verify the details of a claim from a **covered loss**.

    **b.** Professional fees covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION, however, do not include:

        **(1)** Any fees or expenses of attorneys;

        **(2)** Any fees or expenses of public adjusters, loss appraisers or any of their subsidiaries or associated entities;

        **(3)** Fees based on a contingency; or

        **(4)** Fees of loss consultants who provide consultation on coverage or negotiate claims.

    **c.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible that applies to the loss.

**20.** PROTECTION AND PRESERVATION OF PROPERTY

    **a.** **We** cover **your** reasonable and necessary costs to temporarily protect or preserve **covered property** provided such actions are necessary due to actual, or to prevent immediately impending threat of, physical loss or damage of the type covered by this Policy to such **covered property**.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the physical loss or damage happened.

**21.** RADIOACTIVE **CONTAMINATION**

    **a.** **We** cover radioactive **contamination** to property of the type insured by this Policy from a **covered loss**.

    Radioactive **contamination** is:

        **(1)** Sudden and accidental radioactive **contamination**; or

        **(2)** Resultant radiation damage to **covered property**,

    provided that such radioactive **contamination** arises out of radioactive material at a covered **location** and is used as part of **your** business activities.

    **b.** **We** do not cover radioactive **contamination** if:

        **(1)** The covered **location** contains:

            **(a)** A nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or

            **(b)** Any new or used nuclear fuel intended for or used in such a nuclear reactor.

        **(2)** The **contamination** arises from radioactive material located away from a covered **location**.

**22.** TAX LIABILITY

    **We** cover **your** increase in tax liability from a **covered loss** at a covered **location** if the tax treatment of:

   **a.** The profit portion of a loss payment involving finished stock manufactured by **you**; and/or

   **b.** The profit portion of a TIME ELEMENT loss payment;

is greater than the tax treatment of profits that would have been incurred had no loss happened.

**23.** TEMPORARY REMOVAL OF PROPERTY

   **a.** When **covered property** is removed from a covered **location** for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy, **we** cover such property:

      **(1)** While at the premises to which such **covered property** has been moved; and

      **(2)** For direct physical loss or damage of the type insured by this Policy at the covered **location** from which such **covered property** was removed.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

      **(1)** To **covered property** removed for normal storage, processing or preparation for sale or delivery; or

      **(2)** If coverage is provided elsewhere in this Policy or by any other insurance policy.

**24.** TRANSIT

   **a.** **We** cover **personal property** not excluded elsewhere in this Policy while it is in transit within the Policy's territory:

      **(1)** Owned by **you**.

      **(2)** Shipped to customers under Free on Board (F.O.B) shipments, Free-Along-Side (F.A.S) shipments and Returned shipments. **Your** contingent interest is admitted.

      **(3)** Of others in **your** actual or constructive custody to the extent of **your** interest or legal liability.

      **(4)** Of others sold by **you** and **you** agreed prior to the loss to insure the **personal property** during course of delivery including:

         **(a)** When shipped by **your** contract service provider or by **your** contract manufacturer to **you** or to **your** customer; or

         **(b)** When shipped by **your** customer to **you** or to **your** contract service provider or to **your** contract manufacturer.

   **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION starts from the time the property leaves the original point of shipment for transit, and continues while in the due course of transit until delivered, subject to the following conditions:

      **(1)** Coverage on export shipments not insured under ocean cargo policies ends when the property is loaded on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after discharge from overseas vessels or aircraft.

      **(2)** If this Policy expires during the due course of transit, coverage is extended until the shipment is delivered to its final destination.

   **c.** **We** also cover:

        **(1)** General average and salvage charges on shipments covered while waterborne; and

        **(2)** Direct physical loss or damage caused by or resulting from:

           **(a)** Unintentional acceptance of fraudulent bills of lading, shipping or messenger receipts.

           **(b)** Improper parties having gained possession of property through fraud or deceit.

**d.** Additional General Provisions:

        **(1)** This PROPERTY DAMAGE COVERAGE AND LIMITATION will not inure directly or indirectly to the benefit of any carrier or bailee.

        **(2)** **You** have  permission, without prejudicing this insurance, to accept:

           **(a)** Ordinary bills of lading used by carriers;

           **(b)** Released bills of lading;

           **(c)** Undervalued bills of lading; and

           **(d)** Shipping or messenger receipts.

        **(3)** **You** may waive subrogation against railroads under side track agreements.

        **(4)** Except as otherwise stated, **you** will not enter into any special agreement with carriers releasing them from their common law or statutory liability.

**e.** As respects this PROPERTY DAMAGE COVERAGE AND LIMITATION:

        **(1)** The following additional exclusions apply:

        This Policy excludes:

           **(a)** Samples in the custody of salespeople or selling agents.

           **(b)** Property insured under import or export ocean marine insurance.

           **(c)** Waterborne shipments, unless:

              **(i)** By inland water; or

              **(ii)** By roll-on/roll-off ferries; or

              **(iii)** By coastal shipments.

           **(d)** Airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

           **(e)** Property of others, including **your** legal liability for it, hauled on vehicles owned, leased or operated by **you** when acting as a common or contract carrier.

           **(f)** Any transporting vehicle

           **(g)** Property shipped between continents except by land or air within the Policy territory.

**f.** **We** will value property covered under this PROPERTY DAMAGE COVERAGE AND LIMITATION as follows:

(1) Property shipped to or for **your** account will be valued at actual invoice to **you**. Included in the value are accrued costs and charges legally due. Charges may include **your** commission as selling agent.

(2) Property sold by **you** and shipped to or for the purchaser's account will be valued at **your** selling invoice amount. Prepaid or advanced freight costs are included.

(3) Property not under invoice will be valued:

    (a) For **your** property, according to the valuation provisions of this Policy applying at the place from which the property is being transported; or

    (b) For other property, at the **actual cash value** at the destination point on the date of loss, less any charges saved which would have become due and payable upon arrival at destination.

## 25. VALUABLE PAPERS AND RECORDS

a. **We** cover physical loss or damage to **your valuable papers and records** from a **covered loss** at a covered **location**. **We** cover the value blank, plus the cost of copying from backup or from originals of a previous generation, and **your** reasonable and necessary costs to research, replace or restore the information lost or damaged thereon, except for **electronic data** and software. For **electronic data** and software, **we** cover the value of the blank media, and the cost of reproducing the **electronic data** and software from duplicates or originals of the previous generation of the data.

b. This coverage does not apply to loss or damage to property that cannot be repaired or restored with like kind or quality.

© 2016 Liberty Mutual Insurance

# SECTION III – TIME ELEMENT

TIME ELEMENT loss as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS:

**A.** Is subject to and part of the applicable LIMIT OF LIABILITY that applies to **your** direct physical loss or damage but in no event for more than any LIMIT OF LIABILITY that is stated as applying to the specific TIME ELEMENT COVERAGE and/or  TIME ELEMENT COVERAGES AND LIMITATIONS; and

**B.** Will not increase the POLICY LIMIT OF LIABILITY and is subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

**A.** LOSS INSURED

   **1.** **We** cover **your** actual loss sustained, as provided in the TIME ELEMENT COVERAGES and TIME ELEMENT COVERAGES AND LIMITATIONS, directly resulting from a loss of the type insured by this Policy:

   **a.** To property described elsewhere in this Policy and not otherwise excluded by this Policy,

   **b.** Used by **you**, or by others with whom **you** have a contract,

   **c.** At a covered **location** or while in transit as provided by this Policy,

   **d.** During the applicable PERIOD OF LIABILITY described in this section.

   **2.** **We** cover TIME ELEMENT loss only to the extent it cannot be reduced through:

   **a.** The use of any property or service owned or controlled by **you**;

   **b.** The use of any property or service obtainable from other sources;

   **c.** Working extra time or overtime; or

   **d.** The use of inventory,

   all whether at a covered **location** or at any other **location**. When measuring the actual loss sustained, the combined operating results of all of **your** associated, affiliated or subsidiary companies will be considered in determining the TIME ELEMENT loss.

   **3.** **We** cover **your** reasonable and necessary expenses to reduce the loss otherwise payable under this section of this Policy.  The amount of those recoverable expenses will not exceed the amount by which the insured loss has been reduced.

   **4.** In determining the insured TIME ELEMENT loss, **we** will consider the experience of the business before and after and the probable experience during the PERIOD OF LIABILITY. **We** will consider any increase or decrease in demand for **your** goods or services during the PERIOD OF LIABILITY, even if such increase or decrease is from the same event that caused the **covered loss**.

 © 2016 Liberty Mutual Insurance

**B.** TIME ELEMENT COVERAGES

    **1.** *GROSS EARNINGS*

        **a.** *GROSS EARNINGS* loss is the actual loss sustained by **you** due to the necessary interruption of **your** business during the PERIOD OF LIABILITY of the following:

        Gross Earnings less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services, plus all other earnings derived from the operation of the business.

        **Ordinary payroll,** including taxes and charges dependent on the payment of wages, for a period of time not to exceed the number of consecutive days as specified in the LIMITS OF LIABILITY in the Declarations table immediately following the interruption of production or suspension of business operations or services, and only to the extent such payroll continues following the loss and would have been earned had no such interruption happened.

        However, if **you** reduce the daily loss payable under **ordinary payroll,** either by:

            **(1)** providing gainful employment for, or

            **(2)** paying less than the normal salary rate to,

        all or part of its employees, then the number of consecutive days of **ordinary payroll** may be extended. However, this provision will not increase **our** total liability beyond the amount **we** would have been liable for **ordinary payroll** costs without this provision.

        **Ordinary payroll** does not cover any portion of salaries or wages included in Gross Earnings.

        **b.** *GROSS EARNINGS* will be calculated as follows:

            **(1)** For manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

            **(2)** For mercantile or non-manufacturing operations: the total net sales less the cost of merchandise sold, materials and supplies consumed in the operations or services rendered by **you.**

        Any amount payable at selling price will be considered to have been sold to **your** regular customers and will be credited against net sales.

        **c.** In determining the amount **we** cover as the actual loss sustained, **we** will consider the continuation of only those charges and expenses that would have been earned had there been no interruption of production or suspension of business operations or services.

        **d.** If **you** would have operated at a deficit had no interruption of production or suspension of business operations or services occurred, the following applies:

            **(1)** For Gross Earnings, the extent to which charges and expenses would have been earned will be determined by subtracting the operating deficits from the charges and expenses that necessarily continue.

            **(2)** For **ordinary payroll,** the extent payroll would have been earned will be determined by subtracting the excess, if any, of the operating deficit over the fixed charges that need to continue from such payroll.

        **e.** We cover TIME ELEMENT loss only to the extent that **you** are:

            **(1)** Wholly or partially prevented from producing goods or continuing business operations or services;

    **(2)** Unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted;

    **(3)** Unable to continue **your** operations or services during the PERIOD OF LIABILITY; and

    **(4)** Able to demonstrate a loss of sales for the operations, services or production prevented.

**2.** EXTRA EXPENSE

    **a.** **We** cover **your** reasonable and necessary extra costs of the following incurred during the PERIOD OF LIABILITY applicable:

      **(1)** To temporarily continue as nearly normal as practicable the conduct of **your** business; and

      **(2)** The temporary use of property or facilities of **yours** or others.

    **b.** **We** will reduce any recoverable loss under this coverage for any value remaining of any property used to temporarily continue **your** business.

    **c.** EXTRA EXPENSE does not include:

      **(1)** Any loss of income.

      **(2)** Costs that would have been incurred in conducting the business during the same period had no physical loss or damage happened.

      **(3)** Costs of permanent repair or replacement of property that has been damaged or destroyed.

      **(4)** Any expense recoverable elsewhere in this Policy.

**3.** LEASEHOLD INTEREST

    **a.** **We** cover the following:

      **(1)** If the lease agreement requires continuation of rent as a result of a **covered loss**, and if the **covered property** is wholly or partially untenantable or unusable, the actual rent payable while the **covered property** is untenantable or until the lease is terminated, but not exceeding  the unexpired term of the lease.

      **(2)** If the **covered property** is partially untenantable, **we** cover the proportion of the lease payment for that portion of the untenantable **covered property**.

    **b.** If the lease is cancelled by the lessor pursuant to the lease agreement or by the operation of law, **we** cover the additional cost to rent similar space for the unexpired term of the lease for the damaged property.  That loss will be computed at present value, compounded annually at the prime rate plus 2%, as published in the Wall Street Journal on the date the lease terminated.  The additional cost will consider the excess rent paid for the same or similar replacement property over actual rent of the original lease, plus cash bonuses or advance rent paid (including maintenance or operating charges) for each month during the unexpired term of the lease.

    **c.** As respects LEASEHOLD INTEREST, the following applies:

      **(1)** **We** do not cover loss directly resulting from physical loss or damage to **personal property**.

      **(2)** TIME ELEMENT EXCLUSIONS **D.1.**, **D.2.** and **D.3.** do not apply and the following applies instead:

**We** do not cover any increase in loss resulting from the suspension, lapse or cancellation of any license, or from **you** exercising an option to cancel the lease; or from any act or omission by **you** that constitutes a default under the lease.

4. RENTAL INSURANCE

   a. **We** cover **your** actual loss sustained of rental income during the PERIOD OF LIABILITY for:

      **(1)** The fair rental value of any portion of rental property occupied by **you**;

      **(2)** The income reasonably expected from rentals of unoccupied or unrented portions of such property; and

      **(3)** The rental income from the rented portions of such property according to written leases, contracts or agreements in force at the time of loss,

     all not to include non-continuing charges and expenses.

   b. RENTAL INSURANCE Exclusions:  As respects RENTAL INSURANCE, TIME ELEMENT EXCLUSIONS **D.1.** does not apply and the following applies instead:

     **We** do not cover any loss of rental income during any period in which the covered **location** would not have been tenantable for any reason other than a **covered loss**.

C. PERIOD OF LIABILITY

   1. The PERIOD OF LIABILITY applying to CONTINGENT TIME ELEMENT, *GROSS EARNINGS*, EXTRA EXPENSE and RENTAL INSURANCE is as follows:

     a. For building and equipment, the period:

       **(1)** Starting from the time of physical loss or damage of the type insured; and

       **(2)** Ending when with due diligence and dispatch the building and equipment could be:

         **(a)** Repaired or replaced; and

         **(b)** Made ready for operations,

       under the same or equivalent physical and operating conditions that existed prior to the damage.

       **(3)** Not to be limited by the expiration of this Policy.

     b. For building(s) and equipment covered under COURSE OF CONSTRUCTION:

       **(1)** The equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage happened; and

       **(2)** Due consideration will be given to the actual experience of the business after completion of the construction and startup.

**2.** The PERIOD OF LIABILITY for *GROSS EARNINGS* and EXTRA EXPENSE also includes the following:

   **a.** For stock-in-process and mercantile stock, including finished goods not manufactured by **you**, the time required with the exercise of due diligence and dispatch:

      **(1)** To restore stock in process to the same state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

      **(2)** To replace physically damaged mercantile stock.

   **b.** For raw materials and supplies, the period of time:

      **(1)** Of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

      **(2)** Limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

   **c.** Impounded Water:

      **(1)** Used for any manufacturing purpose, including as a raw material or for power;

      **(2)** Stored behind dams or in reservoirs; and

      **(3)** On any covered **location,**

      that is released as the result of physical damage of the type insured to such dam, reservoir or connected equipment, **our** liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond the number of consecutive days, not to exceed the LIMIT OF LIABILITY specified in the Declarations after the damaged dam, reservoir or connected equipment has been repaired or replaced.

   **d.** For physically damaged exposed films, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation. This time does not include research, engineering or any other time necessary to restore or recreate lost information.

   **e.** For physically damaged or destroyed property covered under DATA, PROGRAMS OR SOFTWARE, the time to recreate or restore including the time for researching or engineering lost information.

**3.** The PERIOD OF LIABILITY applying to *GROSS PROFIT* is as follows:

   **a.** The period starting from the time of physical loss or damage of the type insured and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

   **b.** For property under construction, the period starting on the date that production, business operation or service would have commenced if physical damage of the type insured had not happened and ending not later than the period of time specified in the LIMITS OF LIABILITY Table in the Declarations, during which period the results of the business shall be directly affected by such damage, not to be limited by the expiration of this Policy.

   The *Rate of Gross Profit* and *Standard Sales* will be based on the experience of the business after construction is completed and the probable experience during the PERIOD OF LIABILITY.

**4.** The PERIOD OF LIABILITY does not include any additional time due to **your** inability to resume operations for any reason, including:

    **a.** Making changes to equipment;

    **b.** Making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION clause in the PROPERTY DAMAGE section; and

    **c.** Re-staffing or retraining employees.

    If two or more PERIODS OF LIABILITY apply, such periods will not be cumulative.

**D.** TIME ELEMENT EXCLUSIONS

    In addition to the exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss:

    **1.** Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

        **a.** Physical loss or damage not insured by this Policy on or off of the covered **location**.

        **b.** Planned or rescheduled shutdown.

        **c.** Strikes or other work stoppage.

        **d.** Any reason other than physical loss or damage insured under this Policy.

    **2.** Any increase in loss due to:

        **a.** Suspension, cancellation or lapse of any lease, contract, license or orders.

        **b.** Damages for breach of contract or for late or noncompletion of orders.

        **c.** Fines or penalties.

        **d.** Any other consequential or remote loss.

    **3.** Any loss resulting from physical loss or damage to finished goods manufactured by **you**, or the time required for their reproduction.

**E.** TIME ELEMENT COVERAGES AND LIMITATIONS

    TIME ELEMENT COVERAGES are extended to include the following, subject to all Policy terms, conditions and exclusions, and the time, distance and/or dollar amounts specified in the LIMITS OF LIABILITY Table in the Declarations:

    **1.** *ATTRACTION PROPERTY*

        **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by this Policy to property of the type insured at an *attraction property* within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations and during the period of time that:

            **(1)** Starts at the time such physical loss or damage happens;

            **(2)** Ends when the *attraction property* is:

                **(a)** Repaired or replaced; and

        **(b)** Made ready for operations.

    **b.** As used in this TIME ELEMENT COVERAGE AND LIMITATION, the term *attraction property* is a property that:

        **(1)** Is operated by others; and

        **(2)** **You** depend on to attract customers to **your** covered **location.**

**2.** CIVIL OR MILITARY AUTHORITY

    **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the *period of interruption* if an order of civil or military authority prohibits access to a covered **location** provided such order is caused by physical loss or damage of the type insured by this Policy at a covered **location** or within the number of statute miles specified in the LIMITS OF LIABILITY Table in the Declarations.

    **b.** This TIME ELEMENT COVERAGE AND LIMITATION does not apply to LEASEHOLD INTEREST.

    **c.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time:

        **(1)** Starting at the time of such direct physical loss or damage; and

        **(2)** Continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

        This period of time is part of and not in addition to any PERIOD OF LIABILITY applying to any coverage provided in the TIME ELEMENT section.

**3.** COMPUTER SYSTEMS NON PHYSICAL DAMAGE

    **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from the failure of **your electronic data processing equipment** or media to operate, provided that such failure is the direct result of a malicious act directed at **you.**

    **b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the *period of interruption* is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

    **c.** As used above, the *period of interruption:*

        **(1)** Is the period starting when **your electronic data processing equipment** or media fails to operate and ending when with due diligence and dispatch, **your electronic data processing equipment** or media could be restored to the same or equivalent operating condition that existed prior to the failure.

        **(2)** Does not include the additional time to make changes to **your electronic data processing equipment** or media.

**4.** CONTINGENT TIME ELEMENT

    **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured by this Policy at *Direct Dependent Time Element Location(s)* and *Indirect Dependent Time Element Location(s)* located within the territory of this Policy.

    **b.** **You** agree to take every reasonable and necessary action to mitigate the loss payable hereunder.

   **c.**  As used in this Policy, *Direct Dependent Time Element **Location(s)*** are:

       **(1)**  Any **location(s)** of a direct: customer, supplier, contract manufacturer or contract service provider to **you**; or

       **(2)**  Any **location(s)** of any company under a royalty, licensing fee or commission agreement with **you.**

       *Direct Dependent Time Element **Location(s)*** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from **you**, electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

   **d.**  As used in this Policy, *Indirect Dependent Time Element **Location(s)*** are:

       **(1)**  Any **location(s)** of any company that is a direct: customer, supplier, contract manufacturer or contract service provider to **your** *Direct Dependent Time Element **Location(s)**.*

       *Indirect Dependent Time Element **Location(s)*** does not include **location(s)** that are covered **location(s)** under this Policy or the **location(s)** of any company directly or indirectly supplying to, or receiving from, the *Direct Dependent Time Element **Location(s)*** or the *Indirect Dependent Time Element **Location(s)**,* electricity, fuel, gas, water, steam, refrigeration, sewage, voice, data or video.

   **e.**  As respects CONTINGENT TIME ELEMENT:

       **(1)**  Exclusion **D.3** in the TIME ELEMENT EXCLUSIONS does not apply.

**5.**  CRISIS MANAGEMENT

   **a.**  **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY if an order of civil or military authority prohibits access to a covered **location**, but only if such order is a direct result of a violent crime, suicide, attempted suicide or armed robbery at such covered **location.**

   **b.**  As respects this TIME ELEMENT COVERAGE AND LIMITATION, coverage applies:

       **(1)**  Only when the PERIOD OF LIABILITY is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations; and

       **(2)**  For up to the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations, not to exceed the specified LIMIT OF LIABILITY.

       The PERIOD OF LIABILITY is the period of time when the time the civil or military authority prohibits access and continuing until the order is lifted, or the time limit specified in the LIMITS OF LIABILITY Table in the Declarations expires, whichever happens first.

**6.**  DELAY IN STARTUP

   **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY due to the reasonable and necessary delay in startup of business operations resulting directly from physical loss or damage to **covered property** as provided under COURSE OF CONSTRUCTION.

**7.**  EXTENDED PERIOD OF LIABILITY

   **a.**  We cover the *GROSS EARNINGS* loss sustained due to the reduction in sales resulting from:

       **(1)**  The interruption of business;

       **(2)**  Commencing with the date on which our liability for loss resulting from interruption of business would terminate if this TIME ELEMENT COVERAGE AND LIMITATION had not been included in this Policy; and

**(3)** Continuing for such additional length of time as would be required with the exercise of due diligence and dispatch to restore **your** business to the condition that would have existed had no loss occurred, but no longer than the number of consecutive days specified in the LIMITS OF LIABILITY Table in the Declarations.

**b.** Coverage under this TIME ELEMENT COVERAGE AND LIMITATION for the reduction in sales due to contract cancellation will include only those sales that would have been earned under the contract during the EXTENDED PERIOD OF LIABILITY described in Item **7.a.** above.

**c.** As respects this TIME ELEMENT COVERAGE AND LIMITATION, Item **D.2.** in the TIME ELEMENT EXCLUSIONS in this section does not apply and the following applies instead:

This Policy does not insure against any increase in loss due to damages for breach of contract or for late or non-completion of orders, or fines or penalties.

**8.** INGRESS / EGRESS

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE due to the necessary interruption of **your** business if ingress to or egress from a covered **location** is prevented, whether or not **your** premises or property is damaged, provided that such prevention is a direct result of physical loss or damage of the type insured to property of the type insured.

**b.** The *period of interruption* for this TIME ELEMENT COVERAGE AND LIMITATION will be the period of time starting at the time of such direct physical loss or damage, and continuing until ingress or egress is no longer prevented, or for the time limit specified in the LIMITS OF LIABILITY Table in the Declarations, whichever is less.

**9.** OFF PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

**a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the period of service interruption at a covered **location** when the loss is caused by:

**(1)** The interruption of incoming services consisting of electricity, gas, fuel, steam, water, refrigeration, voice, data, video; or

**(2)** The interruption of outgoing sewerage service,

from physical loss or damage of the type insured, at the facilities of the supplier of such service located within this Policy's territory that immediately prevents in whole or in part the delivery of such usable services.

**b.** This TIME ELEMENT COVERAGE AND LIMITATION will apply only when the period of service interruption as described below is in excess of the *qualifying period* specified in the *Qualifying Period* Table in the Declarations.

**c.** The period of service interruption is:

**(1)** The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the **location** receiving the service could have resumed normal operations following the restoration of service under the same or equivalent physical and operating conditions that existed prior to the interruption of such services;

**(2)** Is limited to only those hours during which **you** could have used service(s) if it had been available;

**(3)** Does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

   **d.** Additional General Provisions:

      **(1) You** will immediately notify the suppliers of services of any interruption of any such services.

      **(2) We** will not be liable if the interruption of such services is caused directly or indirectly by **your** failure to comply with the terms and conditions of any contracts **you** have for the supply of such specified services.

   **e.** **We** do not cover loss or damage caused by or resulting from the use of services provided by or through a satellite.

**10.** ON PREMISES INTERRUPTION OF SERVICES – TIME ELEMENT

   **a.** **We** cover **your** actual loss sustained and EXTRA EXPENSE during the PERIOD OF LIABILITY directly resulting from direct physical loss or damage of the type insured to the following property located at or within one-thousand (1,000) feet of a covered **location:**

      **(1)** Electrical equipment and equipment used for the transmission of voice, data or video.

      **(2)** Electrical, fuel, gas, water, steam, refrigeration, sewerage, voice, data or video transmission systems.

**11.** PROTECTION AND PRESERVATION OF PROPERTY TIME ELEMENT

   **a.** **We** cover **your** actual loss sustained for a period of time not to exceed forty eight (48) hours prior to and forty eight (48) hours after **you** first took reasonable action for the temporary protection and preservation of property insured by this Policy provided such action is necessary to prevent immediately impending physical loss or damage of the type insured to such **covered property.**

   **b.** This TIME ELEMENT COVERAGE AND LIMITATION is subject to the deductible provisions that would have applied had the direct physical loss or damage occurred.

**12.** RELATED **LOCATIONS**

   If **you** report values at related **locations** used by **you** (e.g. branch stores, retail outlets and other facilities), but such related **locations** are not listed on the latest Schedule of Covered **Locations** submitted to, accepted by and on file with **us**, and if a TIME ELEMENT loss results at such related **locations** due to **covered loss**, **we** cover such resulting TIME ELEMENT loss in accordance with the terms and conditions of this Policy.

**13.** RESEARCH AND DEVELOPMENT

   **a.** **We** cover **your** actual loss sustained of fixed charges and **ordinary payroll** directly attributable to the interruption of research and development project(s) that would not have produced income during the PERIOD OF LIABILITY resulting from a **covered loss.**

   **b.** **We** cover these fixed charges only to the extent they continue after the **covered loss** and only during the PERIOD OF LIABILITY.

   **c.** To the extent **you** are able to resume operations, **we** cover only that portion of the fixed charges related to that part of the research and development operation that has not yet been restored.

**14.** *SOFT COSTS*

   **a.** **We** cover **your** actual loss sustained of *Soft Costs* during the *period of delay* directly resulting from a delay of completion of **covered property** under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS.

**b.** *Soft Costs* are costs over and above those that are normal at a covered **location** undergoing renovation or in the course of construction, limited to the following:

    **(1)** Construction loan fees – **your** additional cost to rearrange loans necessary for the completion of construction, repairs or reconstruction including: the cost to arrange refinancing, accounting work necessary to restructure financing, legal work necessary to prepare new documents, charges by the lenders for the extension or renewal of loans necessary.

    **(2)** Commitment fees, leasing and marketing expenses – the cost of returning any commitment fees received from prospective tenant(s) or purchaser(s), the cost of re-leasing and marketing due to loss of tenant(s) or purchaser(s).

    **(3)** Additional fees for architects, engineers, consultants, attorneys and accountants needed for the completion of construction repairs or reconstruction.

    **(4)** Property taxes, building permits, additional interest on loans, realty taxes and insurance premiums.

**c.** *Period of delay* is the period of time between:

    **(1)** The date on which the construction, alteration, extension or renovation would have been complete in the absence of a **covered loss** to property under construction as provided under COURSE OF CONSTRUCTION as provided in the PROPERTY DAMAGE COVERAGES AND LIMITATIONS; and

    **(2)** The date on which construction, alteration, extension or renovation is actually complete.

# SECTION IV – DESCRIBED LOSSES

**We** only cover the following DESCRIBED LOSSES as specified in the LIMITS OF LIABILITY Table in the Declarations, subject to the terms, conditions and exclusions of this Policy.

**A.** *EARTH MOVEMENT*

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *EARTH MOVEMENT*.

2. **Y o u** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

3. *EARTH MOVEMENT* is:

   Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption; regardless of any other cause or event contributing concurrently or in any other sequence of loss.

   However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**B.** *EARTH MOVEMENT* SPRINKLER LEAKAGE

1. **We** cover physical loss or damage to **covered property,** including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, resulting from sprinkler leakage caused by *EARTH MOVEMENT*.

**C.** EQUIPMENT BREAKDOWN

1. **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS, as provided by this Policy if such loss or damage is caused by an *accident* to *covered equipment*.

   The coverage provided in this DESCRIBED LOSS is limited to loss or damage caused by an *accident* to *covered equipment*. **We** will not pay for physical loss or damage from any other cause under this DESCRIBED LOSS.

   The following coverages apply solely to Equipment Breakdown:

   **a.** Spoilage Damage

   **We** cover physical loss or damage caused by change in temperature or humidity or by the interruption of power, heat, air-conditioning, or refrigeration as the result of an *accident* to *covered equipment*.

   **b.** Ammonia **Contamination**

   **We** cover physical loss or damage to **covered property** contaminated by ammonia, including any salvage expense as a direct result of an *accident* to *covered equipment*. No coverage for Ammonia **Contamination** is available under DECONTAMINATION COSTS with respects to an *accident* to *covered equipment*.

2. **Conditions**

   a. **Suspension**

   If coverage for Equipment Breakdown is provided by this Policy, and **we** discover a dangerous condition relating to an object, **we** may immediately suspend the insurance provided by this coverage for that *covered equipment* by written notice mailed or delivered to **you** either at **your** address or at the **location** of any object. Suspended insurance may be reinstated by **us**, but only by an endorsement issued as part of this Policy.  **You** will be credited for the unearned portion of the premium paid for the suspended insurance, pro rata, for the period of suspension.

3. **Valuation**

   If *covered equipment* requires replacement due to an *accident*, **we** cover **your** additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

   a. However, **we** do not cover more than 150% of what the cost would have been to repair or replace *covered equipment* with like kind and quality.

   b. This does not apply to any property subject to valuation based on **actual cash value**, nor does this provision increase any other applicable LIMIT OF LIABILITY.

   c. The PERIOD OF LIABILITY will not be increased by any of the above.

4. **Definitions**

   a. *Accident*: Physical loss or damage to *covered equipment* that necessitates its repair or replacement due to:

      **(1)** Failure of pressure or vacuum equipment;

      **(2)** Mechanical breakdown including rupture or bursting caused by centrifugal force;

      **(3)** Artificially generated electrical current, including electrical arcing that damages electrical devices, appliances or wires; or

      **(4)** Explosion of:

         **(a)** Steam boiler

         **(b)** Electric steam generator

         **(c)** Steam piping

         **(d)** Steam turbine

         **(e)** Moving or rotating machinery when such explosion is caused by centrifugal force,

      unless such loss or damage is otherwise excluded within this Policy.

      *Accident* does not include:

      **(5)** Fire, including water or other means used to extinguish the fire;

      **(6)** Malfunction, misalignment, miscalibration, tripping off line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning or by the performance of maintenance;

    **(7)**  Combustion explosion;

    **(8)**  Discharge of molten material from equipment including the heat from such discharged materials;

    **(9)**  Lightning;

  **(10)**  Depletion, deterioration, rust, corrosion, erosion, settling, or wear or tear or any other gradually developing condition;

  **(11)**  Defects, erasures, error limitations or viruses in computer equipment and programs including the inability to recognize and process any date or time or provide instructions to *covered equipment*;

  **(12)**  Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

  **(13)**  Damage to any structure or foundation supporting the *covered equipment* or any of its parts;

  **(14)**  Any loss or damage caused by or resulting from any type of electrical insulation breakdown test;

  **(15)**  Any loss or damage caused by or resulting from any type of hydrostatic, pneumatic or gas pressure test;

  **(16)**  The functioning of any safety or protective device; or

  **(17)**  The cracking of any part on an internal combustion turbine exposed to the products of combustion.

**b.**  *Covered equipment*:

    **(1)**  Equipment that generates, transmits, controls or utilizes energy; including electronic communications and data processing equipment; and

    **(2)**  Equipment which, during normal usage, operates under vacuum or pressure, other than weight of contents.

  *Covered equipment* does not mean or include:

    **(3)**  **Electronic data;**

    **(4)**  Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

    **(5)**  Insulating or refractory material;

    **(6)**  Nonmetallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or other appropriate and approved code;

    **(7)**  Catalyst;

    **(8)**  Buried vessels or piping; waste, drainage or sewer piping; piping, valves or fittings forming part of a sprinkler or fire suppression system; water piping that is not part of a closed loop used to conduct heat or cooling from a boiler or a refrigeration or air conditioning system;

    **(9)**  Structure, foundation, cabinet or compartment supporting or containing the *covered equipment* or part of the *covered equipment* including penstock, draft tube or well casing;

  **(10)**  Vehicle or any *covered equipment* that is mounted on or used solely with a vehicle;

**(11)** Dragline, excavation or construction equipment including any *covered equipment* that is mounted on or used solely with any one or more dragline(s), excavation or construction equipment;

**(12)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, nonelectrical cable, chain, belt, rope, clutch plate, brake pad,  nonmetal part or tool subject to periodic replacement;

**(13)** Cyclotron used for other than medical purposes, satellite or spacecraft including any *covered equipment* mounted on or used solely with any satellite or spacecraft;

**(14)** Equipment manufactured by **you** for sale.

   **c.** *Production machinery* is any machine or apparatus that processes, forms, cuts, shapes, grinds, or conveys raw materials, materials in process or finished products including any *covered equipment* that is mounted on or used solely with any one or more production machines or apparatus.

**D.** *FLOOD*

   **1.** **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from *FLOOD.*

   **2.** *FLOOD* is:

      **a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

      **b.** Sewer back-up resulting from any of the foregoing; or

      **c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

     regardless of any other cause or event, whether natural or man-made, contributing concurrently or in any other sequence of loss.

   **Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy. However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

**E.** *NAMED STORM*

   **1.** **We** cover physical loss or damage to **covered property**, including TIME ELEMENT COVERAGES, TIME ELEMENT COVERAGES AND LIMITATIONS and PROPERTY DAMAGE COVERAGES AND LIMITATIONS as provided by this Policy, from a **covered loss** resulting from a *NAMED STORM*. However, physical loss or damage caused by fire, explosion, sprinkler leakage or *FLOOD* will not be considered loss by *NAMED STORM* within the terms and conditions of this Policy.

   **2 .** **Y o u** may elect when the time specified in the **OCCURRENCE** TIME SPECIFICATIONS begins.

   *NAMED STORM* is any storm or weather disturbance that is named by the U. S. National Oceanic and Atmospheric Administration (NOAA) or the U. S. National Weather Service or the National Hurricane Center or any authorized meteorological authority in the country where the storm or weather disturbance happened.

# SECTION V - GENERAL POLICY CONDITIONS

**A.** ASSIGNMENT

**Your** assignment of this Policy will not be valid except with **our** written consent.

**B.** CANCELLATION

1. **You** may cancel this Policy by mailing or delivering to **us** advance written notice of cancellation.

2. **We** may cancel this Policy by mailing or delivering to **you** written notice of cancellation at least:

   a. ten (10) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   b. thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason.

3. **We** will mail or deliver **our** written notice of cancellation to **your** last mailing address known to **us**.

4. **Our** written notice of cancellation will state the effective date of cancellation and the Policy period will end on that date.

5. If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

This entire Policy is void, if with the actual intent to deceive

1. **You**;

2. **Your** representatives; or

3. Any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning:

   a. This Policy;

   b. The **covered property**;

   c. **Your** interest in the **covered property**; or

   d. A claim under this Policy.

**D.** CONFORMITY TO STATUTES

Any provisions required by law to be included in policies issued by **us** shall be deemed to have been included in this Policy.

If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for covered **locations** within such jurisdictions.

**E.** INSPECTION

**1.** During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards.

**2.** This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

**F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

**1.** When specified in the Policy or in Certificates of Insurance on file with **us**, **we** cover loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear, and to each specified Mortgagee as its interest may appear.

**2.** The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

**a.** Any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property.

**b.** Foreclosure, notice of sale, or similar proceedings with respect to the property, but only to the extent of a deficiency as provided by state law.

**c.** Change in the title or ownership of the property.

**d.** Change to a more hazardous occupancy.

The Lender or Mortgagee will notify **us** of any known change in ownership, occupancy, or hazard and, within ten (10) days of **our** written request, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

**3.** If this Policy is cancelled at **your** request or by the request of **your** agent, the coverage for the interest of the Lender or Mortgagee will terminate ten (10) days after **we** send to the Lender or Mortgagee written notice of cancellation, unless:

**a.** Sooner terminated by authorization, consent, approval, acceptance, or ratification of **your** action by the Lender or Mortgagee, or its agent.

**b.** This Policy is replaced by **you**, with a Policy providing coverage for the interest of the Lender or Mortgagee, in which event coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement Policy, notwithstanding any other provision of this Policy.

4. **We** may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy, by giving the Lender or Mortgagee written notice thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, **we** may cancel this Policy for such non-payment, but will give the Lender or Mortgagee written notice ten (10) days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

5. If **we** pay the Lender or Mortgagee for any loss, and deny payment to the debtor, mortgagor or owner, **we** will, to the extent of the payment made to the Lender or Mortgagee be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At **our** option, **we** may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. In this event, all rights and securities will be assigned and transferred from the Lender or Mortgagee to **us**, and the remaining debt or mortgage will be paid to **us**.

6. If **you** fail to render proof of loss, the Lender or Mortgagee, upon notice of **your** failure to do so, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, COMPANY OPTION, and SUIT AGAINST THE COMPANY.

7. In the event of a claim, upon request by **us**, the Lender or Mortgagee will cooperate in any claim investigation.

8. In no event will the amount payable to a Lender or Mortgagee exceed the amount which would otherwise have been payable to **you.**

**G.  LIBERALIZATION**

If during the period that insurance is in force under this Policy, any filed rules or regulations affecting the same are revised by statute in any State or jurisdiction within the United States of America so as to broaden the insurance without additional premium charge, such extended or broadened insurance will inure to **your** benefit within such jurisdiction, effective the date of the change specified in such statute.

**H.  NO REDUCTION BY LOSS**

Except for those coverages written with an **annual aggregate** LIMIT OF LIABILITY, **we** cover a **covered loss** without reducing any other applicable LIMIT OF LIABILITY.  The reinstatement of any exhausted **annual aggregate** is not permitted unless authorized by **us** in writing.

**I.  NONRENEWAL**

1. If **we** decide not to renew this Policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this Policy. Notice will be sent to **your** last mailing address known to **us**. **We** will state the reason for nonrenewal.

2. Proof of mailing will be sufficient evidence of notice.

**J.  OTHER INSURANCE**

1. **We** will not be liable if, at the time of loss or damage, there is any other insurance that would apply in the absence of this Policy; except that this Policy will apply only as excess or DIFFERENCE IN CONDITIONS / DIFFERENCE IN LIMITS and in no event as contributing insurance, and then only after all other insurance has been exhausted, notwithstanding paragraph **5.** below.

2. **We** will not be liable if, at the time of loss or damage, there is any insurance with the National Flood Insurance Program (NFIP), except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all NFIP insurance has been exhausted.

3. **We** will not be liable if, at the time of loss or damage, there is any insurance for the construction of new buildings and additions under a specific policy for the construction of such new buildings and additions, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

4. **We** will not be liable if, at the time of loss or damage, there is any insurance for stock under a specific policy for such stock, except that this Policy shall apply only as excess and in no event as contributing insurance, and then only after all specific insurance has been exhausted.

5. If this Policy is deemed by law to contribute to a loss with other insurance, **we** will pay only **our** proportionate share of the loss, up to the applicable LIMIT OF LIABILITY. **Our** share will be the proportion that the applicable LIMIT OF LIABILITY of this Policy bears to the total applicable LIMITS OF LIABILITY available from all insurance.

6. **You** are permitted to have other insurance over any LIMITS OF LIABILITY specified in this Policy.

7. The existence of such insurance will not reduce any LIMIT OF LIABILITY in this Policy.

8. To the extent this Policy replaces another Policy, coverage under this Policy shall not become effective until such other Policy has terminated.

9. **You** are permitted to have other insurance for all, or any part, of any deductible in this Policy.  The existence of such other insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible, this Policy's insurance will apply only as excess and only after such other insurance has been exhausted.

## K.  PAIR, SET OR PARTS

In the event of a **covered loss** to an article that is part of a pair or set, **our** payment for that loss will be:

1. The cost to repair or replace any part to restore the pair or set to its value before the loss; or
2. The difference between the value of the pair or set before and after the loss.

In no event will the loss of part of a pair or set be regarded as a total loss of the pair or set.

## L.  POLICY MODIFICATION

This Policy contains all of the agreements between **you** and **us** concerning this insurance. **You** and **we** may request changes to this Policy. Only endorsements issued by **us** and made a part of this Policy can change this Policy.

Notice to any agent or knowledge possessed by **any** agent or by any other person will not create a waiver or change any part of this Policy or prevent **us** from asserting any rights under the Policy.

## M.  TITLES

The titles of the paragraphs of this Policy and of any endorsements attached to it are only for reference. They do not affect the terms to which they relate.

## N.  TRANSFER OF RIGHTS AND DUTIES

**Your** rights and duties under this Policy may not be transferred without us giving written consent.

**O.** VACANCY

1. If any of **your real property** is vacant at the inception of this Policy, or becomes vacant, and remains vacant for more than sixty (60) consecutive days, during the Policy period, **you** must:

   **a.** Notify **us** in writing of the vacancy prior to loss or damage; and

   **b.** Maintain in complete working order the protective safeguards present prior to the vacancy. Protective safeguards include:

       **(1)** Automatic sprinkler systems;
       **(2)** Fire alarm systems;
       **(3)** Guard or watchman services;
       **(4)** Burglary systems; and
       **(5)** Monitoring systems.

2. If the above requirements are not met, then in addition to the other terms, conditions, limitations and exclusions in this Policy, **we** will:

   **a.** Not pay for any loss or damage caused by or resulting from any of the following:

       **(1)** Breakage of building glass;
       **(2)** Mold, mildew or fungus;
       **(3)** Sprinkler leakage, unless the system has been protected against freezing;
       **(4)** Theft or attempted theft;
       **(5)** Vandalism;
       **(6)** Malicious mischief; or
       **(7)** Water damage.

   **b.** Not pay under DEMOLITION AND INCREASED COST OF CONSTRUCTION;

   **c.** Value the loss or damage for the vacant **real property** (including any loss or damage to **personal property**) at the time of loss at the lesser of:

       **(1)** The **actual cash value**;
       **(2)** The actual cost to repair; or
       **(3)** The selling price, less all saved expenses, if it was being offered or listed for sale at the time of loss.

3. **Real property** is considered vacant when it does not contain sufficient property and personnel to conduct **your** customary business operations.

4. **Real property** is not considered vacant during its ongoing construction or renovation.


**P.** VALUATION

1. Adjustment of the physical loss or damage amount under this Policy will be computed as of the date of loss or damage at the place of the loss or damage. Unless stated otherwise in a PROPERTY DAMAGE COVERAGE AND LIMITATION, adjustment of physical loss or damage to **covered property** will be subject to the following:

   **a.** On stock in process, the value of raw materials and labor expended plus the proper proportion of overhead charges.

   **b.** On finished goods manufactured by **you**, the regular cash selling price, less all discounts and charges to which the finished goods would have been subject had no physical loss or damage happened.

   c.  On raw materials, supplies or merchandise not manufactured by **you**:

     **(1)** If repaired or replaced, **your** actual expenditure in repairing or replacing the damaged or destroyed property; or

     **(2)** If not repaired or replaced, the **actual cash value**.

   d.  On exposed films, records, manuscripts and drawings that are not **valuable papers and records**, the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

   e.  On property that is:

     **(1)** Damaged by fire that directly results from **terrorism** or nuclear reaction; and

     **(2)** Is located in a jurisdiction that has a statute that expressly prohibits the exclusion of fire losses resulting from **terrorism** or nuclear reaction,

     the **actual cash value** of the fire damage. Any remaining fire damage not attributable to **terrorism** or nuclear reaction shall be adjusted according to the terms and conditions of the Valuation clause(s) in this section of the Policy.

   f.  On computer equipment of others which **you** are required to insure for direct physical loss or damage while being installed, maintained or repaired, the cost to replace with new if so specified in the contract between **you** and **your** customer.

   g.  On Data, Programs and Software, the actual cost incurred to repair, replace or restore data, programs or software including the costs to recreate and research.

   h.  On **Fine Arts**, the loss amount will not exceed the lesser of the following:

     **(1)** The cost to repair or restore such property to the physical condition that existed on the date of loss;

     **(2)** The cost to replace; or

     **(3)** The stated value on file with **us**.

   i.  On all other property, the lesser of the following:

     **(1)** The cost to repair.

     **(2)** The cost to rebuild or replace on the same site with new materials of like size, kind and quality.

     **(3)** The cost in rebuilding, repairing or replacing on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.

     **(4)** The selling price of **real property** or machinery and equipment, other than stock, offered for sale on the date of loss.

     **(5)** The cost to replace unrepairable electrical or mechanical equipment, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed, even if such equipment has technological advantages and/or represents an improvement in function and/or forms part of a program of system enhancement.

     **(6)** The increased cost of demolition, if any, directly resulting from insured loss, if such property is scheduled for demolition.

      **(7)** The unamortized value of improvements and betterments, if such property is not repaired or replaced at **your** expense.

      **(8)** The **actual cash value** if such property is:

          **(a)** Useless to **you**; or

          **(b)** Not repaired, replaced or rebuilt on the same or another site within two (2) years from the date of loss, unless such time is extended by **us**.

**2.** **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

**3.** **We** will not pay more than **your** financial interest in the **covered property**.

# SECTION VI – LOSS CONDITIONS

**A.** ABANDONMENT OF PROPERTY

**You** may not abandon property to **us**.

**B.** APPRAISAL

1. If **you** and **we** fail to agree on the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within thirty (30) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** occurred, to select an umpire.

3. The appraisers will then determine the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will determine the amount of loss or damage.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

**C.** COLLECTION FROM OTHERS

**We** will reduce any payment to **you** for a **covered loss** to the extent **you** have collected for that loss from others.

**D.** COMPANY OPTION

1. In the event of **covered loss**, **we** may, at **our** option, either:

    a. Pay the value of **covered property** lost, damaged or destroyed as set forth in VALUATION above;

    b. Pay the cost of repairing or replacing the **covered property** lost, damaged or destroyed;

    c. Take all or any part of the **covered property** at any agreed valuation; or

    d. Repair, rebuild or replace the **covered property** with other property of like kind and quality.

2. **We** will give notice of **our** intentions within thirty (30) days after receiving the sworn statement of loss or as required by law.

**E.** DUTIES AFTER A LOSS

In case of loss **you** will:

1. Give **us** immediate written notice of the loss;

2. Give notice of such loss to the proper authorities if the loss may be due to a violation of the law;

3. As soon as possible, give **us** a description of the property involved and how, when and where the loss happened;

4.  Take all reasonable steps to protect the **covered property** from further damage;

5.  Promptly separate the damaged property from the undamaged property, and keep it in the best possible order for examination;

6.  Furnish a complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed under the valuation provision of the Policy;

7.  Keep an accurate record of all repair costs;

8.  Keep all bills, receipts and related documents that establish the amount of loss;

9.  As often as may reasonably be required:

    a.  Permit **us** to inspect the damaged property and take samples for inspection, testing and analysis.

    b.  Produce for inspection and copying, all of **your** books of account, business records, bills and invoices.

    c.  Permit **us** to question, under oath, **you** and any of **your** agents, employees, or representatives involved in the purchase of this insurance or the preparation of **your** claim, including any public adjusters and any of their agents, employees or representatives, and verify **your** answers with a signed acknowledgment.

10. Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

    The time and cause of the loss;

    a.  **Your** interest and the interest of all others in the property involved;

    b.  Any other policies of insurance that may provide coverage for the loss;

    c.  Any changes in title or occupancy of the property during the Policy period; and

    d.  The amount of **your** claimed loss.

    **You** shall also submit with the Proof of Loss:

    (1) A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

    (2) An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

    (3) Specifications for any damaged building; and

    (4) Detailed estimates and invoices for the repair of any damage.

11. Cooperate with **us** in the investigation and adjustment of the loss.

**F.  LOSS ADJUSTMENT / PAYABLE**

Loss will be adjusted with the First Named Insured. **We** may, at **our** option, adjust the loss to property of others directly with the owner of the property. Such loss will be payable to the First Named Insured or as may be directed by the First Named Insured.

Additional insured interests will also be included in loss payment as their interests may appear  when named as additional named insured, lender, mortgagee and/or loss payee either on a  Certificate of Insurance or other evidence of insurance on file with **us**.  When named on a Certificate of Insurance or other evidence of insurance, such additional interests  are automatically added to this Policy as their interests may appear as of the effective date shown on the Certificate of Insurance or other evidence of insurance. The Certificate of Insurance or other evidence of insurance will not amend, extend or alter the terms, conditions, provisions and limits of  this Policy.

**G.** PAYMENT OF LOSS

**We** will pay the insured loss within thirty (30) days after **we** receive and accept the signed, sworn Proof of Loss, if:

1.  **You** have complied with all the terms of this Policy;

2.  **We** have reached agreement with **you** on the amount of the loss, or

3.  Within thirty (30) days of when an appraisal award is made as provided for in LOSS CONDITIONS **B.** APPRAISAL.

**H.** SUBROGATION

1.  If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss. **We** will not acquire any rights of recovery **you** have waived prior to the loss. **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

2.  **You** will be paid any recovery, in the proportion that **your** deductible and any provable uninsured loss bears to the total loss less **your** proportion of fees and expenses.

**I.** SUIT AGAINST THE COMPANY

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years next after the inception of the loss.

## SECTION VII -- DEFINITIONS

1. **Actual cash value**: The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, with proper deduction for physical depreciation and obsolescence, but in no event more than the fair market value.

2. **Annual aggregate**: The maximum amount of loss or damage payable in any one (1) Policy year regardless of the number of **occurrences** within the same Policy year.

3. **Contaminant**: Any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

4. **Contamination**: Any condition of property that results from a **contaminant**.

5. **Covered loss**: A loss to **covered property** caused by direct physical loss or damage insured by this Policy.

6. **Covered property**: Property insured by this Policy.

7. **Electronic Data**: Information (including computer programs) stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, drives, **electronic data processing equipment** or any storage medium**.

8. **Electronic data processing equipment:** Any computer, computer system or component, hardware, network, microprocessor, microchip, integrated circuit or similar devices or components in computer or non-computer equipment, operating systems, data, programs or other software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, whether **your** property or not.

9. **Fine Arts**: Property of rarity, historical value, antiquity or artistic merit, including paintings; etchings; pictures (including their negatives); tapestries; statuary; marbles; bronzes; antique jewelry; antique furniture; antique silver; rare books; porcelains; rare or art glassware; art glass windows; valuable rugs; bric-a-brac and porcelains

10. **Land improvements**: Landscape gardening, car parks, parking lots, pavement, roadways, sidewalks, walkways, railways or transformer enclosures; but does not include fill beneath such property, including buildings, structures or additions.

11. **Location(s)**:

    a. As specified in Appendix A – Schedule of Covered **Location(s)**;

    b. Listed on a SCHEDULE on file with **us;** or

    c. If not so specified in Appendix A – Schedule of Covered **Location(s)** or listed on a SCHEDULE on file with **us**, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this definition.

12. **Miscellaneous Unnamed Location**: A **location** owned, leased or rented by **you**, but not listed in a Schedule of **locations** on file with **us** or attached to this Policy.

    **Miscellaneous Unnamed Location** does not include:

    a. Newly Acquired **Locations**; or

    b. A **location** for which coverage is found elsewhere in this Policy including ERRORS AND OMISSIONS.

13. **Occurrence**: All loss or damage attributable directly or indirectly to one (1) cause or series of similar causes. All such loss or damage will be added together and the total loss or damage will be treated as one (1) **occurrence.**

Unless otherwise amended by an endorsement attached to this Policy:

a. All loss or damage resulting from a continuous *FLOOD* event, irrespective of the amount of time or area over which such loss or damage occurs, will be considered a single **occurrence**.

b. All loss or damage from *EARTH MOVEMENT* or *NAMED STORM* within the time specified in the **OCCURRENCE** TIME SPECIFICATIONS will be considered a single **occurrence**.

14. **Ordinary payroll**: Payroll expenses for all of **your** employees except officers, executives, department managers, employees under contract, and other important professional employees. Payroll expenses include the payroll, employee benefits (if directly related to payroll), FICA payments, Union dues and Workers' Compensation premiums **you** pay.

15. **Personal Property**: **Your** tangible things, other than **real property** owned by **you** and used in **your** business, including:

a. Furniture, fixtures, machinery, **electronic data processing equipment** and stock;

b. Materials, supplies, machinery, equipment and fixtures, including those that are *personal property of others*, which are intended by **you** for use in construction of new additions and buildings at an existing covered **location**, that **you** begin to construct during the Policy period and intend to own or occupy once constructed, while located on the construction site awaiting use in construction.

c. Property, other than **real property**, **you** lease for use in **your** business that **you** have a responsibility to insure;

d. **Your** interest in improvements and betterments **you** have made in buildings **you** do not own;

e. **Your valuable papers and records**.

16. **Real Property**: Building(s) and any other structure, including:

a. New buildings and additions under construction, in which **you** have an insurable interest;

b. Completed additions, extensions or permanent fixtures;

c. Machinery and equipment used to service the buildings;

d. Yard Fixtures.

17. **Terrorism**: Activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**18. Valuable papers and records**: Written or printed documents or records including books, maps, negatives, drawings, abstracts, deeds, mortgages and manuscripts.

**19. We, us** and **our(s)**: The company issuing this Policy, as shown on the Declarations.

**20. You** and **your(s)**: The First Named Insured shown on the Declarations.

## APPENDIX A

## SCHEDULE OF COVERED **LOCATIONS**

| Loc # | Sub-loc # | Insureds Complete Street Address | City | State/Province | Country | Zip Code |
|---|---|---|---|---|---|---|
| 1 | 1 | 9000 Railwood Dr | Houston | TX | United States | 77078 |
| 1 | 2 | 9000 Railwood Dr | Houston | TX | United States | 77078 |
| 2 | 1 | 2501 165th St | Hammond | IN | United States | 46320 |
| 2 | 2 | 2501 165th St | Hammond | IN | United States | 46320 |
| 3 | 1 | 950 Mahaffey | Port Allen | LA | United States | 70767 |
| 4 | 1 | 11-40 Borden Ave | Long Island City | NY | United States | 11101 |
| 5 | 1 | 6401 S Twin City Hwy | Port Arthur | TX | United States | 77642 |
| 6 | 1 | 1250 Armour Ave | Mobile | AL | United States | 36617 |
| 7 | 1 | 3951 La Reunion Pkwy | Dallas | TX | United States | 75212 |
| 8 | 1 | 4810 E Napoleon St | Sulphur | LA | United States | 70663 |
| 9 | 1 | 2741  S Yates Ave | Los Angeles | CA | United States | 90040 |
| 10 | 1 | 1501 Piedmont Hwy | Piedmont | SC | United States | 29673 |
| 11 | 1 | 343 Murray Hill Pkwy | E. Rutherford | NJ | United States | 07073 |
| 12 | 1 | 202 Valley Forge | Port Arthur | TX | United States | 77640 |
| 13 | 1 | 4733 Baldwin Blvd | Corpus Christi | TX | United States | 78408 |
| 14 | 1 | 300 Karin Ln | Hicksville | NY | United States | 11801 |
| 15 | 1 | 215 S 14th St | Phoenix | AZ | United States | 85034 |
| 16 | 1 | 1517 S Edward Ave | Gonzales | LA | United States | 70737 |
| 16 | 2 | 1517 S Edward Ave | Gonzales | LA | United States | 70737 |
| 17 | 1 | 700 Powell Ave SW | Renton | WA | United States | 98057 |
| 18 | 1 | 24100 S Broad St | Carson | CA | United States | 90745 |
| 19 | 1 | 921 N Market Blvd | Sacramento | CA | United States | 95834 |
| 20 | 1 | 4550 Federal Blvd | San Diego | CA | United States | 92102 |
| 21 | 1 | 3515 Papin St | St. Louis | MO | United States | 63103 |
| 22 | 1 | 1101 Edwards Ave | Harahan | LA | United States | 70123 |
| 23 | 1 | 25301 Glendale | Redford | MI | United States | 48239 |
| 24 | 1 | 3701 La Reunion Pkwy | Dallas | TX | United States | 75212 |
| 25 | 1 | 537 Stone Rd | Benicia | CA | United States | 94510 |
| 26 | 1 | 56-23 55th Ave | Maspeth | NY | United States | 11378 |
| 27 | 1 | 19039 Northeast Portal Way | Portland | OR | United States | 97230 |
| 28 | 1 | 5 McJunkin Rd | Nitro | WV | United States | 25143 |
| 29 | 1 | 3223 3 Mile Rd NW | Walker | MI | United States | 49534 |
| 30 | 1 | 3950 Nome St | Denver | CO | United States | 80239 |
| 31 | 1 | 502 N Gulf Blvd | Freeport | TX | United States | 77541 |

| 32 | 1 | 603 Howmet Dr | Hampton | VA | United States | 23661 |
| 33 | 1 | 6711 Edith NE | Albuquerque | NM | United States | 87113 |
| 34 | 1 | 521-533 Johnstone St | Perth Amboy | NJ | United States | 08861 |
| 34 | 2 | 521-533 Johnstone St | Perth Amboy | NJ | United States | 08861 |
| 35 | 1 | 909 West 2900 South | Salt Lake City | UT | United States | 84119 |
| 36 | 1 | 2301 Commerce St | Dallas | TX | United States | 75201 |
| 36 | 2 | 2301 Commerce St | Dallas | TX | United States | 75201 |
| 37 | 1 | 3405 Centennial Dr | Midland | MI | United States | 48642 |
| 38 | 1 | 6310 Gravel Ave | Alexandria | VA | United States | 22310 |
| 39 | 1 | 7100 Old Landover Rd | Landover | MD | United States | 20785 |
| 40 | 1 | 6002 Murphy St | Houston | TX | United States | 77033 |
| 41 | 1 | 7344 Stiles Dr | El Paso | TX | United States | 79915 |
| 42 | 1 | 95 Sunbelt Ave | Columbia | SC | United States | 29203 |
| 43 | 1 | 2405 Bell St | Shreveport | LA | United States | 71103 |
| 44 | 1 | 7516 Yukon Dr | Bismarck | ND | United States | 58503 |
| 45 | 1 | 3020 A Thurston Ave | Greensboro | NC | United States | 27406 |
| 46 | 1 | 4720 Eubank Rd | Richmond | VA | United States | 23231 |
| 46 | 2 | 4720 Eubank Rd | Richmond | VA | United States | 23231 |
| 47 | 1 | 3348 Democrat Rd | Memphis | TN | United States | 38118 |
| 48 | 1 | 3915 W Hacienda Ave | Las Vegas | NV | United States | 89118 |
| 49 | 1 | 965-C Bethel Ave | Pennsauken | NJ | United States | 08110 |
| 50 | 1 | 10942 Beaver Dam Rd | Hunt Valley | MD | United States | 21030 |
| 51 | 1 | 7015 Trade Center Ave | Billings | MT | United States | 59101 |
| 52 | 1 | 1761 Shipman Dr | San Antonio | TX | United States | 78219 |
| 53 | 1 | 70 S Gotwalk St | York | PA | United States | 17404 |
| 54 | 1 | 3951 Bay Road | Saginaw | MI | United States | 48603 |
| 55 | 1 | 228 Circle Freeway Dr | Cincinnati | OH | United States | 45246 |
| 56 | 1 | 721 Drew Ave NE | Roanoke | VA | United States | 24012 |
| 57 | 1 | 4602 Locust Ave | Lubbock | TX | United States | 79404 |
| 58 | 1 | 279 - 309 McCarty St | Houston | TX | United States | 77029 |
| 59 | 1 | 2741 S Yates Ave | Los Angeles | CA | United States | 90040 |
| 60 | 1 | 5655 Opportunity Dr | Toledo | OH | United States | 43612 |
| 61 | 1 | 715 Spice Island Dr | Sparks | NV | United States | 89431 |
| 62 | 1 | 8124 Scott Hamilton Dr | Little Rock | AR | United States | 72209 |
| 63 | 1 | 2902 E Boone Ave | Spokane | WA | United States | 99202 |
| 64 | 1 | 206 N Thierman Rd | Spokane Valley | WA | United States | 99212 |
| 65 | 1 | 1118 Hanover St | Sugar Notch Borough | PA | United States | 18634 |
| 66 | 1 | 3761 E 43rd Pl | Tucson | AZ | United States | 85713 |
| 67 | 1 | 640 E 57th St | Anchorage | AK | United States | 77642 |
| 68 | 1 | 8901 Market St | Houston | TX | United States | 77029 |
| 69 | 1 | 2078 Integrity Dr | Columbus | OH | United States | 43209 |
| 70 | 1 | 16014 Adelante St | Irwindale | CA | United States | 91702 |
| 71 | 1 | 3980 Roosevelt Blvd | Eugene | OR | United States | 97401 |
| 72 | 1 | 2735 Bailey Ave | Jackson | MS | United States | 39213 |
| 73 | 1 | 5225 S Loop 289 | Lubbock | TX | United States | 79424 |
| 73 | 2 | 5225 S Loop 289 | Lubbock | TX | United States | 79424 |
| 74 | 1 | 1848 Mony St | Fot Worth | TX | United States | 76102 |

## APPENDIX B

## NEW MADRID *EARTH MOVEMENT* ZONES

| STATE | ZONE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|-------|------|-------------------------------------------|
| ARKANSAS | 1 | Clay, Craighead, Crittenden, Cross, Green, Independence, Jackson, Lawrence, Lee, Mississippi, Monroe, Phillips, Poinsett, Randolph, St. Francis, White, Woodruff |
| ARKANSAS | 2 | Arkansas, Fulton, Izard, Lonoke, Prairie, Sharp, |
| ILLINOIS | 1 | Alexander, Franklin, Gallatin, Hamilton, Hardin, Jackson, Jefferson, Johnson, Massac, Perry, Pope, Pulaski, Randolph, Saline, Union, Washington, Williamson |
| ILLINOIS | 2 | Bond, Clay, Clinton, Crawford, Edwards, Effingham, Fayette, Jasper, Lawrence, Madison, Marion, Monroe, Richland, Saint Clair, Wabash, Wayne, White |
| INDIANA | 2 | Gibson, Knox, Pike, Posey, Spencer, Vanderburgh, Warrick |
| KENTUCKY | 1 | Ballard, Calloway, Carlisle, Crittenden, Fulton, Graves, Hickman, Livingston, Lyon, Marshall, McCracken, |
| KENTUCKY | 2 | Caldwell, Christian, Daviess, Henderson, Hopkins, McLean, Muhlenberg, Todd, Trigg, Union, Webster |
| MISSISSIPPI | 1 | DeSoto, Marshall, Tate, Tunica |
| MISSISSIPPI | 2 | Alcorn, Benton, Coahoma, Lafayette, Panola, Quitman, Tippah |
| MISSOURI | 1 | Bollinger, Butler, Cape Girardeau, Carter, Dunklin, Madison, Mississippi, New Madrid, Pemiscott, Perry, Ripley, Scott, Stoddard, Wayne |
| MISSOURI | 2 | Independent City of St. Louis, Iron, Jefferson, Oregon, Reynolds, Shannon, St. Francois, St. Louis, Ste. Genevieve, Washington |
| TENNESSEE | 1 | Benton, Carroll, Chester, Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Henderson, Henry, Lake, Lauderdale, Madison, Obion, Shelby, Tipton, Weakley |
| TENNESSEE | 2 | Decatur, Hardin, Houston, Humphreys, McNairy, Montgomery, Perry, Stewart, |

## APPENDIX C

## PACIFIC NORTHWEST *EARTH MOVEMENT* ZONE

| REGION / STATE | COUNTIES / COORDINATES |
|---|---|
| CANADA: BRITISH COLUMBIA and VANCOUVER ISLAND | South of 50° N latitude and west of 120° W longitude |
| OREGON | Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Hood River, Jackson, Josephine, Klamath, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill |
| WASHINGTON | Chelan, Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Kittitas, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom |

# APPENDIX D

## *NAMED STORM* TIERS FOR USA INCLUDING
## ITS COMMONWEALTHS AND TERRITORIES

SOUTHERN TIER ONE: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantly, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Pierce, Wayne |
| Louisiana | Acadia, Ascension, Assumption, Calcasieu, Cameron, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge |
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Tyrell, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks, Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Matagorda, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |

APPENDIX D (continued)

## *NAMED STORM* TIERS FOR USA INCLUDING
## ITS COMMONWEALTHS AND TERRITORIES

NORTHERN TIER ONE: VIRGINIA TO MAINE

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Sussex |
| Maine | Cumberland, Hancock, Knox, Lincoln, Penobscot, Sagadahoc, Waldo, Washington, York |
| Maryland | Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Barnstable, Bristol, Dukes, Essex, Middlesex, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Rockingham |
| New Jersey | Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk |
| Rhode Island | Bristol, Newport, Washington |
| Virginia | Accomack, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Northampton, Northumberland, Surry, York |
| | Independent Cities: Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach, Williamsburg |

SOUTHERN TIER TWO: NORTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Alabama | Clarke, Coffee, Conecuh, Covington, Dale, Escambia, Geneva, Houston, Monroe, Washington |
| Louisiana | Allen, Avoyelles, Beauregard, Evangeline, St. Helena, St. Landry, West Feliciana |
| Mississippi | Forrest, Greene, Jones, Lamar, Marion, Perry, Pike, Walthall, Wayne |
| North Carolina | Cumberland, Edgecombe, Greene, Johnston, Robeson, Sampson, Wilson |
| South Carolina | Bamberg, Calhoun, Clarendon, Dillon, Florence, Hampton, Marion, Orangeburg |
| Texas | Austin, Brazos, Colorado, De Witt, Duval, Fayette, Gonzales, Grimes, Jim Hogg, Karnes, Lavaca, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Walker, Waller, Washington |

APPENDIX D (continued)

## *NAMED STORM* TIERS FOR USA INCLUDING
## ITS COMMONWEALTHS AND TERRITORIES

| Other States, Commonwealths and Territories of The United States of America | | |
|---|---|---|
| | TIER | |
| AMERICAN SAMOA | 2 | Entire Territory |
| GUAM | 1 | Entire Territory |
| HAWAII | 1 | Entire State |
| NORTHERN MARIANA ISLANDS | 1 | Entire Commonwealth |
| PUERTO RICO | 1 | Entire Commonwealth |
| U.S. VIRGIN ISLANDS | 1 | Entire Territory |
| All other US Territories and Possessions | 1 | Entire Territory |

© 2016 Liberty Mutual Insurance

# APPENDIX E

## *FLOOD* HAZARD **LOCATIONS**

High Hazard **Location(s)**

| Loc # | Sub Loc # | Address | City | State | Zip |
|---|---|---|---|---|---|
| 4 | 1 | 11-40 Borden Ave | Long Island City | NY | 11101 |
| 5 | 1 | 6401 S Twin City Hwy | Port Arthur | TX | 77642 |
| 11 | 1 | 343 Murray Hill Pkwy | E. Rutherford | NJ | 07073 |
| 12 | 1 | 202 Valley Forge | Port Arthur | TX | 77640 |
| 19 | 1 | 921 N Market Blvd | Sacramento | CA | 95834 |
| 35 | 1 | 909 West 2900 South | Salt Lake City | UT | 84119 |
| 61 | 1 | 715 Spice Island Dr | Sparks | NV | 89431 |
| 74 | 1 | 1848 Mony St | Fot Worth | TX | 76102 |

Moderate Hazard **Location(s)**

| Loc # | Sub Loc # | Address | City | State | Zip |
|---|---|---|---|---|---|
| 3 | 1 | 950 Mahaffey | Port Allen | LA | 70767 |
| 6 | 1 | 1250 Armour Ave | Mobile | AL | 36617 |
| 15 | 1 | 215 S 14th St | Phoenix | AZ | 85034 |
| 16 | 1 | 1517 S Edward Ave | Gonzales | LA | 70737 |
| 16 | 2 | 1517 S Edward Ave | Gonzales | LA | 70737 |
| 22 | 1 | 1101 Edwards Ave | Harahan | LA | 70123 |
| 27 | 1 | 9 Northeast Portal Way | Portland | OR | 97230 |
| 28 | 1 | 5 McJunkin Rd | Nitro | WV | 25143 |

## FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this Policy at time of issue:

| Form or Endorsement Number | Form or Endorsement Name |
|---|---|
| PY 03 12 01 17 | Reward Coverage Endorsement |

## STATE AMENDATORY ENDORSEMENTS

| Endorsement Number | Endorsement Name |
|---|---|
| EN4317 08-10 | Louisiana Notice to Policyholders |
| SNI 17 02 01 11 | Louisiana Citizens Property Insurance Corporation Emergency Assessment |
| SNI 42 03 03 12 | Texas Important Notice |
| SNP 42 02 07 13 | Texas Period to File a Claim or Bring Legal Action Against Us Notice - Wind or Hail - Catastrophe Area |
| CNP 90 06 01 17 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| SNI 43 03 05 13 | Utah Information to Policyholders |
| SNI 43 04 05 13 | Utah Information to Policyholders |
| SNI 43 06 05 13 | Utah Information to Policyholders |
| PY 04 03 01 17 | Cap on Losses From Certified Acts of Terrorism |
| PY 01 01 01 17 | Alabama Changes |
| PY 01 02 01 17 | Alaska Changes |
| PY 01 03 01 17 | Arizona Changes |
| PY 01 04 01 17 | Arkansas Changes |
| PY 01 05 01 17 | California Changes |
| PY 01 43 01 17 | Indiana Changes |
| PY 01 13 01 17 | Louisiana Changes |
| PY 01 14 01 17 | Maryland Changes |
| PY 01 15 01 17 | Michigan Changes |

PY 00 01 02 17                    © 2016 Liberty Mutual Insurance                    Page 74 of 75

| PY 01 17 01 17 | Mississippi Changes |
|---|---|
| PY 01 18 01 17 | Missouri Changes |
| PY 01 19 01 17 | Montana Changes |
| PY 01 21 01 17 | Nevada Changes |
| PY 01 23 01 17 | New Jersey Changes |
| PY 01 24 01 17 | New York Changes |
| PY 01 25 01 17 | North Carolina Changes |
| PY 01 26 01 17 | North Dakota Changes |
| PY 01 27 01 17 | Ohio Changes |
| PY 01 29 01 17 | Oregon Changes |
| PY 01 30 01 17 | Pennsylvania Changes |
| PY 01 31 01 17 | South Carolina Changes |
| PY 01 33 01 17 | Texas Changes |
| PY 02 45 01 17 | Texas Changes – Cancellation and Nonrenewal |
| PY 01 34 01 17 | Utah Changes |
| PY 01 36 01 17 | Virginia Changes |
| PY 01 37 01 17 | Washington Changes |
| PY 01 38 01 17 | West Virginia Changes |
| IC0024 01-04 | Countersignature Endorsement - AZ |
| IC0017 01-09 | Countersignature Endorsement - MS |
| IC0019 01-04 | Countersignature Endorsement - NV |

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**REWARD COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** **We** provide the following PROPERTY DAMAGE COVERAGE AND LIMITATION for a **covered loss** as specified in the LIMITS OF LIABILITY Table in the Schedule of this endorsement, subject to the terms, conditions and exclusions of this Policy:

REWARD COVERAGE

1. **We** will reimburse **you** for amounts **you** pay for information leading to the conviction of any person(s) responsible for a **covered loss** of arson, theft or vandalism provided:

   a. The individual(s) report(s) the suspected individual or individuals to local law enforcement officials;

   b. The individual or individuals responsible for the **covered loss** confesses and/or pleads guilty without going to trial; and

   c. The informant is not implicated in the arson, theft or vandalism.

2. **Our** payment of this reward will not be increased by:

   a. The number of individuals reporting the individual or individuals responsible for the **covered loss**;

   b. The number of individual or individuals involved in the **covered loss**; or

   c. The number of **covered losses**.

3. No deductible applies to this PROPERTY DAMAGE COVERAGE AND LIMITATION.

All other terms and conditions remain unchanged.

Schedule

| COVERAGE | LIMIT OF LIABILITY |
|----------|--------------------|
| REWARD COVERAGE | $25,000 |

Policy number YAC-L9L-453866-027

**Louisiana Notice to Policyholders**

To comply with Louisiana Statutes Section 1. R.S. 22:2317, we are required at time of policy issuance as well as any subsequent renewal of this policy,

(1)     to inform you that any surcharge, market equalization charge, or other assessment previously levied in accordance with R.S. 22:2307 due to Hurricanes Katrina and Rita is refundable; and

(2)     to provide you the electronic link to the form designated by the Department of Revenue to receive a refund from the state after its payment by the insured pursuant to R.S. 47:6025(A)(3) for the amount of any surcharge, market equalization charge, or other assessment levied by the corporation pursuant to R.S. 22:2307 due to Hurricanes Katrina and Rita.

➤   http://revenue.louisiana.gov/forms/taxforms/620INS(1_10)F.pdf

For more information you can refer to the Department of Revenue website and search for the Louisiana Citizens Insurance Tax Credit.

➤   http://revenue.louisiana.gov

EN4317 08-10                                                                                         Page 1 of 1

**Policyholder Notice**

**Louisiana Citizens Property Insurance Corporation Emergency Assessment**

The Louisiana Citizens Property Insurance Corporation levied an emergency assessment that insurers are required to collect from policyholders for the following lines of business:  Fire, Allied Lines, Homeowners, Commercial Multi-Peril (Non Liability Portion), and all mobile home programs.  The emergency assessment was necessary after Hurricanes Katrina and Rita resulted in an excessive deficit in Louisiana's FAIR Plan, a program designed to provide commercial and residential property insurance to applicants who are unable to obtain such insurance through the voluntary market.  The assessment has been added to your policy and is identified as "2005 LA FAIR Plan Emergency Assessment."  Liberty Mutual Group will submit all assessments to the Louisiana Citizens Bond Trustee in accordance with the requirements of the Louisiana Department of Insurance's guidelines.

**TEXAS IMPORTANT NOTICE**

To obtain information or make a complaint you may contact:

    Presidential Service Team
    Liberty Mutual Insurance
    175 Berkeley Street – MS 10B
    Boston, MA 02116
    1-800-344-0197 Ext. 41015

To obtain information on companies, coverage's, rights or complaints you may contact:

    Texas Department of Insurance
    PO Box 149104
    Austin, TX 78714-9104
    1-800-252-3439

PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

**TEXAS PERIOD TO FILE A CLAIM OR BRING
LEGAL ACTION AGAINST US NOTICE -
WIND OR HAIL - CATASTROPHE AREA**

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), **the provisions of the policy (including its endorsements) shall prevail.**

Carefully read your policy, including the endorsements attached to your policy.

In accordance with Texas Insurance Code Section 2301.010(f), we are notifying you that:

1. With respect to loss or damage in the State of Texas caused by wind or hail in the catastrophe area, as defined by the Texas Insurance Code, any claim must be filed with us not later than one (1) year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim; and

2. Any legal action brought against us under the policy for loss or damage in the State of Texas caused by wind or hail in the catastrophe area, as defined by the Texas Insurance Code, must be brought within the earlier of the following:

   a. Two (2) years and one (1) day from the date we accept or reject the claim; or

   b. Three (3) years and one (1) day from the date of the loss or damage that is the subject of the claim.

 © 2013 Liberty Mutual Insurance. All rights reserved.

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

**DISCLOSURE PURSUANT TO TERRORISM RISK
INSURANCE ACT**

**A.** Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, **we** are required to provide **you** with a notice disclosing the portion of **your** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of **your** premium attributable to such coverage is shown in D. PREMIUM in the Declarations.

**B.** Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals the percentage indicated below of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Federal share of terrorism losses: 84%, calendar year 2016
Federal share of terrorism losses: 83%, calendar year 2017
Federal share of terrorism losses: 82%, calendar year 2018
Federal share of terrorism losses: 81%, calendar year 2019
Federal share of terrorism losses: 80%, calendar year 2020

**C.** Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## UTAH INFORMATION TO POLICYHOLDERS

Pursuant to the laws of Utah section 31A-21-201 you are hereby informed that LM Insurance Corporation is the exact name of your insurer which is domiciled in the state of Illinois.

## UTAH INFORMATION TO POLICYHOLDERS

Pursuant to the laws of Utah section 31A-21-201 you are hereby informed that The First Liberty Insurance Corporation is the exact name of your insurer which is domiciled in the state of Illinois.

 © 2013 Liberty Mutual Insurance. All rights reserved.

**UTAH INFORMATION TO POLICYHOLDERS**

Pursuant to the laws of Utah section 31A-21-201 you are hereby informed that Employers Insurance Company of Wausau is the exact name of your insurer which is domiciled in the state of Wisconsin.

Policy Number   YAC-L9L-453866-027
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Cap On Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and **we** have met **our** insurer deductible under the Terrorism Risk Insurance Act, **we** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.** Application Of Exclusions

The terms and limitations of SECTION **II.C.** EXCLUSIONS, **2.a.** do not serve to create coverage for any loss which would otherwise be excluded under this endorsement or the Policy, such as losses excluded under SECTION **II.C.** EXCLUSIONS, **2. b., c., d.,** or **e.**

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ALABAMA CHANGES**

This endorsement applies only to **covered property** located in Alabama and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following is added to SECTION II – PROPERTY DAMAGE, **C.2** EXCLUSIONS:

    **k.** Any act committed by **you** or at **your** direction, by others, which is intended to cause loss or damage.  This exclusion will not apply to deny coverage to an innocent additional named insured or additional insured who did not cooperate in or contribute to the creation of the loss, provided it is a **covered loss**, and the loss arose out of an act of domestic abuse. Such coverage will be provided only if the innocent additional named insured or additional insured provides evidence to **us** that the loss is related to the act of domestic abuse and:

        **(1)** Files and does not voluntarily dismiss a complaint against the abuser under the Protection From Abuse Act;

        **(2)** Seeks a warrant for the abuser's arrest and pledges to cooperate in any criminal prosecution of the abuser who committed the act causing the loss or damage.

    **Our** payment for a **covered loss** to the innocent additional named insured or additional insured is limited to that insured's insurable interest in the **covered property** as reduced by any payment to a mortgagee or other secured interest. In no event will **we** pay more than the applicable LIMIT OF LIABILITY.

**B.** The following is added to SECTION V - GENERAL POLICY CONDITIONS:

    INCREASE IN PREMIUM

    If **we** increase **your** renewal premium, **we** will mail or deliver to **you** written notice of **our** intent to increase the premium at least thirty (30) days before the effective date of the premium increase.

    Any notice of renewal premium increase will be mailed or delivered to **your** last known address.  If notice is mailed, it will be by registered or first class mail.  Proof of mailing will be sufficient proof of notice.

**C.** The following is added to SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION:

    **3.** If **we** pay an additional named insured or additional insured for loss arising out of an act of domestic abuse by another insured, the rights of the additional named insured or additional insured, who did not cooperate in or contribute to the creation of the loss, to recover damages from the perpetrator of domestic abuse are transferred to **us** to the extent of **our** payment. Following the loss, the additional named insured or additional insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic abuse.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Paragraph **1.** of SECTION VII - DEFINITIONS is replaced with the following:

1. **Actual cash value**: The amount it would cost to repair or replace **covered property**, at the time of the loss at the **location** where the loss happened, with material of like kind and quality and used for the same purpose, subject to a deduction for depreciation. However, if the **covered property** is a residential property that, at the time of loss or damage, has nominal or no economic value, or a value disproportionate to replacement cost less depreciation, the determination of **actual cash value** as set forth herein is not required. **Actual cash value** applies to valuation of **covered property** regardless of whether that property has sustained partial or total loss or damage. The **actual cash value** of **covered property** may be significantly less than its replacement cost.

All other terms and conditions remain unchanged.

Policy Number  YAC-L9L-453866-027
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ALASKA CHANGES**

This endorsement applies only to **covered property** located in Alaska and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following is added to this Policy and supersedes any provision to the contrary:

A loss may be caused by a chain of causes. If a covered cause of loss is the dominant cause of such a loss, **we** will not deny coverage on the basis that a secondary cause in that chain is not a covered cause of loss.

**B.** In any suit **we** elect to defend in Alaska, **our** obligation under Paragraph **D.9** DEFENSE FOR PERSONAL PROPERTY OF OTHERS of SECTION II – PROPERTY DAMAGE is amended by adding the following:

ATTORNEY'S FEES

**We** will pay that portion of the attorney's fees awarded as costs which does not exceed the amount allowed for a contested case in the schedule of attorney's fees contained in Alaska Civil Rule 82 for a judgment equal to the applicable LIMIT OF LIABILITY.

However, **we** will not pay any attorney's fees on that portion of any judgment or claim settlement which exceeds the applicable LIMIT OF LIABILITY. This means **you** would have to pay any such excess fees directly.

The attorney's fees provided by Alaska Civil Rule 82 for contested cases are:

20% of the first $25,000 of a judgment or claim settlement;
10% of the next $75,000 of a judgment or claim settlement;
10% of the next $400,000 of a judgment or claim settlement; and
10% of the portion of a judgment or claim settlement that exceeds $500,000.

**C.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

**We** will not pay for any loss or damage if **you** have willfully and with intent to defraud, concealed or misrepresented any material fact or circumstances concerning:

**1.** This Policy;

**2.** The **covered property**;

**3.** **Your** interest in the **covered property**; or

**4.** A claim under this Policy.

D.  Paragraph **B.** APPRAISAL of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **B.**  APPRAISAL

        1.  If **you** fail to agree with **us** on the amount of a loss, either party may require that the amount be submitted for appraisal.  Requests for appraisal will be made in writing.  Each party will then choose a competent independent appraiser. Each party will notify the other of the identity of its appraiser within ten (10) days of the written request for appraisal.

        2.  The two (2) appraisers will promptly choose a competent, impartial umpire.  If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition the judge of a court of record in the state where the **covered property** is located to select an umpire.

        3.  The appraisers will then determine the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within fifteen (15) days, unless the time period is extended by the umpire, they will submit their differences to the umpire.  Written agreement signed by any two of these three will determine the amount of loss or damage.

        4.  Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid as determined by the umpire.

E.  Paragraph **9.c.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS is replaced by the following:

    **c.**  Show the remains of the damaged property as often as may be reasonably required by **us**, and submit to examination under oath. **You** have the right to have legal counsel present at the examination.

F.  Paragraph **G.** PAYMENT OF LOSS of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **G.**  PAYMENT OF LOSS

    **We** will pay those portions of adjusted claims that are not in dispute within thirty (30) days after submission and acceptance of the proof of loss.

G.  Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **I.**  SUIT AGAINST THE COMPANY

    No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within three (3) years next after the inception of the loss.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number   YAC-L9L-453866-027
Issued by          Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ARIZONA CHANGES**

This endorsement applies only to **covered property** located in Arizona and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following is added to SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS:

**k.** Any act committed by **you** or at **your** direction, by others, which is intended to cause loss or damage. This exclusion will not apply to deny coverage to an innocent additional named insured or additional insured who did not cooperate in or contribute to the creation of the loss, provided it is a **covered loss**, and the loss arose out of an act of domestic violence. Coverage will be provided only if the innocent additional named insured or additional insured pledges to cooperate in any criminal prosecution of the abuser who committed the act causing the loss or damage.

**Our** payment for a **covered loss** to the innocent additional named insured or additional insured is limited to that insured's insurable interest in the **covered property** as reduced by any payment to a mortgagee or other secured interest. In no event will **we** pay more than the applicable LIMIT OF LIABILITY.

**B.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

**We** will not pay for any loss or damage in any case involving misrepresentations, omissions, concealment of facts or incorrect statements:

**1.** That are fraudulent;

**2.** That are material either to the acceptance of the risk, or to the hazard assumed by **us**; and

**3.** Where, if the true facts had been known to **us** as required either by the application for the Policy or otherwise, **we** in good faith would either:

**a.** Not have issued the Policy;

**b.** Not have issued the Policy in as large an amount; or

**c.** Not have provided coverage with respect to the hazard resulting in the loss.

**C.** The following is added to SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION:

**3.** If **we** pay an additional named insured or additional insured for loss arising out of an act of domestic violence by another insured, the rights of the additional named insured or additional insured, who did not cooperate in or contribute to creation of the loss, to recover damages from the perpetrator of domestic violence are transferred to **us** to the extent of **our** payment.  Following the loss, the additional named insured or additional insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic violence.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ARKANSAS CHANGES**

This endorsement applies only to **covered property** located in Arkansas and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraphs **1.** and **3.** of SECTION VI – LOSS CONDITIONS, **B.** APPRAISAL are replaced by the following:

    **1.** If **you** fail to agree with **us** on the amount of a loss, either party may require that the amount be submitted for appraisal.  However, an appraisal will be made only if both parties agree, voluntarily, to have the loss appraised.  Requests for appraisal will be made in writing.  Each party will then choose a competent independent appraiser.  Each party will notify the other of the identity of its appraiser within sixty (60) days of the written request for appraisal.

    **3.** The appraisers will then determine the amount of the loss or damage.  If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage.  If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire.  Written agreement signed by any two of these three will determine the amount of loss or damage.  An appraisal decision will not be binding on the parties involved.

**B.** Paragraph **H.** SUBROGATION of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **H.** SUBROGATION

    **1.** If **we** make payment for a loss, **you** will assign to **us** all **your** rights of recovery against any party for that loss.  **We** will not acquire any rights of recovery **you** have waived prior to the loss.  **You** agree to cooperate and not to waive, prejudice, settle or compromise any claim against any party after the loss.

    **2.** **We** will be entitled to recovery only after **you** have been fully compensated for the loss pursuant to the terms and conditions of this Policy.

    **3.** **You** will be paid your provable uninsured loss after any legal fees and expenses have been deducted.

**C.** Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **I.** SUIT AGAINST THE COMPANY

    No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions.  Any suit against **us** must be brought within five (5) years next after the inception of the loss.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CALIFORNIA CHANGES**

This endorsement applies only to **covered property** located in California and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

**H.** JURISDICTION

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

**C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

1. If a **covered loss** is caused by or results from fire, **we** will not cover the resulting loss or damage if, with the actual intent to deceive, **you** commit fraud or intentionally conceal or misrepresent any material fact or circumstance, whether before or after the loss, concerning:

   a. This Policy;

   b. The **covered property**;

   c. **Your** interest in the **covered property**; or

   d. A claim under this Policy.

2. If a **covered loss** is caused by or results from other than fire, this entire Policy is immediately void if, with the actual intent to deceive, **you, your** representative or any insured commit fraud or intentionally conceal or misrepresent any material fact or circumstance, whether before or after the loss, concerning:

   a. This Policy;

   b. The **covered property**;

   c. **Your** interest in the **covered property**; or

   d. A claim under this Policy.

**C.** Paragraph **B.** APPRAISAL of SECTION VI – LOSS CONDITIONS is replaced by the following:

**B.** APPRAISAL

1. If **you** fail to agree with **us** on the value of the **covered property** or the amount of a loss, either party may demand that the disputed amount be submitted for appraisal. A demand for appraisal will be made in writing within sixty (60) days after **our** receipt of proof of loss. Each party will then choose a competent and disinterested appraiser.  Each party will notify the other of the identity of its appraiser within twenty (20) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition a judge of a court of record in the state where the **covered loss** happened, to select an umpire.

3.  The appraisers will then determine the value of the **covered property** and the amount of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will determine the amount of loss or damage.

4.  Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

All other terms and conditions remain unchanged.

Policy Number YAC-L9L-453866-027
Issued by Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**INDIANA CHANGES**

This endorsement applies only to **covered property** located in Indiana and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

**H.** JURISDICTION

Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**LOUISIANA CHANGES**

This endorsement applies only to **covered property** located in Louisiana and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

A. Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

   **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

     **1.** This Policy is void if **you** or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this Policy, and such fraud, concealment or misrepresentation is stated in the Policy or endorsement or in the written application for this Policy and:

       **a.** Was made with actual intent to deceive; or

       **b.** Materially affected either **our** decision to provide this insurance or the hazard **we** assumed.

     **2.** **We** do not provide coverage under this Policy to **you** or any other insured who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact or circumstance, with intent to deceive, relating to:

       **a.** This Policy;

       **b.** The **covered property**;

       **c.** **Your** interest in the **covered property**; or

       **d.** A claim under this Policy.

B. Paragraph **10.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS is replaced by the following:

   **10.** Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

     **a.** The time and cause of the loss;

     **b.** **Your** interest and the interest of all others in the property involved;

     **c.** Any other policies of insurance that may provide coverage for the loss;

     **d.** Any changes in title or occupancy of the property during the Policy period and;

     **e.** The amount of **your** claimed loss.

   **You** shall also submit with the Proof of Loss:

     **(1)** A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

     **(2)** An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

**(3)** Specifications for any damaged building; and

**(4)** Detailed estimates and invoices for the repair of any damage.

However, if the loss or damage arises due to a catastrophic event for which a state of disaster or emergency is declared pursuant to law by civil officials, and the **covered property** is located in an area within the declaration, **you** must submit the Proof of Loss to **us** within one hundred eighty (180) days; but this one hundred eighty (180) day period does not commence as long as the declaration of disaster or emergency is in existence and civil authorities are denying **you** access to **your** property.

**C.** Paragraph **G.** PAYMENT OF LOSS of SECTION VI – LOSS CONDITIONS is replaced by the following:

**G.** PAYMENT OF LOSS

**We** will pay those portions of adjusted claims that are not in dispute within thirty (30) days after submission and acceptance of the signed, sworn Proof of Loss.

In the event of a total loss, the LIMIT OF LIABILITY for **real property** represents its value. This provision does not apply to any claim for total loss to any building which is insured as part of a blanket LIMIT OF LIABILITY applicable to two or more buildings. Any claim for total loss to a building insured on a blanket basis will be settled at replacement cost or at **actual cash value**, depending on the Policy provisions applicable to the building sustaining the total loss.

**D.** Paragraph **H.** SUBROGATION of SECTION VI – LOSS CONDITIONS is replaced by the following:

**H.** SUBROGATION

If any person or organization to or for whom payment under this Policy is made has rights to recover damages from another, those rights are transferred to **us** to the extent of any payment made under this Policy. **You**, or any person or organization to whom payment is made, must do everything necessary to secure **our** rights of recovery and must do nothing after a loss to impair those rights. **You** may waive **your** rights of recovery against another party in writing:

**1.** Prior to a loss to **covered property**;

**2.** After a loss to **covered property** only if, at the time of loss the party is one of the following:

    **a.** A person or organization insured by this Policy;

    **b.** A business entity:

        **(1)** Owned or controlled by **you**; or

        **(2)** Which owns or controls **you**;

    **c.** An employee or employer of **yours**;

    **d.** The owner, lessor or tenant of the:

        **(1)** described **location**; or

        **(2)** **location** where loss or damage occurred,

    including their employees, partners and stockholders; or

    **e.** Relatives of **yours** by blood or marriage.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

If **you** waive **your** rights of recovery against another party in writing after a loss, **we** can recover from **you** any amount **you** received for that waiver, but **we** cannot recover more than the amount **we** paid **you** for that loss.

E.  Paragraph **3. Contaminant** of SECTION VII - DEFINITIONS is replaced by the following:

3.  **Contaminant**: Any foreign substance; impurity; hazardous materials including ammonia, asbestos and lead; poison; toxin; pathogen or pathogenic organism; *bacteria*; virus; disease causing or illness causing agent; fungus; mold or mildew.

F.  The following is added to SECTION VII – DEFINITIONS:

*Bacteria* means any of the unicellular, prokaryotic microorganisms of the class Schizomycetes, which vary in terms of morphology, oxygen and nutritional requirements, and motility, and may be free-living, saprophytic, or pathogenic, the latter causing disease in plants, animals or humans.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MARYLAND CHANGES**

This endorsement applies only to **covered property** located in Maryland and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

   **H.** JURISDICTION

   Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

   **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

   **We** do not provide coverage in any case of fraud by **you**, at any time, as it relates to this Policy. **We** also do not provide coverage if **you, your** representatives or any insured, at any time, intentionally conceals or misrepresents a material fact concerning:

   **1.** This Policy;

   **2.** The **covered property;**

   **3.** **Your** interest in the **covered property**; or

   **4.** A claim under this Policy.

**C.** Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

   **I.** SUIT AGAINST THE COMPANY

   No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within three (3) years of the date that the suit accrues.

**D.** The following is added to SECTION VI – LOSS CONDITIONS:

   **J.** MARYLAND FRAUD WARNING

   Pursuant to Maryland Insurance Article section §27-805, "Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by          Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MICHIGAN CHANGES**

This endorsement applies only to **covered property** located in Michigan and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **I.**   SUIT AGAINST THE COMPANY

       No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years next after the inception of the loss. The time for commencing an action against **us** is tolled from the time **you** notify **us** of the loss or damage until **we** formally deny liability for the claim.

**B.** The following is added to SECTION V – GENERAL POLICY CONDITIONS, **F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS and SECTION VI – LOSS CONDITIONS, **G.** PAYMENT OF LOSS:

    If a municipality has elected to apply the provisions of 1998 Michigan Public Act 217, and the insured loss is subject to the provisions of the Act, **we** will withhold a part of **our** payment for fire, explosion, malicious mischief, windstorm or hail, or riot or civil commotion loss or damage to **your** covered **real property** in that municipality. The withheld amount will be paid either to the municipality or to **you** and the mortgagee, if any, or with **your** consent, the licensed contractor hired by **you** to perform repair, replacement or removal services on the lost or damaged **real property** according to the provisions of Public Act 217. **We** will notify **you,** any mortgagee and the municipality of any loss subject to the provisions of Public Act 217.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L–453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MISSISSIPPI CHANGES**

This endorsement applies only to **covered property** located in Mississippi and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

A.  Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

   **I.**   SUIT AGAINST THE COMPANY

        No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within three (3) years next after the inception of the loss.

All other terms and conditions remain unchanged.

Policy Number YAC-L9L-453866-027
Issued by      Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MISSOURI CHANGES**

This endorsement applies only to **covered property** located in Missouri and modifies insurance provided under the following:

PREMIER PROPERTY PRODUCT™

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

   **H.** JURISDICTION

   Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** The following is added to SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS:

   **k.** Any act committed by **you** or at **your** direction, by others, which is intended to cause loss or damage. This exclusion will not apply to deny coverage to an innocent additional named insured who did not cooperate in or contribute to the creation of the loss, provided it is a **covered loss,** and the loss arose out of domestic violence. Such coverage will be provided only if the innocent additional named insured files a police report and completes a sworn affidavit indicating both:

   **(1)** the cause of the loss; and

   **(2)** a pledge to cooperate in any criminal prosecution of the person committing the act causing the loss.

   **Our** payment for a **covered loss** to the innocent additional named insured is limited to that insured's insurable interest in the **covered property** as reduced by any payment to a mortgagee or other secured interest. However, **we** will not be required to make any subsequent payment for any loss for which the innocent additional named insured has received payment. In no event will **we** pay more than the applicable LIMIT OF LIABILITY.

**C.** Paragraph **b. (3)** of the LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL provision of SECTION II – PROPERTY DAMAGE, **D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS is deleted and replaced by the following:

   **(3)** If **you** fail to give **us** written notice within one hundred eighty (180) days after the loss, and such failure operates to prejudice **our** rights as per Missouri regulation 20CSR100-1.020.

**D.** Paragraphs **1., 2.** and **3.** of SECTION VI – LOSS CONDITIONS, **B.** APPRAISAL are replaced by the following:

   **1.** If **you** and **we** fail to agree as to the **actual cash value** or the amount of loss, either party may make a written demand that the amount be submitted for appraisal. In this event, each party will select a competent and disinterested appraiser and notify the other of the identity of its appraiser within twenty (20) days of the written demand for appraisal.

   **2.** The two (2) appraisers will promptly select a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may petition the judge of a court of record in the state and county (or city if the city is not within a county) where the **covered property** is located to select an umpire.

   **3.** The appraisers will then appraise the loss, stating separately **actual cash value** and loss to each item. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

amount of **our** payment for the loss. If the appraisers fail to agree, they will submit their differences to the umpire. The umpire will make the award within thirty (30) days after the umpire receives the appraiser's submissions of their differences.  Written agreement signed by any two of these three will set the amount of **actual cash value** and loss.

E.   Paragraph **D.** COMPANY OPTION of SECTION VI – LOSS CONDITIONS is replaced by the following:

**D.**   COMPANY OPTION

1.   At **our** option, **we** will repair, rebuild or replace damaged **covered property** with other property of like kind and quality within a reasonable period of time.

2.   If **we** elect to repair or replace the **covered property**;

a.   **We** will notify **you** of that decision within fifteen (15) working days of **our** receipt of **your** proof of loss, that **we**:

(1)   Accept **your** claim;

(2)   Deny **your** claim; or

(3)   Need more time to determine whether **your** claim should be accepted or denied.

If **we** deny **your** claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

If **we** need more time to determine whether **your** claim should be accepted or denied, the written notice will state the reason why more time is required.

b.   If **we** have not completed **our** investigation, **we** will notify **you** again in writing, within forty-five (45) days after the date of the initial notice as provided in Item **2.a.(3)** above, and thereafter every forty-five (45) days. The written notice will state why more time is needed to investigate **your** claim and when **you** may expect **us** to reach a decision on **your** claim.

3.   **We** will, at **our** option, take title to all or any part of the damaged or destroyed property at the agreed or appraised value.

F.   The first sentence of Paragraph **10.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS is replaced by the following:

10.   Submit to **us**, within ninety (90) days of **our** request, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

G.   The following are added to SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION:

3.   If **we** pay an additional named insured for loss arising out of an act of domestic violence by another insured, the rights of the additional named insured, who did not cooperate in or contribute to the creation of the loss, to recover damages from the perpetrator of domestic violence are transferred to **us** to the extent of **our** payment. Following the loss, the additional named insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic violence.

4.   In the event **you** die **your** rights and duties will be transferred as follows:

a.   For an individual who is a named insured, they will be transferred to **your** legal representative, but only while acting within the scope of those duties.

If **you** do not have a legal representative appointed, anyone having proper temporary custody of **your** property will also have **your** rights and duties associated with that property.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    **b.** If **you** have designated an individual as a grantee beneficiary in a beneficiary deed which has been properly recorded before **your** death for specific **real property**, that individual, at the time of **your** death, will assume **your** rights and duties related to the **real property** for the shortest of the following time periods:

      **(1)** Thirty (30) consecutive days from the date of **your** death;

      **(2)** The date that alternative coverage is obtained for the **real property**; or

      **(3)** The end of the Policy period.

**H.** Paragraph I. SUIT AGAINST THE COMPANY of SECTION VI -- LOSS CONDITIONS is replaced by the following:

    **I.** SUIT AGAINST THE COMPANY

    No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within ten (10) years next after the inception of the loss.

**I.** The following is added to SECTION VI – LOSS CONDITIONS:

    **J.** MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION COVERAGE LIMITATIONS

      **1.** Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (in this endorsement referred to as the Act), if **we** are a member of the Missouri Property and Casualty Insurance Guaranty Association (in this endorsement referred to as the Association), the Association will pay claims covered under the Act if **we** become insolvent.

      **2.** The Act contains various exclusions, conditions and limitations that govern **your** eligibility to collect payment from the Association and the amount of any payment. The following limitations apply subject to all other provisions of the Act:

        **a.** If **we** become insolvent, claims covered by the Act do not include a claim by or against **you** if **you** have a net worth of more than $25 million on the later of the end of **your** most recent fiscal year or the December thirty-first of the year next preceding the date **we** become insolvent; provided that **your** net worth on such date is deemed to include **your** aggregate net worth and all of **your** affiliates as calculated on a consolidated basis.

        **b.** The Association's obligation for each covered claim is only that amount of each claim which is less than $300,000.

      However, the Association will not:

        **a.** Pay more than the LIMIT OF LIABILITY of this Policy; or,

        **b.** Return to **you** any unearned premium in excess of $25,000.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number   YAC-L9L-453866-027
Issued by         Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MONTANA CHANGES**

This endorsement applies only to **covered property** located in Montana and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

A.  Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

   **C.**  CONCEALMENT, MISREPRESENTATION OR FRAUD

   **We** will not pay for any loss or damage if **you** have:

   **1.**  Before a loss, knowingly or willfully; or

   **2.**  After a loss, knowingly or willfully and with intent to defraud;

   concealed or misrepresented any material fact or circumstance relating to coverage of the loss under this Policy and in or with reference to the application for this Policy.

B.  Paragraph **D.** CONFORMITY TO STATUTES of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

   **D.**  CONFORMITY TO STATUTES

   The provisions of this Policy conform to the minimum requirements of Montana law. Any provisions required by Montana law to be included in policies issued by **us** shall be deemed to have been included in this Policy.

   If the provisions of this Policy conflict with the laws of any jurisdictions in which this Policy applies, and if certain provisions are required by law to be stated in this Policy, this Policy shall be read so as to eliminate such conflict or deemed to include such provisions for covered **locations** within such jurisdictions.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NEVADA CHANGES**

This endorsement applies only to **covered property** located in Nevada and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

   **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

   **We** will not pay for any loss or damage if **you** have willfully and with intent to defraud, concealed or misrepresented any material fact or circumstances concerning:

   **1.** This Policy;

   **2.** The **covered property**;

   **3.** **Your** interest in the **covered property**; or

   **4.** A claim under this Policy.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NEW JERSEY CHANGES**

This endorsement applies only to **covered property** located in New Jersey and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.**  Paragraph **k.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is added:

  **k.**  Any act committed by **you** or at **your** direction, by others, which is intended to cause loss or damage. This exclusion will not apply to deny coverage to an innocent additional named insured who did not cooperate in or contribute to the creation of the loss, provided it is a **covered loss**, if the loss arose out of domestic violence.

  **Our** payment for a **covered loss** to the innocent additional named insured is limited to that insured's insurable interest in the **covered property** as reduced by any payment to a mortgagee or other secured interest. In no event will **we** pay more than the applicable LIMIT OF LIABILITY.

**B.**  Paragraph **3.** of SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is added:

  **3.**  If **we** pay an additional named insured for loss arising out of an act of domestic violence by another insured, the rights of the additional named insured, who did not cooperate in or contribute to the creation of the loss, to recover damages from the perpetrator of domestic violence are transferred to **us** to the extent of **our** payment. Following the loss, the additional named insured who did not cooperate in or contribute to the loss may not waive such rights to recover against the perpetrator of domestic violence.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NEW YORK CHANGES**

This endorsement applies only to **covered property** located in New York and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Exclusion **2.a. (terrorism)** in paragraph **C.** EXCLUSIONS of SECTION II – PROPERTY DAMAGE is deleted.

**B.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

   **C.**  CONCEALMENT, MISREPRESENTATION OR FRAUD

      **We** will not pay for any loss or damage if **you** or anyone acting on **your** behalf have willfully and with intent to defraud, concealed or misrepresented any material fact or circumstances concerning:

      **1.**  This Policy;

      **2.**  The **covered property**;

      **3.**  **Your** interest in the **covered property**; or

      **4.**  A claim under this Policy.

**C.** Paragraph **B.** APPRAISAL of SECTION VI – LOSS CONDITIONS is replaced by the following:

   **B.**  APPRAISAL

      **1.**  If either **you** or **we** fail to agree on the amount or extent of loss or damage to **covered property**, or the value of the damaged **covered property**, either party may make a written demand that the disputed amount be submitted for appraisal.

      If after a written demand has been made, either **you** or **we** fail to proceed with the appraisal, either party may then petition a judge of a court of record in the state where the **covered loss** happened to order the party that failed to proceed with the appraisal to comply with the demand.

      Upon resolution of the demand, each party will then choose a competent and disinterested appraiser. Each party will notify the other of the identity of its appraiser within twenty (20) days of the written demand for appraisal.

      **2.**  The two (2) appraisers will choose a competent and disinterested umpire.  If the appraisers are unable to agree on an umpire within fifteen (15) days, either party may petition a judge of a court of record in the state where the **covered loss** happened to select an umpire.

      **3.**  The appraisers will then determine the amount and the extent of the loss or damage. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss or damage. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two (2) of these three (3) will determine the amount of loss or damage.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

    4.    Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**.

    5.    Appraisal described in **1.** through **4.** above shall not be used to determine whether the Policy actually provides coverage for any portion of the claimed loss or damage.

**D.**  Paragraph **1.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS, is replaced by the following:

    1.    Give **us** immediate written notice of the loss. Written notice, which adequately identifies **you**, given to **our** appointed producers in New York State:

        **a.**  By a third party on **your** behalf; or

        **b.**  By or on behalf of any claimant,

        will also be accepted as notice to **us**.

**E.**  The following is added at the end of paragraph **G.** PAYMENT OF LOSS of SECTION VI – LOSS CONDITIONS:

However in the event of a payment for loss or damage to **your real property** caused by or resulting from fire, **we** will:

    1.    First, deduct from **your** payment any amounts claimed by a tax district as the result of a certificate of lien filed by them in accordance with the Insurance Law; and

    2.    Then, directly pay that amount to the tax district.

Once this amount is paid to the tax district, **we** are no longer obligated to pay that portion of **your** payment to **you**. If **our** payment to the tax district is made within thirty (30) days of **our** receipt of the certificate of lien, the certificate of lien will be proof that payment of the claim was valid and proper.

**F.**  The following are added to SECTION VI – LOSS CONDITIONS:

    **J.**  ESTIMATION OF CLAIMS

      In the event an estimate of the damage to **your real property** which specifies all deductions made in the estimate of the **real property** is prepared by **us** or by others for **our** use, **we** will, at **your** request, supply **you** or **your** representative with a written copy of the estimate by the latter of:

    1.    Thirty (30) days from **your** request; or

    2.    The actual preparation date of the estimate.

    **K.**  Examination of **Your** Books and Records

    1.    In the event that **your** Policy contains an auditable coverage for which an advance or deposit premium was paid based on estimated exposure, **we** will conduct an audit to determine the final premium due or to be refunded within one hundred eighty (180) days of:

        **a.**  The expiration date of the Policy; or

        **b.**  The anniversary date, if this is a continuous Policy or a Policy written for a term longer than one (1) year.

2. **We** may waive **our** right to audit for the following reasons:

    **a.** After a cursory review, **we** do not expect the premium adjustment to exceed $1,500.

    **b.** At time of audit, **we** have agreed with **you** not to make a premium adjustment due to minimal changes in values from those originally reported.

3. **We** do retain the right to examine and audit **your** books and records, as they relate to this Policy, at any time during the Policy period and up to three (3) years afterward.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by         Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NORTH CAROLINA CHANGES**

This endorsement applies only to **covered property** located in North Carolina and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **10.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS is replaced by the following:

**10.** Submit to **us**, within ninety (90) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

   **a.** The time and cause of the loss;

   **b.** **Your** interest and the interest of all others in the property involved;

   **c.** Any other policies of insurance that may provide coverage for the loss;

   **d.** Any changes in title or occupancy of the property during the Policy period and;

   **e.** The amount of **your** claimed loss.

   **You** shall also submit with the Proof of Loss:

   **(1)** A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

   **(2)** An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

   **(3)** Specifications for any damaged building; and

   **(4)** Detailed estimates and invoices for the repair of any damage.

   However, whenever a state of disaster is proclaimed for the state of North Carolina or for an area within this state in accordance with state law, or whenever a major disaster is declared for North Carolina or an area within this state by the President of the United States under the Stafford Act or its successors, the following provisions apply:

   **f.** If **your covered property** that has sustained loss or damage is located within the geographic area designated in the disaster declaration or proclamation, the time period for **your** submission of a Proof of Loss shall be extended by forty-five (45) days or by the number of days the disaster declaration or proclamation remains in effect, whichever number is greater.

   **g.** Except as otherwise provided in **a.** above, the following applies if **you** or **we** reside in or are located in the geographic area designated in the disaster declaration or proclamation:

   If a time limitation is imposed on **you** or **us** for performance of a duty or any act (including transmittal of information), and such performance would be required during the time period covered by the declaration or proclamation, **your** performance and **our** performance is subject to a deferral period of thirty (30) days. The Commissioner of Insurance may extend such deferral period.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**B.** Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

I.   SUIT AGAINST THE COMPANY

No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions.  Any suit against **us** must be brought within three (3) years next after the inception of the loss.

**C.** APPENDIX E - *NAMED STORM* TIERS FOR USA INCLUDING ITS COMMONWEALTHS AND TERRITORIES – SOUTHERN TIER TWO is replaced by the following:

SOUTHERN TIER TWO: SOUTH CAROLINA TO TEXAS

| STATE | COUNTIES / PARISHES / INDEPENDENT CITIES |
|---|---|
| Alabama | Clarke, Coffee, Conecuh, Covington, Dale, Escambia, Geneva, Houston, Monroe, Washington |
| Louisiana | Allen, Avoyelles, Beauregard, Evangeline, St. Helena, St. Landry, West Feliciana |
| Mississippi | Forrest, Greene, Jones, Lamar, Marion, Perry, Pike, Walthall, Wayne |
| South Carolina | Bamberg, Calhoun, Clarendon, Dillon, Florence, Hampton, Marion, Orangeburg |
| Texas | Austin, Brazos, Colorado, De Witt, Duval, Fayette, Gonzales, Grimes, Jim Hogg, Karnes, Lavaca, Live Oak, McMullen, Montgomery, Newton, Polk, San Jacinto, Starr, Tyler, Walker, Waller, Washington |

All other terms and conditions remain unchanged.

Policy Number  YAC-L9L-453866-027
Issued by      Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NORTH DAKOTA CHANGES**

This endorsement applies only to **covered property** located in North Dakota and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **k.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is added:

**k.** Any act committed by **you** or at **your** direction, by others, which is intended to cause loss or damage. This exclusion will not apply to deny coverage to an innocent additional named insured who did not cooperate in or contribute to the creation of the loss, provided it is a **covered loss**, and the loss arose out of domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss.

**Our** payment for a **covered loss** to the innocent additional named insured is limited to that insured's insurable interest in the **covered property** as reduced by any payment to a mortgagee or other secured interest. In no event will **we** pay more than the applicable LIMIT OF LIABILITY.

**B.** Paragraph **4.** is added to SECTION V – GENERAL POLICY CONDITIONS, **R.** VALUATION:

**4.** If **real property** is wholly destroyed by a **covered loss** and there is no fraud on the part of **you** or **your** assignee, the LIMIT OF LIABILITY on such **real property** shall be taken conclusively to be the true value of the **covered property** and the true amount of loss and measure of damages, subject to the following:

    **a.** If the loss occurred:

        **(1)** Within ninety (90) days after the Policy effective date; or

        **(2)** Within ninety (90) days after the LIMIT OF LIABILITY was increased by 25% or more at **your** request;

    The amount payable to **you** for the **covered loss** is the LIMIT OF LIABILITY for **real property**, or the **actual cash value**, or replacement cost of the **covered property**, whichever is less.

    **b.** However, **a.** above does not apply in the following situations:

        **(1)** If this Policy is renewed with an increased LIMIT OF LIABILITY for **real property** in an amount less than 25%

        **(2)** If the LIMIT OF LIABILITY for **real property** has increased 25% or more due to the construction of additions to **real property**; or

        **(3)** If an increased LIMIT OF LIABILITY for **real property** was approved by **us** prior to a **covered loss**.

    **c.** Buildings under the course of construction must be valued and settled according to the **actual cash value** of that portion of construction completed at the time of a **covered loss**.

    **d.** This VALUATION provision does not apply to any claim for total loss to any building which is insured as part of a blanket LIMIT OF LIABILITY applicable to two (2) or more buildings. Any claim for total loss to a building insured on a blanket basis will be settled at replacement cost or at **actual cash value**, depending on the Policy provisions applicable to the building sustaining the total loss.

**C.** Paragraph **10.** of SECTION VI – LOSS CONDITION, **E.** DUTIES AFTER A LOSS is replaced by the following:

**10.** Within twenty (20) days after **we** receive **your** notice of loss, **we** will furnish **you** with a blank Proof of Loss form. **You** are required to submit to **us**, within sixty (60) days from the date the blank form is furnished, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

    **a.** The time and cause of the loss;

    **b.** **Your** interest and the interest of all others in the property involved;

    **c.** Any other policies of insurance that may provide coverage for the loss;

    **d.** Any changes in title or occupancy of the property during the Policy period and;

    **e.** The amount of **your** claimed loss.

    **You** shall also submit with the Proof of Loss:

        **(1)** A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

        **(2)** An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

        **(3)** Specifications for any damaged building; and

        **(4)** Detailed estimates and invoices for the repair of any damage.

**D.** Paragraph **3.** of SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is added:

**3.** If a **covered loss** is caused by or results from an act of domestic violence committed by **you** or any other insured designated in this Policy and **we** make payment to an innocent additional named insured who is the victim of the act of domestic violence, (subject to paragraph **A.** of this endorsement) the rights of that innocent additional named insured to recover damages from the perpetrator of the act of domestic violence are transferred to **us** to the extent of that payment.

**E.** Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **I.** SUIT AGAINST THE COMPANY

    No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within three (3) years next after the inception of the loss.

All other terms and conditions remain unchanged.

Policy Number YAC-L9L-453866-027
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OHIO CHANGES**

This endorsement applies only to **covered property** located in Ohio and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following are added to SECTION V – GENERAL POLICY CONDITIONS, **R.** VALUATION and apply only to **real property** subject to valuation based on **actual cash value**:

   **4.** If **real property** at a covered **location** is totally destroyed by fire or lightning, and there is no fraud on the part of **you** or **your** assignee and there is no change increasing the risk without **our** consent, the LIMIT OF LIABILITY on such **real property** shall be taken to be the true value of the **covered property** and the true amount of the loss.

   **5.** If **real property** at a covered **location** is only partially destroyed by fire or lightning, the amount payable to **you** is the actual loss sustained, but no more than the applicable LIMIT OF LIABILITY.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**OREGON CHANGES**

This endorsement applies only to **covered property** located in Oregon and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **10.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS is replaced by the following:

    **10.** Within ninety (90) days after **you** receive the necessary forms from **us**, unless **we** extend the time in writing, **you** must send **us** a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

        **a.**   The time and cause of the loss;

        **b.**   **Your** interest and the interest of all others in the property involved;

        **c.**   Any other policies of insurance that may provide coverage for the loss;

        **d.**   Any changes in title or occupancy of the property during the Policy period and;

        **e.**   The amount of **your** claimed loss.

        **You** shall also submit with the Proof of Loss:

            **(1)** A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

            **(2)** An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

            **(3)** Specifications for any damaged building; and

            **(4)** Detailed estimates and invoices for the repair of any damage.

**B.** Paragraph **B.** APPRAISAL of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **B.**   APPRAISAL

        **1.**   If **we** and **you** disagree on the value of the **covered property** or the amount of a loss, both parties may agree to an appraisal of the loss and to be bound by the results of that appraisal.  If both parties so agree, then each party will select a competent and impartial appraiser.

        **2.**   The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction where the **covered loss** occurred.

        **3.**   The appraisers will state separately the value of the **covered property** and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.

        **4.**   Each party will pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by         Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PENNSYLVANIA CHANGES**

This endorsement applies only to **covered property** located in Pennsylvania and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **D.** COMPANY OPTION of SECTION VI – LOSS CONDITIONS is replaced by the following:

**D.** COMPANY OPTION

1. At **our** option, **we** will repair, rebuild or replace damaged **covered property** with other property of like kind and quality within a reasonable period of time.

2. If **we** elect to repair or replace the **covered property**:

   a. Except as provided in **c.** below, **we** will notify **you** of that decision within fifteen (15) working days of **our** receipt of **your** proof of loss, that **we**:

      (1)  Accept **your** claim;

      (2)  Deny **your** claim; or

      (3)  Need more time to determine whether **your** claim should be accepted or denied.

      If **we** deny **your** claim, such notice will be in writing, and will state any policy provision, condition or exclusion used as a basis for the denial.

      If **we** need more time to determine whether **your** claim should be accepted or denied, the written notice will state the reason why more time is required.

   b. If **we** have not completed **our** investigation, **we** will notify **you** again in writing, within thirty (30) days after the date of the initial notice as provided in **2.a.(3)** above, and thereafter every forty-five (45) days. The written notice will state why more time is needed to investigate **your** claim and when **you** may expect **us** to reach a decision on **your** claim.

   c. The notice procedures in **2.a.** and **2.b.** above do not apply if **we** have a reasonable basis, supported by specific information, to suspect that an insured has fraudulently caused or contributed to the loss by arson or other illegal activity. Under such circumstances, **we** will notify **you** of the disposition of **your** claim within a period of time reasonable to allow full investigation of the claim, after **we** receive a properly executed proof of loss.

3. **We** will, at **our** option, take title to all or any part of the damaged or destroyed property at the agreed or appraised value.

All other terms and conditions remain unchanged.

Policy Number  YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**SOUTH CAROLINA CHANGES**

This endorsement applies only to **covered property** located in South Carolina and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** The following is added to SECTION II – PROPERTY DAMAGE, **C.1.** EXCLUSIONS:

   **1.** **We** do not cover:

      **i.** Loss or damage to paint or waterproofing material applied to the exterior of **real property** caused by or resulting from a *NAMED STORM*, unless the **real property** to which such loss or damage occurs also sustains other direct physical loss or damage caused by or resulting from a *NAMED STORM* in the course of the same **occurrence.**

      When loss or damage to exterior paint or waterproofing material is excluded, **we** will not include the value of paint or waterproofing material to determine the amount of the *NAMED STORM* deductible.

**B.** Paragraph I. SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

   **I.** SUIT AGAINST THE COMPANY

   No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions.  Any suit against **us** must be brought within three (3) years next after the inception of the loss.

All other terms and conditions remain unchanged.

Policy Number  YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TEXAS CHANGES**

This endorsement applies only to **covered property** located in Texas and modifies insurance provided under the following:

   PREMIER PROPERTY PROTECTOR™

For purposes of this endorsement, *business day* means a day other than Saturday, Sunday or holiday recognized by the state of Texas.

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

   **H.**  JURISDICTION

   Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** Paragraph **9.** DEFENSE FOR PERSONAL PROPERTY OF OTHERS of SECTION II – PROPERTY DAMAGE, **D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS is replaced by the following:

   **9.**  DEFENSE FOR PERSONAL PROPERTY OF OTHERS

   **a.**  **We** cover the cost to defend that part of any suit against **you** alleging direct physical loss or damage of the type insured by this Policy to personal property of others of the type insured by this Policy, in **your** custody, and while at a covered **location**. **We** may without prejudice undertake any investigation, negotiation or settlement of any such claim or suit as **we** deem appropriate.

   **b.**  **We** do not cover the cost to defend any suit against **you** when **you** are acting as a warehouseman, bailee for hire, or carrier for hire.

   **c.**  **We** will notify **you** in writing of any initial offer to settle a claim brought against **you** as described in **a.** above. **We** will give **you** the notice within ten (10) days after the date the offer is made.

   **d.**  **We** will notify **you** in writing of any settlement of a claim brought against **you** as described in **a.** above. **We** will give **you** the notice within thirty (30) days after the settlement.

**C.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V – GENERAL POLICY CONDITIONS is replaced by the following:

   **C.**  CONCEALMENT, MISREPRESENTATION OR FRAUD

   In accordance with Texas §705.003 and §705.004, this entire Policy is void, if with the actual intent to deceive

   **1.**  **You;**

   **2.**  **Your** representatives; or

   **3.**  Any insured;

commit fraud or conceal or misrepresent a fact or circumstance concerning:

    **a.** This Policy;

    **b.** The **covered property**;

    **c.** **Your** interest in the **covered property**; or

    **d.** A claim under this Policy.

**D.** Paragraphs **3.** and **10.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS are replaced by the following:

    **3.** As soon as possible, give **us** a description of the property involved and how, when and where the loss happened. However, with respect to loss or damage in the State of Texas caused by wind or hail in the catastrophe area as defined by the Texas Insurance Code, any claim must be filed with **us** not later than one (1) year after the date of the loss or damage that is the subject of the claim, except that a claim may be filed after the first anniversary of the date of the loss or damage for good cause shown by the person filing the claim.

    **10.** Submit to **us**, within ninety-one (91) days from the date of loss, unless **we** extend the time in writing, a signed, sworn Proof of Loss that states to the best of **your** knowledge and belief:

        **a.** The time and cause of the loss;

        **b.** **Your** interest and the interest of all others in the property involved;

        **c.** Any other policies of insurance that may provide coverage for the loss;

        **d.** Any changes in title or occupancy of the property during the Policy period and;

        **e.** The amount of **your** claimed loss.

        **You** shall also submit with the Proof of Loss:

            **(1)** A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

            **(2)** An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

            **(3)** Specifications for any damaged building; and

            **(4)** Detailed estimates and invoices for the repair of any damage.

**E.** Paragraph **G.** PAYMENT OF LOSS of SECTION VI – LOSS CONDITIONS is replaced by the following:

    **G.** PAYMENT OF LOSS

        **1.** Within fifteen (15) days after **we** receive **your** written notice of claim, **we** must:

            **a.** Acknowledge receipt of the claim.  If **our** acknowledgement of the claim is not in writing, **we** will keep a record of the date, method and content of **our** acknowledgement;

            **b.** Begin any investigations of the claim;

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

   c.  Specify the information **you** must provide in accordance with paragraph SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS.

   **We** may request more information, if during the investigation of the claim such additional information is necessary.

2.  After **we** receive the information **we** request, **we** must notify **you** in writing whether **your** claim will be paid or has been denied or whether more information is needed:

   a.  Within fifteen (15) *business days*; or

   b.  Within thirty (30) days if **we** have reason to believe the loss resulted from arson.

3.  If **we** do not approve payment of **your** claim or need more time for processing **your** claim, **we** must:

   a.  Give the reasons for denying **your** claim; or,

   b.  Give the reasons **we** require more time to process **your** claim. But, **we** must either approve or deny **your** claim within forty-five (45) days after requesting more time.

4.  If **we** notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within five (5) *business days* after **we** notify **you**.

5.  If payment of **your** claim or part of **your** claim requires the performance of an act by **you**, **we** must pay within five (5) *business days* after the date **you** perform the act.

6.  Catastrophe Claims

   If a claim results from a weather related *catastrophe or a major natural disaster*, the claim handling and claim payment deadlines described in paragraphs **G.1.** through **G.5.** above are extended for an additional fifteen (15) days.

   *Catastrophe or a major natural disaster* means a weather related event which is:

   a.  Declared a disaster under the Texas Disaster Act of 1975; or

   b.  Determined to be a catastrophe by the Texas Department of Insurance.

**F.**  Paragraph **I.** SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

   **I.**  SUIT AGAINST THE COMPANY

   No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within two (2) years, one (1) day next after the inception of the loss.

   With respect to loss or damage in the State of Texas caused by wind or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against **us** under this Policy unless:

   1.  There has been full compliance with all the terms of this Policy; and

   2.  The action is brought within the earlier of the following:

      a.  Two (2) years and one (1) day from the date **we** accept or reject the claim; or

      b.  Three (3) years and one (1) day from the date of the loss or damage that is the subject of the claim.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**G.** The following is added to SECTION VI – LOSS CONDITIONS:

**J.** TEXAS INSURANCE CODE SECTION 862.053. FIRE INSURANCE: TOTAL LOSS OF **REAL PROPERTY**

A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of the policy.  This provision does not apply to **personal property**.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number   YAC-L9L-453866-027
Issued by        Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TEXAS CHANGES – CANCELLATION AND NONRENEWAL**

This endorsement modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraphs **2.**, **3.** and **5** of SECTION V - GENERAL POLICY CONDITIONS, **B.** CANCELLATION are replaced by the following:

**2.a.** If this Policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then **we** may cancel this Policy by mailing or delivering written notice of cancellation, at least thirty (30) days before the effective date of cancellation, to:

**(1) You**; and

**(2)** Each unit-owner to whom **we** issued a certificate of insurance.

If **we** cancel this Policy, **we** will, at **your** request, provide a written statement of the reason or reasons for such cancellation.

**b.** If this Policy covers a risk other than the risk described in Paragraph **2.a.** above, then **we** may cancel this Policy by mailing or delivering to **you** written notice of cancellation at least:

**(1)** Fourteen (14) days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

**(2)** Thirty (30) days or the number of days specified in the CANCELLATION TIME SPECIFICATIONS, whichever is greater, before the effective date of cancellation if **we** cancel for any other reason.

If **we** cancel this Policy, **we** will, at **your** request, provide a written statement of the reason or reasons for such cancellation.

**c.** In compliance with Texas law, **we** will not cancel this Policy solely because **you** are an elected official.

**3.** **We** will mail or deliver **our** notice to **your** last mailing address known to **us**. If this Policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then **we** will also mail or deliver notice of cancellation to each unit-owner to whom **we** issued a certificate of insurance, to each last mailing address known to **us**.

**5.** If this Policy is cancelled, **we** will send **you** any premium refund due. If **we** cancel, the refund will be pro rata. If **you** cancel, the refund may be less than pro rata. However, the cancellation will be effective even if **we** have not made or offered a refund. The notice of cancellation will state that unearned paid premium, if not tendered, will be refunded on demand.

**B.** The NONRENEWAL provision of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

NONRENEWAL

1. If **we** decide not to renew this Policy, **we** will mail or deliver a written notice of nonrenewal to **you** at least sixty (60) days before the expiration date of this Policy. Notice will be sent to **your** last mailing address known to **us** and will state the reason for nonrenewal. Proof of mailing will be sufficient evidence of notice.

2. In compliance with Texas law, **we** will not refuse to renew this Policy solely because **you** are an elected official.

3. If this Policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then:

   a. **We** will mail or deliver written notice of nonrenewal, at least sixty (60) days before the expiration or anniversary date of the Policy, to **you** and to each unit-owner to whom **we** issued a certificate of insurance.

   b. **We** will mail or deliver such notice to each last mailing address known to **us**. If notice is mailed, proof of mailing will be sufficient evidence of notice.

 © 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number   YAC-L9L-453866-027
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**UTAH CHANGES**

This endorsement applies only to **covered property** located in Utah and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

**A.** Paragraph **10.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS is replaced by the following:

   **10.** Submit to **us**, within ninety (90) days from the date of loss, a signed, sworn statement of loss. Failure to give the statement of loss within ninety (90) days of loss does not invalidate **your** claim, provided **you** submit the statement of loss as soon as reasonably possible, and **you** show that it was not reasonably possible to give the statement of loss within ninety (90) days.

   The statement of loss should show, to the best of **your** knowledge and belief:

   **a.** The time and cause of the loss;

   **b.** **Your** interest and the interest of all others in the property involved;

   **c.** Any other policies of insurance that may provide coverage for the loss;

   **d.** Any changes in title or occupancy of the property during the Policy period and;

   **e.** The amount of **your** claimed loss.

   **You** shall also submit with the Proof of Loss:

      **(1)** A complete inventory of the lost, damaged and destroyed property, showing in detail the quantity, and amount of loss claimed as specified in the valuation provision of the Policy;

      **(2)** An accurate record(s) of all repair costs and all bills, receipts and related documents that establish the amount of the loss;

      **(3)** Specifications for any damaged building; and

      **(4)** Detailed estimates and invoices for the repair of any damage.

**B.** Paragraph I. SUIT AGAINST THE COMPANY of SECTION VI – LOSS CONDITIONS is replaced by the following:

   **I.** SUIT AGAINST THE COMPANY

   No suit or other legal proceeding shall be brought against **us** unless there has been full compliance with all the Policy terms and conditions. Any suit against **us** must be brought within three (3) years next after the inception of the loss.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by         Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**VIRGINIA CHANGES**

This endorsement applies only to **covered property** located in Virginia and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

A.  Paragraph **H. JURISDICTION** of SECTION I – DECLARATIONS is replaced by the following:

    **H.  JURISDICTION**

    Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

B.  Paragraph **(1)** following item number **(6)** of **2.a. Terrorism** of C. EXCLUSIONS is replaced with the following:

    **(1)** If **terrorism** results in fire, in which case **we** cover the direct physical loss or damage caused by the fire. This exception is subject to all applicable Policy provisions including the LIMIT OF LIABILITY on the affected property.  Such coverage for ensuing loss applies only to direct loss or damage by fire to **covered property**. This coverage does not apply to insurance provided under any TIME ELEMENT coverage, or to fire legal liability coverage; or

C.  The LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL provision of SECTION II – PROPERTY DAMAGE, **D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS is replaced by the following:

    LAND AND WATER CLEANUP, REMOVAL AND DISPOSAL

    **a.** For uninsured property at a covered **location** consisting of land, water, or any other substance in or on land or water at a covered **location**, **we** cover **your** reasonable and necessary cost for the cleanup, removal and disposal of the actual presence of **contaminant(s)** from that property if the release, discharge or dispersal of such **contaminant(s)** is a result of a **covered loss**.

    **b.** This PROPERTY DAMAGE COVERAGE AND LIMITATION does not apply:

        **(1)** At any **location** insured for **personal property** only; or

        **(2)** At any **location**, or to any property, covered under the NEWLY ACQUIRED **LOCATIONS** or ERRORS AND OMISSIONS coverages provided by this Policy or at a **Miscellaneous Unnamed Location**.

    **c.** **You** may make an initial claim for loss or damage covered by this PROPERTY DAMAGE COVERAGE AND LIMITATION on an **actual cash value** basis instead of on a replacement cost basis.  In the event **you** elect to have the claim settled on an **actual cash value** basis, **you** may still make a claim for the difference between the **actual cash value** and replacement cost if **you** notify **us** of **your** intent to do so within six months of the later of the following dates:

        **(1)** The last date on which **you** received a payment for **actual cash value**; or

        **(2)** The date of entry of a final order of a court of competent jurisdiction declaring **your** right to full replacement cost.

**D.** The following is added to the FIRE DEPARTMENT SERVICE CHARGES provision of SECTION II – PROPERTY DAMAGE, **D.** PROPERTY DAMAGE COVERAGES AND LIMITATIONS:

When a volunteer fire department that is not fully funded by real estate taxes or other property taxes is called to save or protect **covered property** from a **covered loss**, **we** will pay the amount billed to **you**, up to $250, unless a higher LIMIT OF LIABILITY is shown in the Declarations for FIRE DEPARTMENT SERVICE CHARGES, in which case, that higher LIMIT OF LIABILITY will apply.

**E.** Paragraph **B.** APPRAISAL of SECTION VI – LOSS CONDITIONS is replaced by the following:

**B.** APPRAISAL

1. If **you** and **we** fail to agree on the value of the **covered property** or amount of a loss, either party may demand that the disputed amount be submitted for appraisal. In this event, each party will select a competent and impartial appraiser. Each party must notify the other of the identity of its appraiser within twenty (20) days of the written demand for appraisal.

2. The two (2) appraisers will choose a competent and disinterested umpire. If the appraisers are unable to agree on an umpire within fifteen (15) days, **you** or **we** may apply in writing for the appointment of an umpire to the judge of the circuit court of the county or city in which the damaged or destroyed property was located at the time of loss.

3. The appraisers will state separately the value of the property and the amount of the loss. If the appraisers submit a written report of an agreement to **you** and **us**, the amount they agree on will be the amount of **our** payment for the loss. If the appraisers fail to agree, they will submit their differences to the umpire. A decision agreed upon by any two of these three will set the amount of loss. An appraisal decision will be binding on both parties.

4. Each appraiser will be paid by the party that selects him or her. Other expenses of the appraisal and compensation of the umpire will be paid equally by **you** and **us**. However, if **we** make written demand for an appraisal of the loss, **we** will reimburse **you** for the reasonable cost of **your** chosen appraiser, and for **your** portion of the cost of the umpire.

**F.** Paragraph **2.** of SECTION VI – LOSS CONDITIONS, **E.** DUTIES AFTER A LOSS does not apply.

All other terms and conditions remain unchanged.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  YAC-L9L-453866-027
Issued by       Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WASHINGTON CHANGES**

This endorsement applies only to **covered property** located in Washington and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™
EXCLUSION OF CERTIFIED ACTS OF TERRORISM

**A.** Paragraph **H.** JURISDICTION of SECTION I – DECLARATIONS is replaced by the following:

   **H.** JURISDICTION

   Any disputes arising hereunder will be exclusively subject to a State or Federal jurisdiction within the United States of America.

**B.** The first paragraph of item **2.** of SECTION II – PROPERTY DAMAGE, **C.** EXCLUSIONS is replaced with the following:

   **We** do not cover any of the excluded events listed below.  Loss or damage will be considered to have been caused by an excluded event if the **occurrence** of that event directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

**C.** Paragraph **i.** of SECTION II – PROPERTY DAMAGE, **C.2.** EXCLUSIONS is replaced by the following:

   **i.** Any criminal, fraudulent or dishonest act, including theft, committed alone or in collusion with others:

      **(1)** By **you** or any proprietor, partner, director, trustee, officer or employee of an Insured; or

      **(2)** By any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by **you** to do anything in connection with property insured under this Policy.

   However, **we** do cover direct physical loss or damage intentionally caused by **your** employee or any individual specified in **(2)** above provided that said individuals acted without **your** knowledge.

   This exclusion will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Paragraph **3.** of  SECTION IV – DESCRIBED LOSSES, **A.** EARTH MOVEMENT is replaced by the following:

    **3.**  *EARTH MOVEMENT* is:

       Earthquake, landslide, subsidence or sinking, rising or shifting of the earth, avalanche, whether natural or man-made, or volcanic eruption that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

       However, physical loss or damage from fire, explosion, sprinkler leakage or *FLOOD* caused by *EARTH MOVEMENT* will not be considered to be loss by *EARTH MOVEMENT* within the terms and conditions of this Policy.

**E.** Paragraph **2.** of  SECTION IV – DESCRIBED LOSSES, **D.** FLOOD is replaced by the following:

    **2.**  *FLOOD* is:

       **a.** Surface waters; rising waters; storm surge, wave wash; waves; tsunami; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; all whether driven by wind or not;

       **b.** Sewer back-up resulting from any of the foregoing; or

       **c.** Mudslide or mudflow caused by or resulting from surface water, runoff or accumulation of water on or under the ground;

       that directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

       **Covered loss** from *FLOOD* associated with a storm or weather disturbance whether or not identified by name by any meteorological authority is considered to be *FLOOD* within the terms of this Policy.  However, physical loss or damage from fire, explosion or sprinkler leakage caused by *FLOOD* will not be considered to be loss by *FLOOD* within the terms and conditions of this Policy.

**F.** Paragraph **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

    **C.** CONCEALMENT, MISREPRESENTATION OR FRAUD

       This entire Policy is void if **you** intentionally conceal or misrepresent any material fact or circumstance relating to it.

       However, this will not apply to deny an insured's otherwise **covered property** loss if the property loss is caused by an act of domestic abuse by another insured under this Policy, the insured claiming property loss files a police report and cooperates with any law enforcement investigation relating to the act of domestic abuse, and the insured claiming property loss did not cooperate in or contribute to the creation of the property loss. Payment by the insurer to an insured may be limited to the person's insurable interest in the property less payments made to a mortgagee or other party with a legal secured interest in the property. An insurer making payment to an insured under RCW 48.18.120 (1) has all rights of subrogation to recover against the perpetrator of the act that caused the loss.

© 2016 Liberty Mutual Insurance
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

G.  Paragraph **E.** INSPECTION of SECTION V - GENERAL POLICY CONDITIONS is replaced by the following:

E.  INSPECTION

1.  During the period of this Policy, **we** will be permitted, but not obligated, to inspect the **covered property**. **Our** right to inspect, the performance of or failure to inspect, and any report arising out of an inspection will not constitute an undertaking or imply that the property is safe, healthful, or in compliance with laws, regulations, codes or standards.  **We** will have no liability to **you** or others because of any inspection or failure to inspect, or on account of anyone's use or reliance upon any report or other information generated during the course of, or as a result of any inspection.

2.  This condition does not apply to any inspections, surveys, reports or recommendations **we** may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

H.  Paragraph **F.** LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS of SECTION V - GENERAL POLICY CONDITIONS is deleted and replaced by endorsement PY 03 21 Washington Lender's Loss Payable Endorsement as required by the Washington Insurance Commissioner.

I.  Paragraph **5.** of SECTION V - GENERAL POLICY CONDITIONS, OTHER INSURANCE is replaced by the following:

5.  **You** may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Policy.  If **you** do, **we** will pay **our** share of the **covered loss** or damage.  **Our** share is the proportion that the applicable LIMIT OF LIABILITY under this Policy bears to the limits of liability of all insurance covering on the same basis.

J.  Paragraph **2.** of SECTION V - GENERAL POLICY CONDITIONS, VALUATION is replaced by the following:

2.  **You** may elect not to repair or replace the **covered property** lost, damaged or destroyed. Loss settlement may be elected on the lesser of repair or *replacement cost* basis if the proceeds of such loss settlement are expended on other capital expenditures related to **your** operations within two (2) years from the date of loss. As a condition of collecting under this provision, such expenditure must be unplanned as of the date of loss and be made at a covered **location** under this Policy. This provision does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION or to property scheduled for demolition at the time of loss.

*Replacement cost* means the cost to replace **covered property**:

a.  With new materials of like kind and quality and used for the same purpose; and

b.  At the location where the loss happened.

But *replacement cost* excludes any increased cost of repair or reconstruction by reason of any law or ordinance regulating construction, repair or use.

K.  Paragraph **2.** of  SECTION VI – LOSS CONDITIONS, **H.** SUBROGATION is replaced by the following:

2.  **We** will be entitled to a recovery only after **you** have been fully compensated for damages.

L.  Paragraph **1.** of  SECTION VII – DEFINITIONS is replaced by the following:

1.  **Actual cash value:** The amount it would cost to repair or replace **covered property**, on the date of loss, with material of like kind and quality, but in no event more than the fair market value.

**M.** Paragraph **B.** of endorsement PY 04 04 EXCLUSION OF CERTIFIED ACTS OF TERRORISM is replaced by the following:

    **B.**  The following exclusion is added:

        CERTIFIED ACT OF TERRORISM EXCLUSION

        **We** will not pay for loss or damage caused by or resulting from a "certified act of terrorism".  Loss or damage will be considered to have been caused by or resulting from a "certified act of terrorism" if the **occurrence** of that "certified act of terrorism" directly and solely results in physical loss or damage, or initiates a sequence of events which results in physical loss or damage, regardless of the nature of any intermediate or final event in that sequence.

All other terms and conditions remain unchanged.

Policy Number   YAC-L9L-453866-027
Issued by         Employers Insurance Company of Wausau

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**WEST VIRGINIA CHANGES**

This endorsement applies only to **covered property** located in West Virginia and modifies insurance provided under the following:

PREMIER PROPERTY PROTECTOR™

A.  Paragraph **1.** of SECTION VI – LOSS CONDITIONS, **B.** APPRAISAL is replaced by the following:

  **1.**  If **you** fail to agree with **us** on the amount of a loss, then on written demand of either party, each will select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty (20) days of such demand.

B.  Paragraph **G.** PAYMENT OF LOSS of SECTION VI – LOSS CONDITIONS is replaced by the following:

  **G.**  PAYMENT OF LOSS

  **1.**  In settlement of all or part of any claim, **we** will pay the amount agreed upon within fifteen (15) working days after:

  **Our** receipt of the agreement; or

  **a.**  The date of the performance by the claimant of any condition set by the agreement,

  whichever is later.

  **2.**  If **real property** is located in West Virginia the following applies:

  **a.**  Total Losses

  In case of total loss by fire or other direct physical loss or damage of the type insured by this Policy at a covered **location**, **we** will pay the LIMIT OF LIABILITY applicable to **real property** at that covered **location**.

  This provision does not apply to any claim for total loss to any building which is insured as part of a blanket LIMIT OF LIABILITY applicable to two or more buildings.  Any claim for total loss to a building insured on a blanket basis will be settled at replacement cost or at **actual cash value**, depending on the Policy provisions applicable to the building sustaining the total loss.

  **b.**  Partial Losses

  In the case of partial loss by fire or other direct physical loss or damage of the type insured by this Policy at a covered **location**, **we** will pay the total amount of the partial loss; but **we** will not pay more than the LIMIT OF LIABILITY applicable to **real property** at that covered **location**.

  This provision will not apply if there is insurance written by another insurer covering the same interest in the **real property**.

All other terms and conditions remain unchanged.

Policy number YAC-L9L-453866-027

This endorsement is effective 03/31/2017 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COUNTERSIGNATURE ENDORSEMENT**

This endorsement is effective at the inception of the policy and attaches to and forms a part of this policy.

Type of Insurance                                                   State

Premier Property Protector                                    Arizona

Signed by _____
                                    Countersigning Agent

IC0024 01-04                                                                                    Page 1 of 1

Policy number YAC-L9L-453866-027 ·

This endorsement is effective 03/31/2017 and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COUNTERSIGNATURE ENDORSEMENT**

This endorsement is effective at the inception of the policy and attaches to and forms a part of this policy.

Type of Insurance                                                  State

Premier Property Protector                                   Mississippi

Signed by_____
                                                        Countersigning Agent

IC0017 01-09                                                                                              Page 1 of 1

Policy number YAC-L9L-453866-027

This endorsement is effective 03/31/2017 and will terminate with the policy.  It is issued by the company designated in the
Declarations.  All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COUNTERSIGNATURE ENDORSEMENT**

This endorsement is effective at the inception of the policy and attaches to and forms a part of this policy.

| Type of Insurance | State |
|---|---|
| Premier Property Protector | Nevada |

Signed by_____

Countersigning Agent

IC0019 01-04                                                                                                           Page 1 of 1